No.  26-12718

---

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

SCOTT MCDONALD,
*Plaintiff-Appellant,*

v.

BETH MCDONALD and
BROOKE DUMONT,
*Defendants-Appellees*.

---

On Appeal from the United States District Court
for the Northern District of Alabama, Northeastern Division
Case No. 5:25-cv-02226

---

**APPENDIX**

---

Scott McDonald, pro se
789 Neal Drive
Gurley, Alabama 35748
Telephone: 256-503-0675
Email: scottm2@hiwaay.net

# APPENDIX

## TABLE OF CONTENTS

| A-3 | District Court Docket | A-002 |
|---|---|---|
| Doc 7 | Answer of Defendant Beth McDonald | A-010 |
| Doc 16 | Initial Order Governing All Further Proceedings | A-025 |
| Doc 17 | Second Amended Complaint with Jury Demand | A-038 |
| Doc 26 | Opposition to 20 by Brooke Dumont | A-060 |
| Doc 40 | Plaintiff's Title III Motion to Suppress/Exclude Recording | A-065 |
| Doc 41 | Sealed Exhibit 1 Thumb Drive Recording (by atty. Stott) | A-083 |
| Doc 43 | Order (Disposition of Plaintiff's Motions) | A-085 |
| Doc 44 | Protective Order | A-088 |
| Doc 45 | Plaintiff's Motion to Strike 41 (Sealed Exhibit 1) | A-096 |
| Doc 52 | Transcript of March 31, 2026 Hearing | A-102 |
| Doc 63 | Amended Answer by Defendant Brooke Dumont | A-157 |
| Doc 64 | Second Amended Answer by Defendant Beth McDonald | A-184 |
| Doc 67 | Plaintiff's Motion to Unseal 51 | A-206 |
| Doc 71 | Order Denying Motion to Unseal 51 | A-215 |

# A1

## District Court Docket Sheets

**Query**    **Reports**    **Utilities**    **Help**    **Log Out**

APPEAL,PROTECTIVE ORDER

# U.S. District Court
## Northern District of Alabama (Northeastern)
## CIVIL DOCKET FOR CASE #: 5:25-cv-02226-HDM

McDonald v. McDonald et al
Assigned to: Judge Harold D Mooty, III
Case in other court: 11th Circuit, 26-12718-C
Cause: 28:1331 Federal Question: Other Civil Rights

Date Filed: 12/30/2025
Jury Demand: Both
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

**Scott McDonald**    represented by    **Scott McDonald**
789 Neal Dr.
Gurley, AL 35748
256-503-0675
Email: scottm2@hiwaay.net
PRO SE

V.

**Defendant**

**Beth McDonald**    represented by    **James Eric Brisendine**
SCRUGGS DODD & BRISENDINE, ATTYS, PA
207 Alabama Avenue SW
Fort Payne, AL 36968-1109
256-845-5932
Fax: 256-845-4325
Email: eric@sdblaw.us
*ATTORNEY TO BE NOTICED*

**Defendant**

**Brooke Dumont, Esq**    represented by    **Joseph E Stott**
STOTT & HARRINGTON, P.C.
2637 Valleydale Road, Suite 100
Birmingham, AL 35244
205-573-0500
Fax: (205) 637-5131
Email: joe@stottharrington.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
| --- | --- | --- |

**A-002**

| | | |
|---|---|---|
| 12/30/2025 | 1 | COMPLAINT against Brooke Dumont, Esq, Beth McDonald, filed by Scott McDonald. (Attachments: # 1 Parties, # 2 Civil Cover Sheet)(CLD) (Entered: 12/30/2025) |
| 12/30/2025 | 2 | NOTICE of pro se filing Request to Receive Electronic Notifications by Scott McDonald (CLD) (Entered: 12/30/2025) |
| 12/30/2025 | | Filing fee: $ 405.00, receipt number ALND H-1119 (Entered: 12/30/2025) |
| 12/30/2025 | 3 | Summons Issued as to Brooke Dumont, Esq, Beth McDonald. Delivered to plaintiff for service. (CLD) (Entered: 12/30/2025) |
| 01/13/2026 | 4 | SUMMONS Returned Executed by Scott McDonald. Brooke Dumont, Esq served on 1/8/2026, answer due 1/29/2026; Beth McDonald served on 1/7/2026, answer due 1/28/2026. (CLD) (Entered: 01/13/2026) |
| 01/13/2026 | 5 | FIRST AMENDED COMPLAINT against Brooke Dumont, Esq, Beth McDonald, filed by Scott McDonald.(CLD) (Entered: 01/13/2026) |
| 01/28/2026 | 6 | NOTICE of Appearance by James Eric Brisendine on behalf of Beth McDonald (Brisendine, James) (Entered: 01/28/2026) |
| 01/28/2026 | 7 | ANSWER to 5 Amended Complaint by Beth McDonald.(Brisendine, James) (Entered: 01/28/2026) |
| 01/29/2026 | 8 | ANSWER to 1 Complaint by Brooke Dumont, Esq.(Stott, Joseph) (Entered: 01/29/2026) |
| 01/29/2026 | 9 | MOTION to Change Venue by Brooke Dumont, Esq. (Stott, Joseph) (Entered: 01/29/2026) |
| 01/30/2026 | 10 | RESPONSE to Motion to Transfer Venue 29 filed by Scott McDonald. (CLD) (Entered: 01/30/2026) |
| 02/04/2026 | 11 | RESPONSE in Support re 9 MOTION to Change Venue filed by Beth McDonald. (Brisendine, James) (Entered: 02/04/2026) |
| 02/04/2026 | 12 | **ORDER**: Before the court is Defendant Brooke Dumont's motion to transfer venue (doc. 9 ). The court finds that the proper division for this case is the Northeastern Division, so the court **GRANTS** Dumont's motion to transfer venue (doc. 9 ) and **DIRECTS** the Clerk of Court to randomly reassign this case to a judge that pulls cases from the Northeastern Division. Signed by Judge Corey L Maze on 02/04/2026. (CLD) (Entered: 02/04/2026) |
| 02/10/2026 | 13 | **NOTICE OF REASSIGNMENT**: This civil action has been reassigned to the Honorable Harold D. Mooty, III. Please use case number 5:25-cv-02226-HDM on all subsequent pleadings. (CLD) (Entered: 02/10/2026) |
| 02/12/2026 | 14 | Plaintiff's Motion for Leave to File Second Amended Complaint by Scott McDonald. (Attachments: # 1 Exhibit Second Amended Complaint)(LCB) (Entered: 02/12/2026) |
| 02/12/2026 | 15 | **TEXT ORDER**: Plaintiff's 14 motion for leave to file Second Amended Complaint is **GRANTED**. The Second Amended Complaint must be filed on or before **February 17, 2026**. Signed by Judge Harold D Mooty, III on 2/12/2026. (LCB) (Entered: 02/12/2026) |
| 02/12/2026 | 16 | **INITIAL ORDER GOVERNING ALL FURTHER PROCEEDINGS** - with appendices attached. Signed by Judge Harold D Mooty, III on 2/12/2026. (LCB) (Entered: 02/12/2026) |

**A-003**

| 02/17/2026 | 17 | SECOND AMENDED COMPLAINT with **Jury Demand** against All Defendants, filed by Scott McDonald.(LCB) (Entered: 02/17/2026) |
|---|---|---|
| 02/25/2026 | 18 | REPORT of Rule 26(f) Planning Meeting. (Stott, Joseph) (Entered: 02/25/2026) |
| 02/26/2026 | 19 | Plaintiff's Opposed Report of Planning Meeting. filed by Scott McDonald (Attachments: # 1 Exhibit A, # 2 Exhibit B)(LCB) (Entered: 02/26/2026) |
| 02/26/2026 | 20 | Plaintiff's Opposed Motion for Protective Order and Entry of ESI/Privilege-Log Protocol by Scott McDonald. (Attachments: # 1 Exhibit 1 - Proposed Protective Order, # 2 Exhibit 2 - ESI Protocol and Privilege-Log Protocol)(LCB) (Entered: 02/26/2026) |
| 02/26/2026 | 21 | **SCHEDULING ORDER**: This order supersedes any prior orders and governs further proceedings in this case unless modified for good cause. Certain time limits and deadlines apply as set out in this order; Discovery due 9/16/2026. Dispositive Motions due by 10/16/2026. Joint Status Report due 9/2/2026. Pretrial Conference will be scheduled as needed by separate order. An in-person Status Conference is set for 10:00 a.m. on 9/4/2026 in the Federal Courthouse, Huntsville, Alabama before the undersigned. Parties shall be trial ready by 2/2027. Signed by Judge Harold D Mooty, III on 2/26/2026. (LCB) (Entered: 02/26/2026) |
| 02/27/2026 | 22 | **TEXT ORDER**: Defendants are **ORDERED** to file an answer (or separate answers if Defendants do not agree with each other) to Plaintiff's 20 Opposed Motion for Protective Order and Entry of ESI/Privilege-Log Protocol on or before **3/13/2026**. If Defendants believe that a protective order and/or ESI/privilege log protocol is necessary but oppose Plaintiffs proposed orders, Defendants are **ORDERED** to attach their own proposed orders to their answer. Signed by Judge Harold D Mooty, III on 2/27/2026. (LCB) (Entered: 02/27/2026) |
| 03/03/2026 | 23 | ANSWER to 17 Amended Complaint by Brooke Dumont, Esq.(Stott, Joseph) (Entered: 03/03/2026) |
| 03/03/2026 | 24 | ANSWER to 17 Amended Complaint by Beth McDonald.(Brisendine, James) (Entered: 03/03/2026) |
| 03/09/2026 | 25 | Plaintiff's Status Report Regarding Rule 26(f) Meet-and-Confer Efforts and Discovery Protocols by Scott McDonald (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3) (LCB) (Entered: 03/09/2026) |
| 03/13/2026 | 26 | Opposition to re 20 filed by Brooke Dumont, Esq. (Stott, Joseph) (Entered: 03/13/2026) |
| 03/13/2026 | 27 | Defendant Beth McDonald's Objection to 20 Plaintiff's Motion for Protective Order and ESI Protocol filed by Beth McDonald. (Brisendine, James) Modified on 3/16/2026 (LCB). (Entered: 03/13/2026) |
| 03/13/2026 | 28 | Plaintiff's Reply in Support of 20 Motion for Entry of Protective Order and Entry of ESI/Privilege-Log Protocol filed by Scott McDonald. (Attachments: # 1 Exhibit A) (LCB) (Entered: 03/13/2026) |
| 03/13/2026 | 29 | Plaintiff's Supplemental Reply in Support of 20 in Response to 27 filed by Scott McDonald. (LCB) (Entered: 03/13/2026) |
| 03/16/2026 | 30 | **STRICKEN** Pursuant to order 31. Plaintiff's Rule 26(a)(1) Initial Disclosures by Scott McDonald (LCB) Modified on 3/16/2026 (LCB). (Entered: 03/16/2026) |

A-004

| 03/16/2026 | 31 | **TEXT ORDER**: The court **STRIKES** Plaintiffs 30 Initial Disclosures on the grounds that they should be served, not filed, and **DIRECTS** the Clerk to place the document under seal. Signed by Judge Harold D Mooty, III on 3/16/2026. (LCB) (Entered: 03/16/2026) |
|---|---|---|
| 03/17/2026 | 32 | **TEXT ORDER**: Parties are instructed disregard Local Rule 5.3 to the extent that it requires that all discovery materials be filed with the court due to the presence in this case of a pro se party. Instead, discovery materials shall not be filed with the court, except (1) when otherwise directed by the court, or (2) when and to the extent needed by a party in connection with any motion, response to a motion, or during trial. Signed by Judge Harold D Mooty, III on 3/17/2026. (LCB) (Entered: 03/17/2026) |
| 03/18/2026 | 33 | **TEXT ORDER**: The court **SETS** a motion hearing on Plaintiff's 20 Opposed Motion for Protective Order for **2:00 PM on Tuesday, 3/31/2026**, in the Federal Courthouse, 660 Gallatin Street SW, Courtroom V, Huntsville, AL before Judge Harold D. Mooty, III. Each party is **ORDERED** to bring a playable copy of the audio recording at issue in this case, described in paragraphs 26-28 of Plaintiff's 17 Second Amended Complaint, on a USB drive. Signed by Judge Harold D Mooty, III on 3/17/2026. (LCB) (Entered: 03/18/2026) |
| 03/18/2026 | 34 | Plaintiff's Motion for Procedures Governing Playback and Handling of Audio Recording at 3/31/2026 Hearing (Request for in Camera Review in Chambers) by Scott McDonald. (Attachments: # 1 Proposed Order)(LCB) (Entered: 03/18/2026) |
| 03/20/2026 | 35 | Plaintiff's Opposed Expedited MOTION for a ruling within seven days of plaintiff's motion government playback/handling of audio doc. 34 and interim order precluding public playback or public transcript/quotation of audio contents by Scott McDonald. (Attachments: # 1 Exhibit 1)(AHI) (Entered: 03/20/2026) |
| 03/23/2026 | 36 | Plaintiff's Motion for Leave to File Motion to Modify Scheduling Order 21 Regarding Discovery Limitations (Opposed) by Scott McDonald. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit I)(LCB) (Entered: 03/23/2026) |
| 03/24/2026 | 37 | **TEXT ORDER**: Parties should be prepared to discuss all pending motions at the 33 previously scheduled motion hearing, set for 2:00 PM on Tuesday, 3/31/2026. Signed by Judge Harold D Mooty, III on 3/24/2026. (LCB) (Entered: 03/24/2026) |
| 03/26/2026 | 38 | Motion for Order to Show Cause Why Defendants' Counsel Should Not Be Held In Civil Contempt for Violation of the Court's Initial Order (doc 16) by Scott McDonald. (Attachments: # 1 Exhibit A, # 2 Exhibit A-1, # 3 Exhibit A-2, # 4 Exhibit A-3, # 5 Exhibit A-4, # 6 Exhibit A-5, # 7 Exhibit A-6, # 8 Exhibit A-7, # 9 Exhibit A-8, # 10 Exhibit B)(LCB) (Entered: 03/26/2026) |
| 03/27/2026 | 39 | Plaintiff's Motion for Order Directing the Court to Consider Non-Party Nathan McDonald's Title III Motion for Interim Non-Lodging Relief by Scott McDonald. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(LCB) (Entered: 03/27/2026) |
| 03/30/2026 | 40 | Plaintiff's Title III Motion to Suppress/Exclude the September 8, 2025 Recording and to Prohibit Any Use of it Contents in this Proceeding by Scott McDonald. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(LCB) (Entered: 03/30/2026) |
| 03/31/2026 | | Conventional filing received of Exhibit 1-audio to Motions Hearing (Under Seal). (LCB) (Entered: 03/31/2026) |

**A-005**

| | | |
|---|---|---|
| 03/31/2026 | | Minute Entry for proceedings held before Judge Harold D Mooty, III: Motion Hearing held on 3/31/2026 re motions filed by Scott McDonald (Docs. 20, 34-36, and 38-40): Scott McDonald present as pro se plf; Joe Stott present for dft Dumont and Eric Brisendine present for dft McDonald; inquiry by Court re plf's efforts to retain counsel, if any; Court addresses thumb drives w/ recordings brought by each party; Court recesses for in camera review of recording provided by atty Stott and will make same as SEALED Court Exhibit #1; Court reconvenes; motions addressed and will be ruled on as set out - order to be entered; hrg adj. (Court Reporter Suzanne Shell.) (MCV) (Entered: 04/01/2026) |
| 04/01/2026 | 41 | Exhibit List of Court for Motion Hearing held 3/31/26. (MCV) (Entered: 04/01/2026) |
| 04/01/2026 | 42 | **AMENDED SCHEDULING ORDER**: This order supersedes any prior orders and governs further proceedings in this case unless modified for good cause. Certain time limits and deadlines apply as set out in this order; Discovery due 9/16/2026. Dispositive Motions due by 10/16/2026. Joint Status Report due 9/2/2026. Pretrial Conference will be scheduled as needed by separate order. An in-person Status Conference is set for 10:00 a.m. on 9/4/2026 in the Federal Courthouse, Huntsville, Alabama before the undersigned. Parties shall be trial ready by 2/2027. Signed by Judge Harold D Mooty, III on 4/1/2026. (LCB) (Entered: 04/01/2026) |
| 04/01/2026 | 43 | ORDER: As was noted on the record in open court, Mr. McDonald withdrew doc 34 and 35 , and they are, accordingly, **DENIED AS MOOT**. For the reasons explained on the record in open court 38 , 39 and 40 are **DENIED**. Because an amended scheduling has been entered, 36 is **DENIED AS MOOT**. Signed by Judge Harold D Mooty, III on 4/1/2026. (LCB) (Entered: 04/01/2026) |
| 04/01/2026 | 44 | **PROTECTIVE ORDER**. Signed by Judge Harold D Mooty, III on 4/1/2026. (LCB) (Entered: 04/01/2026) |
| 04/02/2026 | 45 | Plaintiff's Opposed Motion to Strike Sealed Conventional Filing by Scott McDonald. (LCB) (Entered: 04/02/2026) |
| 04/02/2026 | 46 | Plaintiff's Motion to Stay all Proceedings Pending Resolution of Petition for Writ of Mandamus by Scott McDonald. (Attachments: # 1 Exhibit A)(LCB) Modified on 4/2/2026 (LCB). (Entered: 04/02/2026) |
| 04/02/2026 | 47 | Plaintiff's Opposed Motion for Leave to File Motion to Compel Defendant Beth McDonald by Scott McDonald. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit B)(LCB) (Entered: 04/02/2026) |
| 04/02/2026 | 48 | Plaintiff's Opposed Motion for Leave to File Motion to Compel Defendant Brook Dumont by Scott McDonald. (Attachments: # 1 Exhibit A, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit B)(LCB) (Entered: 04/02/2026) |
| 04/03/2026 | 49 | Plaintiff's Opposed Motion for Clarification of Initial Order (Doc. 16) by Scott McDonald. (LCB) (Entered: 04/03/2026) |
| 04/03/2026 | 50 | Plaintiff's Opposed Motion to Vacate Protective Order (Doc. 44) by Scott McDonald. (LCB) (Entered: 04/03/2026) |
| 04/03/2026 | 51 | **SEALED ORDER**: The court **DENIES** 45 Motion to Strike. Signed by Judge Harold D Mooty, III on 4/3/2026. (LCB) (Entered: 04/03/2026) |

A-006

| Date | Doc | Description |
|---|---|---|
| 04/06/2026 | 52 | Transcript of Proceedings held on March 31, 2026, before Judge Honorable Harold D. Mooty III. Court Reporter/Transcriber Suzanne Shell, Telephone number 256-551-2569. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE: The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. (A copy can be obtained at https://www.alnd.uscourts.gov/sites/alnd/files/forms/Transcript%20Redaction% 20Policy.pdf) See Transcript Redaction Policy Redaction Request due 4/27/2026. Redacted Transcript Deadline set for 5/7/2026. Release of Transcript Restriction set for 7/5/2026. (LCB) (Entered: 04/06/2026) |
| 04/07/2026 | 53 | *Amended* ANSWER to 5 Amended Complaint *and original Complaint* by Brooke Dumont, Esq.(Stott, Joseph) (Entered: 04/07/2026) |
| 04/09/2026 | 54 | AMENDED ANSWER to *Plaintiff's Second Amended Complaint* by Beth McDonald. (Brisendine, James) (Entered: 04/09/2026) |
| 04/10/2026 | 55 | Plaintiff's OPPOSED MOTION to Strike 53 Answer to Amended Complaint and 54 Amended Answer to Complaint by Scott McDonald. (AHI) (Entered: 04/10/2026) |
| 04/13/2026 | 56 | **TEXT ORDER**: Plaintiff's 46 Motion to Stay is **GRANTED**. All proceedings are **STAYED** pending resolution of Plaintiffs pending petition for writ of mandamus. Plaintiff is **ORDERED** to notify the court promptly upon, but no later than seven days from, receiving notice of any decision on the pending petition for writ of mandamus. Signed by Judge Harold D Mooty, III on 4/13/2026. (LCB) (Entered: 04/13/2026) |
| 06/26/2026 | 57 | Third Party MOTION to clarify *The State's Motion to Clarify Protective Order* by Madison County District Attorney's Office. (Attachments: # 1 Text of Proposed Order Proposed Order on the State's Motion to Clarify)(Cranford, William) (Entered: 06/26/2026) |
| 06/30/2026 | 58 | ORDER: The non-party Motion to Clarify Protective Order 57 is **GRANTED**. It is ordered that the State, as a non-party to this case, is not bound by the Protective Order entered April 1, 2026. Signed by Judge Harold D Mooty, III on 6/30/2026. (LCB) (Entered: 06/30/2026) |
| 07/06/2026 | 59 | Plaintiff's Status Report Regarding Pending Petition for Writ of Mandamus by Scott McDonald (Attachments: # 1 Exhibit 1)(LCB) (Entered: 07/06/2026) |
| 07/08/2026 | 60 | **TEXT ORDER**: The 56 Stay is **LIFTED**. Signed by Judge Harold D Mooty, III on 7/8/2026. (LCB) (Entered: 07/08/2026) |
| 07/08/2026 | 61 | ORDER: For the reasons explained herein, Plaintiff's motion for clarification, (doc. 49), is **DENIED**, Plaintiff's motion to vacate, (doc. 50), is **DENIED**, Plaintiff's Motion to Strike, (doc. 55), is **GRANTED**, Defendants' Amended Answers, (docs. 53, 54), are **STRICKEN** from the record, and Defendants are **ORDERED** to file amended answers addressing the issues laid out in this Order on or before **July 15, 2026**. Signed by Judge Harold D Mooty, III on 7/8/2026. (LCB) (Entered: 07/08/2026) |
| 07/08/2026 | 62 | ORDER: For reasons explained herein, Plaintiff's motions for leave to file a motion to compel (doc. 47, 48) are **DENIED** and it is **ORDERED** that counsel for the parties shall confer and attempt to resolve their differences regarding the discovery at issue.. Signed by Judge Harold D Mooty, III on 7/8/2026. (LCB) (Entered: 07/08/2026) |

**A-007**

| 07/15/2026 | 63 | *Amended* ANSWER to 17 Amended Complaint by Brooke Dumont, Esq.(Stott, Joseph) (Entered: 07/15/2026) |
| 07/15/2026 | 64 | AMENDED ANSWER to 17 Amended Complaint by Beth McDonald. (Brisendine, James) (Entered: 07/15/2026) |
| 07/15/2026 | 65 | MOTION to clarify *Protective Order* by Beth McDonald. (Attachments: # 1 Exhibit Subpoena)(Brisendine, James) (Entered: 07/15/2026) |
| 07/16/2026 | 66 | ORDER: Defendant Beth McDonald's Motion for Clarification, (doc. 65 ), is **GRANTED**. It is **ORDERED** that Defendant Beth McDonald may produce the subpoenaed audio recordings without violating the court's Protective Order. Signed by Judge Harold D Mooty, III on 7/16/2026. (LCB) (Entered: 07/16/2026) |
| 07/22/2026 | 67 | Plaintiff's Opposed Motion to Unseal in Part Order Denying Motion to Strike 51 and for Leave to File a Redacted Public Version by Scott McDonald. (LCB) (Entered: 07/22/2026) |
| 07/22/2026 | 68 | Plaintiff's Opposed Motion to Strike Improper Affirmative Defenses and Limited Impertinent Scandalous Matter from Defendant Beth McDonald's Second Amended Answer 64 by Scott McDonald. (Attachments: # 1 Exhibit 1)(LCB) (Entered: 07/22/2026) |
| 07/22/2026 | 69 | Plaintiff's Opposed Motion to Reconsider Order Denying Motion to Vacate Protective Order 61 and to Vacate Subsequent Clarification Order 62 in Light of Subsequent Events by Scott McDonald. (Attachments: # 1 Exhibit 1)(LCB) (Entered: 07/22/2026) |
| 07/23/2026 | 70 | Plaintiff's Opposed Motion to Strike Improper Affirmative Defenses from Defendant Brook Dumont's Amended Answer 63 by Scott McDonald. (Attachments: # 1 Exhibit 1) (LCB) (Entered: 07/23/2026) |
| 07/31/2026 | 71 | ORDER: For reasons explained within, the court **DENIES** 67 , 68 , 69 and 70 . Accordingly, Plaintiff is **WARNED** to carefully consider, before filing any future motion, whether it duplicates a motion the court has already denied. Signed by Judge Harold D Mooty, III on 7/31/2026. (LCB) (Entered: 07/31/2026) |
| 08/03/2026 | 72 | NOTICE OF APPEAL as to 71 by Scott McDonald. Filing fee $ 605 (H-1314). (LCB) (Entered: 08/04/2026) |
| 08/04/2026 | 73 | TRANSMITTAL SHEET to the Eleventh Circuit Court of Appeals. (LCB) (Entered: 08/04/2026) |
| 08/04/2026 | 74 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 72 Notice of Appeal (LCB) (Entered: 08/04/2026) |
| 08/04/2026 | 75 | USCA Case Number 26-12718-C for 72 Notice of Appeal (LCB) (Entered: 08/04/2026) |
| 08/06/2026 | 76 | TRANSCRIPT REQUEST by Scott McDonald for proceedings held on March 31, 2026 before Judge Honorable Harold D. Mooty III, (LCB) (Entered: 08/06/2026) |
| 08/10/2026 | 77 | Notification of Transcript Filed in District Court (LCB) (Entered: 08/10/2026) |

**PACER Service Center**

**Transaction Receipt**

**A-008**

A-009

# Doc 7

Answer to Amended Complaint by Beth McDonald

FILED
2026 Jan-28  PM 02:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

SCOTT MCDONALD,

Plaintiff,

      v.

BETH MCDONALD, and
BROOKE DUMONT,

Defendants.

1:25-cv-02226-CLM

## ANSWER OF DEFENDANT BETH MCDONALD
## TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Beth McDonald, by and through counsel, answers the Plaintiff's

First Amended Complaint as follows:

## NATURE OF THE ACTION

Defendant Beth McDonald denies all the allegations contained in Plaintiff's

unnumbered "Nature of the Action" and demands strict proof thereof.

## PARTIES

1.    Defendant Beth McDonald admits that Plaintiff Scott McDonald is a

resident of Madison County, Alabama.  Defendant Beth McDonald admits that

Plaintiff is the Defendant's father-in-law.  However, Defendant Beth McDonald

and the Plaintiff's son, Nathan McDonald, are currently separated and in the

**A-010**

process of being divorced.  Defendant denies all other allegations contained in Paragraph One of the First Amended Complaint and demands strict proof thereof.

2.     Defendant Beth McDonald admits that she is a Lawful Permanent Resident (LPN) of the United States.  Defendant Beth McDonald admits that she is a resident of Madison County, Alabama, and she is the estranged daughter-in-law of the Plaintiff's son.  Defendant Beth McDonald denies all other allegations contained in Paragraph Two of the First Amended Complaint and demands strict proof thereof.

3.     Defendant Beth McDonald admits that Defendant Brooke Dumont is an Alabama attorney whose principal place of business is in Huntsville, Alabama. Defendant Beth McDonald also admits that Defendant Dumont is Defendant Beth McDonald's attorney in her divorce proceedings against Nathan McDonald (the Plaintiff's son.)  Defendant Beth McDonald denies all other allegations contained in Paragraph Three of the First Amended Complaint and demands strict proof thereof.

## JURISDICTION AND VENUE

4.     Defendant Beth McDonald admits that Plaintiff has invoked 18 U.S.C. §§ 2510, et seq. (the "Wiretap Act.").  Defendant Beth McDonald denies that said act is applicable to the facts in this case.

2

**A-011**

5.      Defendant Beth McDonald acknowledges that the Court may have supplemental jurisdiction over the Plaintiff's state court claims.  However, Defendant Beth McDonald denies that the "wiretap act" is applicable to the facts in this case.

6.      Defendant Beth McDonald admits that 18 U.S.C. §§ 2520 contains a provision for the recovery of civil damages.  Defendant Beth McDonald denies that the "wiretap act" is applicable to the facts in this case.

7.      Defendant Beth McDonald admits she is subject to the personal jurisdiction of this Court.  Defendant Beth McDonald denies all other allegations contained in Paragraph Seven of the First Amended Complaint and demands strict proof thereof.

8.      Paragraph Eight of the First Amended Complaint is not directed to Defendant Beth McDonald and does not require a response from her.

9.      Defendant Beth McDonald admits that if the Court has jurisdiction over the Plaintiff's claims, venue is proper in the Northern District of Alabama.

10.      Defendant Beth McDonald denies that the Eastern Division of the Northern District of Alabama is the proper venue for this action.

**FACTUAL BACKGROUND**
**The Reasonable Expectation of Privacy: A Father's Private Counsel**

11.      Defendant Beth McDonald admits that on or about September 8, 2025, a domestic dispute occurred between Beth McDonald and Nathan McDonald

which resulted in Nathan McDonald being criminally charges with Domestic Violence Third, and Obstructing Police – Interference with a Domestic Violence Emergency.  Defendant Beth McDonald denies all other allegations contained in Paragraph Eleven of the First Amended Complaint and demands strict proof thereof.

12.    Defendant Beth McDonald admits that Plaintiff arrived at Defendant's residence after Defendant McDonald called 911.  Defendant Beth McDonald denies all other allegations contained in Paragraph Twelve of the First Amended Complaint and demands strict proof thereof.

13.    Defendant Beth McDonald denies the allegations contained in Paragraph Thirteen of the First Amended Complaint and demands strict proof thereof.

**<u>Defendant Beth McDonald's Interception of Private Communications</u>**

14.    Defendant Beth McDonald admits she fled her residence as a result of the domestic altercation with her husband.  Defendant Beth McDonald denies all other allegations contained in Paragraph Fourteen of the First Amended Complaint and demands strict proof thereof.            Admission

15.    Defendant Beth McDonald admits that she began recording the domestic dispute between herself and her husband on her cell phone.  Nathan McDonald forcefully took Defendant Beth McDonald's phone away from her

when she dialed 911 preventing Beth McDonald from speaking to 911 law enforcement. Nathan McDonald then kept Beth McDonald's phone which continued to record. Nathan McDonald kept Beth McDonald's phone on or near his person until either Nathan McDonald or Scott McDonald placed the phone in the refrigerator. Defendant Beth McDonald denies all other allegations contained in Paragraph Fifteen of the First Amended Complaint and demands strict proof thereof.

16.     Defendant Beth McDonald admits that Nathan McDonald did not turn off Beth McDonald's phone after forcefully taking it from her to prevent her from communicating with 911. Nathan McDonald kept Beth McDonald's phone on or near his person until either Nathan McDonald or Scott McDonald placed the phone in the refrigerator. Defendant Beth McDonald denies all other allegations contained in Paragraph Sixteen of the First Amended Complaint and demands strict proof thereof.

17.     Defendant Beth McDonald denies that she needed consent to record when she began her recording of her interactions between herself and her husband. Defendant Beth McDonald denies all other allegations contained in Paragraph Seventeen of the First Amended Complaint and demands strict proof thereof.

18.    Defendant Beth McDonald denies the allegations contained in Paragraph Eighteen of the First Amended Complaint and demands strict proof thereof.

## The Weaponization of Illegally Obtained Evidence

19.    Defendant Beth McDonald denies the allegations contained in Paragraph Nineteen of the First Amended Complaint and demands strict proof thereof.

20.    Defendant Beth McDonald denies the allegations contained in Paragraph Twenty of the First Amended Complaint and demands strict proof thereof.

## Discovery of the Violation:  The Unveiling of the Surveillance

21.    Defendant Beth McDonald does not have enough information to neither admit nor deny the allegations contained in Paragraph Twenty-One of the First Amended Complaint.  Therefore, she denies the same and demands strict proof thereof.

22.    Defendant Beth McDonald does not have enough information to neither admit nor deny the allegations contained in Paragraph Twenty-Two of the First Amended Complaint.  Therefore, she denies the same and demands strict proof thereof.

23.     Defendant Beth McDonald does not have enough information to neither admit nor deny the allegations contained in Paragraph Twenty-Three of the First Amended Complaint.  Therefore, she denies the same and demands strict proof thereof.

24.     Defendant Beth McDonald does not have enough information to neither admit nor deny the allegations contained in Paragraph Twenty-Four of the First Amended Complaint.  Therefore, she denies the same and demands strict proof thereof.

### FIRST CAUSE OF ACTION
### Unlawful Interception of Electronic Communication – Against Beth McDonald

25.     Defendant incorporates by reference her responses to Paragraphs 1-24.

26.     Defendant Beth McDonald denies the allegations contained in Paragraph Twenty-Six of the First Amended Complaint and demands strict proof thereof.

27.     Defendant Beth McDonald denies the allegations contained in Paragraph Twenty-Seven of the First Amended Complaint and demands strict proof thereof.

28.     Defendant Beth McDonald denies the allegations contained in Paragraph Twenty-Eight of the First Amended Complaint and demands strict proof thereof.

## SECOND CAUSE OF ACTION
## Unlawful Disclosure & Use of Surreptitiously Recorded Conversations – Against All Defendants

29.     Defendant incorporates by reference her responses to Paragraphs 1-24.

30.     Defendant Beth McDonald denies the allegations contained in Paragraph Thirty of the First Amended Complaint and demands strict proof thereof.

31.     Defendant Beth McDonald denies the allegations contained in Paragraph Thirty-One of the First Amended Complaint and demands strict proof thereof.

32.     Defendant Beth McDonald denies the allegations contained in Paragraph Thirty-Two of the First Amended Complaint and demands strict proof thereof.

33.     Defendant Beth McDonald denies the allegations contained in Paragraph Thirty-Three of the First Amended Complaint and demands strict proof thereof.

A-017

34.     Defendant Beth McDonald denies the allegations contained in Paragraph Thirty-Four of the First Amended Complaint and demands strict proof thereof.

35.     Defendant Beth McDonald denies the allegations contained in Paragraph Thirty-Five of the First Amended Complaint and demands strict proof thereof.

36.     Defendant Beth McDonald denies the allegations contained in Paragraph Thirty-Six of the First Amended Complaint and demands strict proof thereof.

37.     Defendant Beth McDonald denies the allegations contained in Paragraph Thirty-Seven of the First Amended Complaint and demands strict proof thereof.

## THIRD CAUSE OF ACTION
### Illegal Installation of Eavesdropping Device – Against Beth McDonald

38.     Defendant incorporates by reference her responses to Paragraphs 1-24.

39.     Defendant Beth McDonald denies the allegations contained in Paragraph Thirty-Nine of the First Amended Complaint and demands strict proof thereof.

40.     Defendant Beth McDonald denies the allegations contained in Paragraph Forty of the First Amended Complaint and demands strict proof thereof.

9

A-018

41.    Defendant Beth McDonald denies the allegations contained in Paragraph Forty-One of the First Amended Complaint and demands strict proof thereof.

42.    Defendant Beth McDonald denies the allegations contained in Paragraph Forty-Two of the First Amended Complaint and demands strict proof thereof.

## FOURTH CAUSE OF ACTION
### Unlawful Eavesdropping – Against Beth McDonald

43.    Defendant incorporates by reference her responses to Paragraphs 1-24.

44.    Defendant Beth McDonald denies the allegations contained in Paragraph Forty-Four of the First Amended Complaint and demands strict proof thereof.

45.    Defendant Beth McDonald denies the allegations contained in Paragraph Forty-Five of the First Amended Complaint and demands strict proof thereof.

46.    Defendant Beth McDonald denies the allegations contained in Paragraph Forty-Six of the First Amended Complaint and demands strict proof thereof.

47.    Defendant Beth McDonald denies the allegations contained in Paragraph Forty-Seven of the First Amended Complaint and demands strict proof thereof.

48.    Defendant Beth McDonald denies the allegations contained in Paragraph Forty-Eight of the First Amended Complaint and demands strict proof thereof.

49.    Defendant Beth McDonald denies the allegations contained in Paragraph Forty-Nine of the First Amended Complaint and demands strict proof thereof.

50.    Defendant Beth McDonald denies the allegations contained in Paragraph Fifty of the First Amended Complaint and demands strict proof thereof.

51.    Defendant Beth McDonald denies the allegations contained in Paragraph Fifty-One of the First Amended Complaint and demands strict proof thereof.

52.    Defendant Beth McDonald denies the allegations contained in Paragraph Fifty-Two of the First Amended Complaint and demands strict proof thereof.

**FIFTH CAUSE OF ACTION**
**Divulging Illegally Obtained Information – Against All Defendants**

53.    Defendant incorporates by reference her responses to Paragraphs 1-24.

11

54.    Defendant Beth McDonald denies the allegations contained in Paragraph Fifty-Four of the First Amended Complaint and demands strict proof thereof.

55.    Defendant Beth McDonald denies the allegations contained in Paragraph Fifty-Five of the First Amended Complaint and demands strict proof thereof.

56.    Defendant Beth McDonald denies the allegations contained in Paragraph Fifty-Six of the First Amended Complaint and demands strict proof thereof.

57.    Defendant Beth McDonald denies the allegations contained in Paragraph Fifty-Seven of the First Amended Complaint and demands strict proof thereof.

58.    Defendant Beth McDonald denies the allegations contained in Paragraph Fifty-Eight of the First Amended Complaint and demands strict proof thereof.

**PRAYER FOR RELIEF**
**On All Causes of Action**

59.    Defendant Beth McDonald denies the Plaintiff is entitled to any compensatory damages, and demands strict proof thereof.

60.    Defendant Beth McDonald denies the Plaintiff is entitled to any statutory, punitive, or exemplary damages, and demands strict proof thereof.

61.    Defendant Beth McDonald denies the Plaintiff is entitled to any award of attorney's fees or costs, and demands strict proof thereof.

62.    Defendant Beth McDonald denies the Plaintiff is entitled to any pre or post judgment interest, and demands strict proof thereof.

63.    Defendant Beth McDonald denies the Plaintiff is entitled to any additional relief, and demands strict proof thereof.

## DEFENDANT BETH MCDONALD'S AFFIRMATIVE DEFENSES

1.    Defendant Beth McDonald denies each and every allegation of the First Amended Complaint not explicitly admitted in this Answer and demands strict proof thereof.

2.    Plaintiff's First Amended Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

3.    Defendant Beth McDonald did not owe any duties to Plaintiff.

4.    Defendant Beth McDonald did not breach any duties to Plaintiff.

5.    Plaintiff's damages, if any, were proximately caused or contributed to by unforeseeable, independent, intervening or superseding events beyond Defendant Beth McDonald's control and unrelated to any conduct by Beth McDonald.

6.    Plaintiff's damages, if any, arose as a result of acts or omission of others, not Beth McDonald.

7.    Defendant Beth McDonald is not guilty of culpable conduct and is not liable to Plaintiff under any theory of law.

8.    Defendant Beth McDonald denies that she engaged in any intentional conduct whatsoever that caused Plaintiff any alleged injury or damage.

9.    Defendant Beth McDonald's actions, if any, were justified under applicable law.

10.    Defendant Beth McDonald denies that she engaged in any conduct that entitles Plaintiff to recover punitive damages.

11.    Plaintiff is not entitled to prevail on his claims due to unclean hands.

12.    Defendant preserves all other affirmative defenses set forth in Fed. R. Civ. Pro. 8 (c).

13.    Defendant reserves the right to amend her Answer.

JURY TRIAL REQUEST – Defendant Beth McDonald requests a jury trial on all issues so triable.

Respectfully submitted,

/s/ J. Eric Brisendine_____
J. Eric Brisendine (ASB-7604-a58b)
Scruggs, Dodd & Brisendine,
Attorneys, P.A.
PO Box 681109
207 Alabama Avenue Southwest
Fort Payne, Alabama 35968
(256) 845-5932
eric@sdblaw.us

14

**A-023**

# Doc 16

## Initial Order

FILED

2026 Feb-12  PM 02:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| **SCOTT MCDONALD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:25-cv 02226-HDM** |
| | ) | |
| **BETH MCDONALD, et al,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

**INITIAL ORDER**
**GOVERNING ALL FURTHER PROCEEDINGS**

This order governs all further proceedings in this court. The court assumes that all attorneys and *pro se* parties have read this order and the Local Rules of the Northern District of Alabama and will comply with them. The Local Rules are available at www.alnd.uscourts.gov.

I.    **DUTIES UNDER FEDERAL RULE OF CIVIL PROCEDURE 26(f)**

**A. The Planning Conference**

Federal Rule of Civil Procedure 26(f) requires the parties to confer "as soon as practicable." Therefore, no later than twenty-one days from the date of this order, the parties are ORDERED to conduct a Rule 26(f) conference. At this planning conference, the parties must, at a minimum:

- Discuss the nature and basis of their claims and defenses;

**A-025**

- Discuss the possibility of a prompt settlement or resolution of the case (*see also infra* Part I.D);

- Make or arrange for the disclosures required by Federal Rule of Civil Procedure 26(a)(1);

- Develop a proposed discovery plan that indicates the parties' views and proposals concerning the matters addressed in Rule 26(f)(1)-(4); and, in appropriate cases,

- Consider whether to consent to the exercise of Magistrate Judge jurisdiction under 28 U.S.C. § 636(c).

### B. Report of the Planning Conference

Within fourteen days of the planning conference, the parties must jointly file a report with the Clerk of Court that follows the general format of Appendix III to this order. The report should include a brief synopsis of the case that advises the court of the general claims and defenses of the parties. Such synopsis must not exceed one page. Should the parties disagree about an item in the report, the positions of the parties as to that item should be clearly set forth in separate paragraphs.

When preparing the report, the parties should be aware that this case should be ready for trial within fifteen months from the date of service of the complaint. If the parties believe that the case will take more than fifteen months to bring to trial, the parties must state with specificity their grounds for suggesting deadlines beyond that time frame.

The report must include a discovery plan stating the parties' views and proposals on:

- any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced; and

- any issues about claims of privilege or of protection as trial-preparation materials. If the parties agree on a procedure to assert these claims after production (*i.e.*, a "clawback" agreement), the report should include a statement whether they want the court's scheduling order to adopt their agreement under Federal Rule of Evidence 502.

Upon receipt of the report, the court may set a Federal Rule of Civil Procedure 16(b) scheduling conference. If the parties want the court to set such a conference, the parties should request one in their report.

### C. Compliance with HIPAA

In accordance with the requirements of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996), and regulations promulgated thereto, when Protected Health Information is relevant to the claims or defenses presented in an action, a party seeking such Protected Health Information must present a valid authorization at the Rule 26 planning meeting to be executed by the party from whom such Protected Health Information is sought.  This authorization need not be filed with the court.

The parties may file with the court a motion for a qualified protective order, to which all parties stipulate, and, contemporaneously with that filing, e-mail to Mooty_chambers@alnd.uscourts.gov, a proposed qualified protective order, in

substantially the form attached to this order as Appendix I, to be entered by stipulation of counsel for all parties.

### D. Suitability of Action for Alternative Dispute Resolution

To avoid unnecessary costs and fees, the court requires that the attorneys for all parties make an early analysis of the case along with their clients and be prepared to discuss settlement at the planning conference. The parties must also consider and discuss at that time whether this action may be suitable for mediation, whether under the court's ADR plan or otherwise. The parties should expect the court to order this case to mediation before the submission of dispositive motions.

### E. Commencement of Discovery

The parties are authorized to commence discovery pursuant to the terms of Federal Rule of Civil Procedure 26 immediately after the required planning report has been filed. In cases removed from state court in which any discovery requests were filed before such removal, those discovery requests shall be deemed to have been filed on the date the parties file the required planning report. The court instructs the parties to review Local Rule 5.3 regarding the non-filing of discovery materials in civil cases.

## II. Submissions Procedures

### A. CM/ECF Record

The official record of this case is maintained electronically pursuant to CM/ECF. Documents must be filed through CM/ECF in Portable Document Format

("PDF"), unless submitted by a party appearing *pro se*, in which instance documents should be filed with the Clerk of Court. Except in extraordinary circumstances, all filings must be consistent with the Civil Administrative Procedures Manual found on the court's website.

### B. Protected Information

Counsel are reminded to comply with the Administrative Procedures Manual's requirements for redacting personal identifiers (*e.g.*, Social Security numbers, drivers' license numbers, birth dates, addresses, telephone numbers, and bank account or credit card information) and other personal or sensitive information in compliance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899 (2002), and regulations promulgated thereto.

The parties must comply with the Administrative Procedures Manual when filing materials under seal.

### C. Required Electronic Submissions to Chambers

Counsel must e-mail a copy of any filed motion or brief, and any proposed order, to Mooty_chambers@alnd.uscourts.gov. All digital copies should be sent in Microsoft Word format. All communications to the chambers e-mail address must show a copy to opposing counsel or *pro se* parties. If a *pro se* party does not have an e-mail address on file, the sender must certify that a copy of the communication will be sent to the physical address given.

**A-029**

### III.    Motion Practice

All motions must comply with the requirements of this order. Except for good cause shown, motions and briefs that do not conform to the requirements of this order may be stricken. Materials submitted after the close of the submission schedule will not be considered absent leave of court.

### A. Format

The parties' motions and briefs must be in Times New Roman font and fourteen-point type, except that footnotes may be in twelve-point type. Documents must be double-spaced except that footnotes and indented quotations may be single-spaced. The court will not consider arguments incorporated by reference to earlier filings and will not consider substantive arguments raised only in footnotes. Citations to the record must refer to the CM/ECF document number, page number, and, where available, paragraph or line number.

Requests for oral argument, if applicable, must appear on the first page of the motion, brief, or opposition directly below the case number in the caption of the pleading.

For all motions other than summary judgment motions, an indication whether the motion is opposed or unopposed must appear in both the **title** and the caption of the motion.

### B. Separately Filed Exhibits

When parties submit evidentiary materials in connection with a motion, brief, or response thereto (except on summary judgment), each exhibit must be separately filed in CM/ECF as its own sub-document to the motion, brief, or response thereto, which should be designated in CM/ECF as the main document. For example, a motion might be Doc. 12, and exhibit A to that motion would be Doc. 12-1. Special requirements for separately filed evidentiary submissions in connection with summary judgment motions are enumerated in Appendix II, *infra*.

Parties must contact chambers for further instructions to submit evidentiary materials that may not be electronically filed through CM/ECF, such as video recordings or physical items.

### C. Proposed Orders

Any motion or opposition may be accompanied by a proposed order. **All proposed orders must be both filed in CM/ECF (as a separate sub-document to the main filing) and e-mailed (in Microsoft Word format) to the chambers e-mail address**.

### D. Dispositive Motions

Any motion for summary judgment filed in this action must comply with all requirements of Appendix II to this order. Any other dispositive motion must comply with the requirements of Appendix II to the extent practicable.

### E. Other Motions

A party filing a motion that is not a summary judgment motion may either incorporate in the motion the arguments and authorities upon which it relies or simultaneously file a separate brief with its motion. The total number of pages filed must not exceed fifteen (exclusive of exhibits).

Any party who desires to file a response to a non-dispositive motion shall file the response within fourteen days of the motion. Any corresponding reply shall be filed within seven days thereafter. The court may rule on any non-dispositive motion prior to the filing of any responsive briefs. Responsive briefs are limited to fifteen pages, exclusive of exhibits. Reply briefs, if any, are limited to ten pages. Sur-replies are not permitted without leave of court.

### F. Motions About Discovery Disputes

Parties must seek leave of the court before filing a motion about a discovery dispute. Counsel for the moving party must confer with opposing counsel to attempt to resolve their disagreements regarding discovery. If the parties are unable to resolve their dispute in that manner, then the party filing the motion for leave of the

court shall describe all efforts taken to resolve the disputed matter and shall certify in the motion that the parties conferred pursuant to this order and were unable to reach an agreement. If an attorney makes a good faith effort but is unable to contact opposing counsel, then the attorney shall describe in the motion the attorney's efforts to contact and coordinate with opposing counsel. Failure to include a statement of the parties' attempt to resolve the matter without the court's intervention may result in an automatic denial of the motion.

If a motion for leave is opposed, the non-moving party may file a response within three days. The motion for leave must specify the nature of the discovery dispute and the steps the parties have taken to resolve it. The motion for leave need only include the facts relevant to the dispute; legal argument and citations are not necessary in the motion for leave. If the court grants leave, the moving party must file the discovery motion no later than the next business day.

### G. Motion of Counsel to Withdraw

Once an attorney has appeared as counsel for a party, he or she may not withdraw from the action merely by filing a "notice of withdrawal," but must file a motion stating the specific grounds for withdrawal and seeking permission of the court to do so. Any motion to withdraw which, if granted, would leave a party unrepresented by counsel must include a certification that the moving attorney has served a copy of the motion on his or her client and has informed the client of the

**A-033**

right to promptly file an objection with the court. The motion must also include the notation, "Future notice to (name of party) is to be made at the following address: (state last known address of the party)."

### H. Motions for Extension of Time

Absent extraordinary unforeseen circumstances, any motion for an extension of any deadline must be filed three or more days before the deadline sought to be extended. Motions for an extension of time that do not satisfy this requirement will ordinarily be automatically denied. Successive requests for extensions by the same party are disfavored. Parties may agree among themselves to adjust deadlines for expert testimony without leave of court so long as such adjustments are agreed upon by all parties and do not affect the discovery cutoff or dispositive motions deadline.

**Extensions to the deadlines set to complete all discovery and file dispositive motions will not be granted absent extraordinary cause.**

Any motion to extend the deadline to complete all discovery must state when the moving party first propounded discovery requests and/or noticed depositions and must include any other information that will help the court determine how effectively the parties have used the amount of time originally allowed for discovery.

### I.  Motions To Seal

Any motion to seal must satisfy the legal standard in *Romero v. Drummond Co., Inc.*, 480 F.3d 1234 (11th Cir. 2007). Motions that do not satisfy this standard will be routinely denied.

### J.  Oral Argument

If any party desires to have the opportunity for oral argument on a motion, that party should request argument in its motion (or response).

To develop future generations of practitioners, in deciding whether to have argument the court will consider, among other things, whether an attorney with fewer than seven years of experience will be arguing. If the court grants the request for oral argument and one of the participating attorneys has fewer than seven years of experience, the court will give the parties additional time for argument to provide a more experienced attorney with the opportunity to supplement the less experienced attorney's argument (and an appropriate response).

All attorneys will be held to the highest professional standards. All attorneys are expected to be prepared and to have a degree of authority commensurate with the proceeding. The court recognizes that there may be many different circumstances in which it is not appropriate for a newer attorney to argue a motion. Thus, the court emphasizes that it draws no inference from a party's decision not to have such an attorney argue any motion. Additionally, the court draws no inference about the

**A-035**

relative importance of a particular motion, or about the merits of a party's arguments,

from the party's decision to have (or not to have) a newer attorney argue the motion.

**DONE** and **ORDERED** this 12th day of February, 2026.

_____

**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE

A-037

# Doc 17

## Second Amended Complaint

FILED

2026 Feb-17  AM 10:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

FILED

2026 FEB 17  A 10: 19

U.S. DISTRICT COURT
N.D. OF ALABAMA

SCOTT MCDONALD,

    *Plaintiff,*

    v.

BETH MCDONALD, BROOKE
DUMONT, ESQ,

    *Defendants.*

Case No.: 5:25-cv-02226-HDM

JURY TRIAL DEMANDED

## SECOND AMENDED COMPLAINT

Plaintiff Scott McDonald alleges the following based on personal knowledge as to allegations regarding Plaintiff and on information and belief as to other allegations:

## NATURE OF THE ACTION

This action arises from the alleged nonconsensual interception, recording, disclosure, and use of Plaintiff's private communications. On September 8, 2025, Plaintiff spoke privately with his son by telephone and later in person inside his son's home. Plaintiff alleges Defendant Beth McDonald intentionally caused an audio-recording device to operate in the home to record those communications without consent while she was not present. Plaintiff further alleges Beth provided the recording to her attorney, Defendant Brooke Dumont, and that Dumont later

**A-038**

transmitted the recording to opposing counsel and threatened to use it as leverage in divorce negotiations. Plaintiff seeks damages and equitable relief for these alleged invasions of privacy and related wrongful conduct.

## PARTIES

1.      Plaintiff Scott McDonald ("Plaintiff McDonald") is an individual residing in Madison County, Alabama. Plaintiff McDonald is the concerned father whose private conversations with his son were surreptitiously intercepted and weaponized in a divorce proceeding. At all times relevant to this Complaint, Mr. McDonald was a citizen of Alabama, residing in Madison County.

2.      Defendant Beth McDonald ("Beth") is an individual residing in Madison County, Alabama. Beth is Plaintiff's daughter-in-law. Plaintiff alleges Beth engaged in the conduct described below involving nonconsensual recording of private communications. Beth is a foreign national, Lawful Permanent Resident (LPR), authorized to live and work in the United States.

3.      Defendant Brooke Dumont ("Attorney Dumont") is an attorney licensed to practice law in the State of Alabama, with a principal place of business located at 2101 West Clinton Avenue, Huntsville, Alabama, 35804. Attorney Dumont is alleged to have received the recording from Beth, and to have disclosed and used it in the divorce dispute. Upon information and belief, Attorney Dumont is a citizen of Alabama.

## JURISDICTION AND VENUE

4.      28 U.S.C. § 1331: This Court has original subject-matter jurisdiction over this civil action because it arises under the laws of the United States, specifically the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 et seq. (the 'Wiretap Act'), which prohibits the intentional interception, disclosure, and use of wire, oral, or electronic communications.

5.      28 U.S.C. § 1367(a): This Court has supplemental jurisdiction over Plaintiff's state-law claims for intrusion upon seclusion and wantonness because they are so related to the federal claims that they form part of the same case or controversy.

6.      18 U.S.C. § 2520: This Court is explicitly authorized to hear civil actions for the recovery of damages and other relief by any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of the Wiretap Act.

7.      Fed. R. Civ. P. 4(k)(1)(A) and Ala. R. Civ. P. 4.2: This Court has personal jurisdiction over Defendant Beth McDonald because she is a resident of Alabama, subject to federal and state jurisdiction, and committed the tortious acts alleged herein within the State of Alabama.

8.      This Court has personal jurisdiction over Defendant Dumont because she practices law in Alabama, maintains an office in this District, and the alleged

**A-040**

acts giving rise to Plaintiff's claims, including receiving, using, and transmitting the intercepted recording and related communications, occurred in or were directed into this District.

9.     28 U.S.C. § 1391(b)(1):  Venue is proper in this District because all Defendants reside or conduct business in the State of Alabama and at least one Defendant resides within the Northern District of Alabama.

10.     28 U.S.C. § 1391(b)(2):  Venue is proper in the Northern District of Alabama, Northeastern Division, because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

### Relationship of Parties & Relevant History

11.     Defendant Beth McDonald is married to Nathan McDonald. Nathan is Plaintiff Scott McDonald's son. Defendant Brooke Dumont is Beth's legal counsel.

12.     Throughout 2024, with increasing frequency and intensity, Beth began insisting that she and Nathan get divorced. For the preceding 10 years, Nathan was the sole financial provider while Beth was a work-at-home mom. Initially, Nathan resisted Beth's divorce demands, preferring to stay married, but ultimately, he hired an attorney and in October, 2024, he filed for divorce. The couple continued to live together, but the home environment became contentious.

4

A-041

13. Nathan purchased an inexpensive body camera and began recording his interactions with Beth to protect against allegations she made against him. In turn, Beth recorded Nathan using her cell phone. In-home recording between the parties became a hotly contested issue.

14. Beth eventually hired attorney Brook Dumont (formerly Brooke Ezell), and in November, 2024, filed an answer, counterclaim, and motion for an emergency pendente lite order. The first two items in the motion alleged that Nathan's asking her about the children each day amounted to harassment, and that recording her created a hostile home environment.

15. In January of 2025, Nathan gave Beth a proposed pre-divorce agreement to dismiss the pending action and postpone divorce until a future date. Under the agreement, Beth would move into Nathan's newly-purchased house for up to 3 years or until she could find sustainable employment, establish credit and become self-sufficient, at which point in time she would move out into a place of her own. The parties would then separate and enter into an uncontested divorce. The agreement included a stipulation that all recording would cease in the interim.

16. Based on the terms of the agreement, in February of 2025, Nathan and Beth filed a joint motion to dismiss the divorce litigation and the case was dismissed. A few months later Nathan and Beth moved into Nathan's new house.

**A-042**

17.    On September 5, 2025, in breach of the pre-divorce agreement, through her attorney, Brooke Dumont, Beth filed a new complaint for divorce. As of September 8, 2025, Nathan had not been served or otherwise notified that Beth filed for divorce.

**The Reasonable Expectation of Privacy**

18.    On September 8, 2025, following a heated domestic dispute, Nathan sought the counsel of his father, Plaintiff McDonald. Nathan placed a phone call from the privacy of his own home seeking guidance and support from his father during a tumultuous moment. At the precise time of the call, Defendant Beth was physically at a different location and not present at Nathan's home. Plaintiff received Nathan's call within the sanctity of his own private residence, fully expecting that his words were for his son's ears alone.

19.    Following the phone call that evening, Plaintiff made the twenty-minute drive to Nathan's house to discuss the events of the evening. After arrival, Nathan and Plaintiff went inside Nathan's house where they had a private, in-person discussion about family and legal matters as they pertained to Nathan and Beth's domestic dispute. No one else was present inside Nathan's house, and Plaintiff fully expected that no one else would hear their private conversation.

20.    The phone call and the in-person conversation between Plaintiff and Nathan concerned private and confidential family matters and the potential for

**A-043**

police involvement— topics reasonably expected to remain private. Neither Plaintiff nor his son Nathan harbored any suspicion that their conversations were being monitored. As the only two parties to the phone call and the in-person conversation, they operated under a reasonable and justifiable expectation of absolute privacy.

### Preparation for Surreptitious Recording

21.    As of September 8, 2025, Defendant Beth was using a Samsung Galaxy cell phone running the Android operating system.

22.    Under factory settings, Galaxy recording apps turn off automatically when the phone goes into "lockscreen" mode. By default, Galaxy phones go into lockscreen mode 30 seconds after use.

23.    Upon information and belief, Beth downloaded and installed onto her cell phone a third-party recording app that allows the phone to record audio, surreptitiously, when the phone goes into lockscreen mode and appears to be off. Beth configured the recording app to utilize this function.

### Interception of Private Communications

24.    At the culmination of the domestic dispute, on the evening of September 8, 2025, Defendant Beth left Nathan's house and went next door to the house owned by Beth and Nathan's mutual friend, Devin.

7

**A-044**

25.    Before leaving Nathan's house that evening, Beth activated the voice recording app previously installed on her phone to record audio when the phone appeared to be off, effectively transforming the phone into a stand-alone bugging device. Beth also activated security features to prevent anyone other than herself from disabling the device's recording function.

26.    Defendant Beth caused the activated recording device to remain inside Nathan's house where it continued recording for several hours in her absence. Later that evening, Beth regained possession of the device, confirmed the recording was still running, and then turned it off.

27.    Defendant Beth intentionally pre-configured her cell phone and caused the device to record audio inside Nathan's home with the expectation that the resulting audio recording would later be used to her benefit in divorce proceedings. Beth's device successfully intercepted and recorded the entirety of the previously mentioned September 8 private phone call and in-person conversation between Plaintiff and his son, Nathan. Beth's pre-configured phone surreptitiously recorded with clarity each word spoken by Nathan and Plaintiff during their private conversations that evening.

28.    In the alternative, if Beth contends she did not purposefully leave the device inside the residence or that Nathan took the device from her before she left, Plaintiff alleges that Beth nonetheless intentionally activated and configured the

8

**A-045**

recording application to record surreptitiously, including by enabling settings intended to prevent disabling the recording function, and that recording communications inside the residence, including communications between Nathan and third parties, was a foreseeable consequence of that intentional conduct. Plaintiff further alleges that Beth took no steps to disable the recording function and thereafter intentionally retained the recording and provided it to her counsel for use in the divorce dispute.

29.     At no point did Beth seek or obtain consent from Plaintiff or Nathan to record their conversations. At no time did Beth notify Plaintiff that her phone was recording inside Nathan's home. Beth did not ask Devin to retrieve her phone or to call Nathan to tell him her phone was recording. Beth did not use any "remote wipe" or lockout feature to disable or turn off the recording app. Beth made the recording surreptitiously, acting with the intent to capture private communications for her benefit, without the knowledge of the parties being recorded, and intentionally preserved the recording for her use and benefit.

30.     Beth's clandestine activation and placement of a device to capture private conversations inside a residence is the type of eavesdropping conduct addressed in Alabama's criminal code, reinforcing that the means used were inherently improper, clandestine, and objectively offensive. (See: Ala. Code § 13A-11-30; Ala. Code § 13A-11-31).

9

**A-046**

## Nathan's Arrest

31.     While Beth was at Devin's house next door following the domestic dispute, someone placed a 911 call and reported Nathan's home address as the location of a domestic disturbance. When deputies arrived, they obtained statements from Beth and Nathan. Nathan was arrested and taken into custody on two misdemeanor counts of domestic violence.

## The Weaponization of Illegally Obtained Evidence

32.     Following this interception, Beth provided a copy of the recording to Defendant Dumont. Dumont thereafter used and disclosed the recording and its contents in connection with the divorce dispute, including threatening to use its contents as leverage in negotiations.

33.     On or about September 18, 2025, Defendant Dumont transmitted a copy of Beth's recording via email to Nathan's divorce attorney. In the transmittal email, Dumont threatened to use the contents of the recording as leverage in divorce negotiations.

34.     The resultant audio recording generated by Beth's device concerned private communications between Nathan and a third party, Plaintiff McDonald, captured in real time as the conversations occurred, in which Beth did not participate and was not present, and which occurred in private residential settings.

10

**A-047**

**Discovery of the Violation**

35.    Plaintiff McDonald remained completely unaware that his private conversations with his son had been captured and distributed until Beth's recording surfaced in related legal proceedings involving Nathan.

36.    On or about October 30, 2025, Nathan informed Plaintiff that the Madison County District Attorney's office possessed a recording containing portions of the private September 8 conversations. The audio file received from the Madison County District Attorney's office is about ten (10) minutes in length and includes the phone conversation between Nathan and his father, Plaintiff Scott McDonald. (Audio file: **Audio Monday 8th September.mp3**).

37.    On or about December 5, 2025, Nathan informed his father, Plaintiff McDonald, that a recording of their private September 8 conversations had been transmitted to Defendant Dumont. The audio file obtained from Defendant Dumont is about forty-six (46) minutes in length and includes the phone call conversation and the in-person conversation between Nathan and Plaintiff. ("the recording"). The recording also includes a phone call between Nathan and his mother that evening. (Audio file: **AUD-20250910-WA0001.mp3**).

38.    Plaintiff McDonald's learning that the September 8 recording had been circulated among attorneys and law enforcement shattered his expectation of privacy and caused him significant distress and damage to his dignity.

**A-048**

**The Intercepted Private Communications**

39. Neither Defendant deleted the recording. Instead, Defendants listened to the recordings and thereby gained insight into private, confidential, nonpublic information. Defendants subsequently used the information, and Dumont transmitted the recording to Nathan's divorce attorney.

40. After Plaintiff McDonald obtained copies of the two known versions of the September 8 recording, Plaintiff evaluated the audio files to glean insight into, and understanding of, what exactly was recorded and what benefit it may provide in Defendants' possession.

41. Plaintiff determined that the recording provided Defendants with significant insight into Nathan's private affairs. Defendant Dumont used this insight to strategic advantage in providing services to her client, Beth McDonald. None of the recorded content would have been available to Defendants without the nonconsensual, surreptitious intrusion into Plaintiff's private affairs.

42. Neither Defendant notified recipients of the audio files they distributed that the recordings were made surreptitiously, without the consent of those whose communications were intercepted and recorded.

43. The continuing threat of future distribution, use, and the potential for public disclosure of the September 8 recording requires Plaintiff to continue to expend time and resources addressing dissemination risk.

**A-049**

**Defendant Dumont Used the Recording in Providing Legal Services**

44. Dumont provided legal representation to Beth McDonald in the divorce dispute.

45. Dumont reviewed, listened to, and evaluated the audio recording containing Plaintiff's private communications; incorporated the contents into litigation and negotiation strategy; transmitted the recording to Nathan's divorce attorney; threatened to use its contents as leverage in negotiations; and billed Beth McDonald for services associated with reviewing, strategizing around, transmitting, and threatening use of the recording, thereby receiving compensation for those services.

**Different Versions of the September 8 Recording**

46. The version of the September 8 recording obtained from the Madison County District Attorney's office differs from the version distributed by Defendant Dumont. The version obtained from the Madison County District Attorney's office, submitted as evidence in Nathan's related criminal case, appears edited and/or altered when compared to the version obtained from Defendant Dumont.

47. Plaintiff does not yet know, and therefore does not allege, who edited the recording or how the edited and/or altered version was provided to the Madison County District Attorney's office.

**A-050**

48.     The existence of an edited and/or altered version of the recording in the possession of the Madison County District Attorney's office increased the risk of the further dissemination, use and public disclosure of Plaintiff's private communications beyond the divorce dispute.

49.     Plaintiff will seek discovery regarding the creation, editing, and chain of custody of different versions of the recording.

### FIRST CLAIM FOR RELIEF
#### UNLAWFUL INTERCEPTION OF COMMUNICATIONS
(Against Defendant Beth McDonald)

50.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

51.     This claim is a civil action brought under the Federal Wiretap Act, seeking relief under 18 U.S.C. § 2520 for violations of 18 U.S.C. § 2511.

52.     On September 8, 2025, Defendant Beth McDonald intentionally activated a recording application on her cellular telephone with the purpose of recording private conversations for later use in legal proceedings.

53.     Beth's cellular telephone, as used with the recording application, constituted an electronic device within the meaning of 18 U.S.C. § 2510.

54.     As a result of these intentional acts, Beth intercepted and recorded (a) a private telephone call between Plaintiff and Nathan McDonald and (b) a private

14

in-person conversation between Plaintiff and Nathan inside Nathan's residence, in violation of 18 U.S.C. § 2511.

55. Beth accomplished the interception by configuring the device to record surreptitiously and causing it to acquire the contents of the communications in real time as they occurred.

56. The interception was performed without authorization or consent from any party to the communications. Plaintiff and Nathan did not know of, and did not consent to, any recording or interception.

57. Beth was not a party to the telephone call or the in-person conversation and was not physically present for either communication.

58. Beth acted intentionally and with knowledge of the natural and probable consequences of her conduct, including that the surreptitious recording would capture communications between Nathan and third parties inside the residence, rather than being the result of mistake or accident.

59. Plaintiff subjectively expected these communications would not be intercepted, and that expectation was objectively reasonable because both communications occurred in private residences, no recording was announced, and Beth was not present.

60. Surreptitiously recording private father–son communications to gather information for later use in legal proceedings is highly offensive.

61. Plaintiff suffered damages, including, without limitation, emotional distress and damage to his dignity upon learning the private communications were recorded.

62. As a direct and proximate result of Beth's violation of the Act, Plaintiff is entitled to all relief available under the Act, including statutory damages and such other relief as permitted under 18 U.S.C. § 2520.

## SECOND CLAIM FOR RELIEF
### DISCLOSURE & USE OF SURREPTITIOUSLY RECORDED CONVERSATIONS
(Against All Defendants)

63. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

64. This claim is a civil action brought under the Federal Wiretap Act, seeking relief under 18 U.S.C. § 2520 for violations of 18 U.S.C. § 2511.

65. Defendant Beth McDonald intentionally disclosed the contents of the intercepted September 8, 2025 communications in violation of 18 U.S.C. § 2511(1)(c), and intentionally used the contents of the intercepted communications in violation of 18 U.S.C. § 2511(1)(d).

66. Beth disclosed the contents by delivering a copy of the recording to her divorce attorney, Defendant Brooke Dumont, intending that the contents and insights gained from the recording would benefit Beth in divorce proceedings and negotiations.

67. Beth used the contents by leveraging the recording for strategic benefit in connection with divorce litigation and negotiations.

68. At the time of her disclosure and use, Beth knew, or had reason to know, the communications were obtained through interception and recording without the consent of the parties because she orchestrated the interception, she was not a party to the communications, and she had no consent from Plaintiff or Nathan.

69. Defendant Brooke Dumont intentionally disclosed the contents of the intercepted communications by transmitting the audio recording via email to Nathan's divorce attorney, in violation of 18 U.S.C. § 2511(1)(c).

70. Defendant Brooke Dumont intentionally used the contents of the intercepted communications by threatening to deploy the recording as leverage in divorce negotiations and by providing legal services premised on the intercepted contents, in violation of 18 U.S.C. § 2511(1)(d). Dumont billed her client for services associated with reviewing, strategizing around, transmitting, and threatening use of the recording.

71. At the time of her disclosure and use, Dumont knew, or had reason to know, that the contents she disclosed and used were derived from an intercepted communication and that the interception was unlawful because the recording consisted of private communications between Dumont's client's estranged husband

and a third party (Scott McDonald) in which Dumont's client did not participate and was not present. Dumont nonetheless transmitted the audio recording via email to Nathan's divorce attorney and threatened to use its contents as leverage.

72.    As a direct and proximate result of Defendants' violations of the Act, Plaintiff suffered damages and is entitled to all relief, including statutory damages and such other relief as permitted under 18 U.S.C. § 2520.

## THIRD CLAIM FOR RELIEF
### INTRUSION UPON THE SECLUSION OF PLAINTIFF
(Against Beth McDonald)

73.    Plaintiff repeats and realleges Paragraphs 1 through 49 as if fully set forth herein.

74.    On September 8, 2025, Plaintiff engaged in a private telephone conversation with his son, Nathan McDonald, and thereafter engaged in a private in-person conversation with Nathan inside Nathan's residence. Plaintiff reasonably expected these communications would remain private and would not be secretly monitored or recorded.

75.    Defendant Beth McDonald intentionally intruded upon Plaintiff's solitude, seclusion, and private affairs by clandestinely activating and causing an audio-recording device to operate inside Nathan's residence to capture Plaintiff's private communications without Plaintiff's knowledge or consent.

18

**A-055**

76. Beth was not a party to the communications, was not present during the conversations, and did not obtain authorization or consent from Plaintiff or Nathan to monitor, record, or overhear the communications.

77. Beth's conduct constituted offensive and objectionable prying into matters entitled to privacy and involved surreptitious, eavesdropping-like methods that would be highly offensive to a person of ordinary sensibilities. The intrusion is actionable regardless of whether Beth later communicated the content of the conversations to any third party.

78. As a direct and proximate result of Beth's intrusion, Plaintiff suffered emotional distress, embarrassment, humiliation, and damage to his dignity, entitling him to nominal, compensatory, and punitive damages.

## FOURTH CLAIM FOR RELIEF
### WANTONNESS
### (Against Beth McDonald)

79. Plaintiff repeats and realleges Paragraphs 1 through 49 as if fully set forth herein.

80. After the recording of Plaintiff's private communications was made without Plaintiff's consent, Defendant Beth McDonald consciously and intentionally engaged in wrongful conduct with knowledge of existing circumstances and with conscious disregard of Plaintiff's rights by retaining the recording and providing it to her counsel for use in the divorce dispute.

19

**A-056**

81.    Beth knew, or acted with reckless indifference to the fact, that furnishing a clandestine recording of private communications captured in a private residential setting without notice or consent for use in litigation would likely or probably cause injury to Plaintiff, including invasion of privacy, emotional distress, and damage to dignity.

82.    Beth's decision to provide the recording for litigation leverage compounded the foreseeable injury by increasing the likelihood of further dissemination, threatened use, and loss of control over Plaintiff's private communications, including dissemination and use beyond the divorce dispute.

83.    In fact, an edited and/or altered version of the recording was later produced by the Madison County District Attorney's office in Nathan's related criminal case, illustrating the foreseeable risk that the recording (or versions of it) would be disseminated and used in other proceedings.

84.    As a direct and proximate result of Beth's wanton conduct, Plaintiff suffered emotional distress, embarrassment, humiliation, and damage to his dignity, entitling him to compensatory and punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendants as follows:

a. Compensatory damages, including statutory damages where available, together with pre-judgment and post-judgment interest as allowed;

A-058

b. An award of punitive damages;

c. An award of nominal damages;

d. An order granting declaratory relief;

e. Disgorgement of pecuniary benefits, revenues, and profits attributable to the interception, disclosure, and use of the recording and its contents;

f. Permanent injunctive relief prohibiting further disclosure, distribution, or use of the recording and requiring reasonable steps to prevent further dissemination, including deletion of all copies in Defendants' possession, custody, or control and requiring written confirmation of deletion;

g. An award of reasonable attorneys' fees and costs as allowed;

h. Such further relief, at law and in equity, as may be just and proper.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Dated: 02/17/2026

Respectfully submitted,

By: _Scott McDowell_

Plaintiff, pro se
789 Neal Dr.
Gurley, AL 35748
256-503-0675
scottm2@hiwaay.net

21

A-059

# Doc 26

## Opposition to 20 by Defendant Dumont

FILED
2026 Mar-13  AM 08:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT McDONALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| V. | ) | Case: 5:25-CV-02226-CLM |
| | ) | |
| BETH McDONALD; BROOKE | ) | |
| DUMONT, ESQ., | ) | |
| | ) | |
| Defendants. | ) | |

## OBJECTION TO MOTION FOR PROTECTIVE ORDER
## AND ENTRY OF ESI/PRIVILEGE-LOG PROTOCOL

**Comes now** Defendant Brooke Dumont and hereby by vows this objection to the Plaintiff's

Motion for Protective Order and Entry of ESI/Privilege-Log Protocol [Doc 20]. As grounds for

this objection, Defendant states as follows:

## FACTUAL BACKGROUND

1.      Despite the Plaintiff's contentions otherwise, this is an extremely simply case

which involves a single audio recording and very minimal electronically stored information.    In

short, the Plaintiff's son, Nathan McDonald (who is not a party to this action) and his wife, co-

Defendant, Beth McDonald are in the process of being divorced.    During the course of that

process, according to Beth McDonald, she began recording an altercation between herself and her

husband, during which time her husband, Nathan McDonald took her phone while it was recording.

Thereafter, the recording, which began during the altercation, continued.    As seen in the

Plaintiff's complaint, that recording continued during a communication between Plaintiff, Scott

McDonald and his son Nathan McDonald.

**A-060**

To the undersigned's knowledge, discoverable ESI in possession of this Defendant consists of a single solitary email whereby the communication at issue was provided by Defendant Dumont to Nathan McDonald, by and through his agent and attorney.   Any and all communications between Beth McDonald and Brooke Dumont are protected by attorney-client privilege and are not discoverable in this case or in any other case.   The Defendants are not aware of any other communications in which the recording in question has been transmitted.

## ARGUMENT

Due to the simplicity and limited nature of the ESI at issue in this case, the protocols and protective order requested by Plaintiff, Scott McDonald, are overly burdensome and unnecessary. Mr. McDonald claims to have possession of or has heard two different versions of the single audio recording at issue in this case, one which is presumably simply a shorter version of the other. This single audio recording has obviously already been heard by each of the parties in this case. Further, the content of the audio tape itself reveals the true manner in which it was obtained, which was not at all surreptitious as claimed by the Plaintiff. Requiring the holding of the audio by a neutral third-party, presumably at some cost, places unnecessary barriers on discovery and would simply serve no purpose.

It should be noted that, during the parties meeting, Plaintiff, Scott McDonald threatened to file additional lawsuits or add defense counsel of record in this case to this litigation, if the audio recording in question was disseminated to anyone, including to this Court.   As such, a limited protective order either allowing the parties to provide a copy of the audio tape in question or a transcript thereof to this Court without fear of repercussion, or alternatively to allow the filing of the contents of said audio under seal, will be necessary.   However, the additional restrictions and protocols requested by the Plaintiff, for such a simple straightforward case, simply places

**A-061**

unnecessary burdens on all parties in entering what is anticipated to be extremely limited discovery.

The Plaintiff's proposed protective order also prohibits (at paragraph 3) production of any playable copy of the audio tape in question directly to the Plaintiff.   The undersigned fails to understand the basis for such a request.   Presumably, the Plaintiff would want to receive copies of relevant discovery.   The Defendants in this action certainly want to be able to receive any relevant discovery without the necessity of the use of neutral third party to whom payments will obviously have to be made.

Further, it is also noted that the Plaintiff's ESI protocol requires that production be done via CD or USB drive.   Again, this places unnecessary burdens on the parties when said discovery should be produced and can be produced by way of electronic transmission (i.e., email, ShareFile, upload/download, etc.).   Placing restrictions of this nature do nothing but delay discovery and increase costs.

For the reasons presented above, the Defendant requests that this Court deny the Plaintiff's Motion for Protective Order and ESI Protocol or alternatively provide a limited protective order allowing the parties to present to this Court a copy of the audio tape in question (or a transcript thereof), or alternatively allowing for filing of said information under seal. Further, the undersigned has consulted with Eric Brisendine, counsel for co-Defendant Beth McDonald. Attorney Brisendine has reviewed this pleading and has expressed agreement and approval and wishes to join as to all the positions taken above.

**A-062**

Respectfully submitted,


/s/ Joseph E. Stott
**JOSEPH E. STOTT - STO041 (ASB-4163-T71J)**
Attorney for Defendant Brooke Dumont

**OF COUNSEL:**
**Stott & Harrington, P.C.**
2637 Valleydale Road, Suite 100
Birmingham, AL 35244
(205) 573-0500
joe@stottharrington.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on March 13, 2026, served a copy of the foregoing on the following via CM/ECF electronic filing and/or by placing a copy of same in the U.S. Mail:

*Plaintiff Pro Se*
Scott McDonald
789 Neal Drive
Gurley, AL 35748
256-503-0675
Scottm2@highwaay.net

*Attorney for Defendant Beth McDonald*
James Eric Brisendine, Esq.
Scruggs, Dodd & Brisendine, PA
P. O. Box 681109
Ft. Payne, AL   35962-1612
256-845-5932
eric@sdblaw.us


/s/ Joseph E. Stott
**OF COUNSEL**

**A-063**

A-064

# Doc 40

## Plaintiff's Title III Motion to Suppress/Exclude Recording

FILED
2026 Mar-30  AM 10:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **SCOTT MCDONALD,** | **Case No.: 5:25-cv-02226-HDM** |
| *Plaintiff,* | **PLAINTIFF'S TITLE III MOTION TO SUPPRESS/EXCLUDE THE SEPTEMBER 8, 2025 RECORDING AND TO PROHIBIT ANY USE OF ITS CONTENTS IN THIS PROCEEDING** |
| v. | |
| **BETH MCDONALD, et al,** | |
| *Defendants.* | |

## PLAINTIFF'S TITLE III MOTION TO SUPPRESS/EXCLUDE THE SEPTEMBER 8, 2025 RECORDING AND TO PROHIBIT ANY USE OF ITS CONTENTS IN THIS PROCEEDING

Plaintiff Scott McDonald ("Plaintiff"), pro se, moves for an order suppressing and excluding from this case an audio recording made on September 8, 2025 (the "Recording"), and prohibiting any party from using the contents of the Recording in any trial, hearing, or other proceeding, pursuant to 18 U.S.C. § 2515, 18 U.S.C. § 2518(10)(a) and the United States Constitution 4th Amendment.

This motion is directed to "use" in the statutory sense. Plaintiff does not offer, rely on, or discuss the Recording's contents. Plaintiff seeks to prevent this Court from becoming the vehicle for use, filing, or dissemination of the contents of an unlawfully intercepted communication.

## I. Relief Requested (Suppression First)

Plaintiff respectfully requests that the Court:

1

**A-065**

1. SUPPRESS/EXCLUDE the Recording and prohibit any party from using the Recording's contents in any trial, hearing, or other proceeding in this case, pursuant to 18 U.S.C. § 2515 and 18 U.S.C. § 2518(10)(a).

2. Enter an order prohibiting any party from creating or using any transcript, excerpt, summary, paraphrase, or other derivative presentation of the Recording's contents in connection with any motion, hearing, or proceeding in this case.

3. If the Court does not grant suppression/exclusion immediately, enter interim prohibitions to preserve the status quo and prevent irreparable disclosure and downstream dissemination:

   a. No lodging / no filing (including under seal). No party may submit, lodge, or file the Recording (or any content-bearing transcript/excerpt/summary/paraphrase) with the Court, whether publicly or under seal.

   b. No open-court playback.

   c. No public quotation/paraphrase/substantive description of contents on the public record.

   d. No testimony or argument based on contents. No party may offer testimony (live or by declaration/affidavit) describing the contents of the Recording, and no party may argue or proffer that the Recording's contents prove any fact, element, defense, or credibility point.

4. In the alternative, if the Court concludes it cannot grant suppression/exclusion on the present record, set a prompt evidentiary procedure narrowly tailored to permit the Court to make any additional findings it deems necessary, while maintaining the interim prohibitions above.

## II. Statutory Basis

Title III bars the use of unlawfully intercepted communications in any trial, hearing, or other proceeding. 18 U.S.C. § 2515.

**A-066**

Title III provides a suppression mechanism by motion. 18 U.S.C. § 2518(10)(a).

Plaintiff brings this motion to ensure that, before this Court permits any content-based use (including sealed filing, playback, transcript use, paraphrase, or counsel proffer), the Court first adjudicates lawfulness under Title III as required by the statutory non-use command and in accordance with the 4th Amendment.

### III. The Court Can Decide Suppression/Exclusion Now Based on the Existing Record (Admissions + Declarations)

Plaintiff submits that the record already contains sufficient evidence—at least by a preponderance of the evidence—to support findings necessary to suppress/exclude the Recording and any transcript/derivative use.

#### A. Admissions establishing creation of the Recording and its transfer/use pathway

1. Beth McDonald admitted that she began recording the domestic dispute on her cell phone. (Doc. 7, ¶ 15.) (Exhibit 3.)

2. Brooke Dumont admitted that Beth McDonald provided an audio file to Dumont. (Doc. 24, ¶ 15.) (Exhibit 4.)

3. Dumont admitted providing a copy of the audio recording to Nathan McDonald through Nathan's attorney. (Doc. 24, ¶ 15.) (Exhibit 4.)

4. Dumont represented that the recording continued during a communication between Plaintiff and Nathan McDonald. (Doc. 26, p. 1.) (Exhibit 5.)

5. Dumont further represented: "This single audio recording has obviously already been heard by each of the parties in this case." (Doc. 26, p. 2.) (Exhibit 5.)

These admissions confirm the Recording exists, was created by Beth, was transferred to counsel, and has already been disseminated among litigants—

3

**A-067**

raising the immediate risk of courtroom "use" and disclosure unless prohibited.

## B. Declarations establish participation and non-consent without discussing contents

Plaintiff's declaration (Ex. 1) and Nathan McDonald's declaration (Ex. 2) establish:

- Plaintiff and Nathan participated in communications captured on the Recording;
- Beth was not present for the communications identified; and
- Plaintiff and Nathan did not consent to recording/interception.

Plaintiff does not ask the Court to rely on, adopt, or discuss the contents of any conversation. The requested relief is exclusion/non-use.

## IV. Before Any Content Use Is Permitted, Defendants Must Identify a Cognizable Title III Basis for Content Use Notwithstanding § 2515

Defendants have advanced disputed factual themes—e.g., "Nathan took the phone"—but Defendants have not identified a Title III theory tying those themes to a complete defense that would authorize courtroom content use notwithstanding the statutory non-use command in 18 U.S.C. § 2515.

Accordingly, Plaintiff requests that the Court adopt a clear sequencing rule:

1. The Court should grant suppression/exclusion now on the present record.

2. If the Court is not prepared to grant suppression/exclusion now, then before any content use is permitted in any form (including open-court playback, sealed lodging/filing, transcript use, quotation, paraphrase, testimony describing contents, or content-based argument), Defendants must first file a non-content submission that:

   a. identifies the specific statutory basis they contend makes the Recording lawful under Title III;

4

**A-068**

b. identifies non-content evidence they contend establishes consent (whose consent; scope; to which communications); and

c. explains how their "Nathan took the phone" narrative is legally material to a complete defense under Title III (not merely factually disputed).

Until that submission is filed and adjudicated, the Court should enter the interim non-use prohibitions requested above to prevent irreparable statutory harm and mooting of the suppression issue by prior "use."

## V. Requested Procedure

Plaintiff requests suppression/exclusion on the present record.

In the alternative, Plaintiff requests the Court enter the strict non-use/no-lodging/no-content-argument order and require Defendants to identify and support any Title III basis for content use before any content is used in any form.

Respectfully submitted,

Date: ___03/30/26___

_Scott McDonald_

Scott McDonald
Plaintiff, pro se
(256) 503-0675

5

**A-069**

## PLAINTIFF'S TITLE III MOTION TO SUPPRESS/EXCLUDE

### EXHIBITS LIST

**Exhibit 1**: Declaration of Scott McDonald. Brief description: Establishes Plaintiff's participation in communications captured on the September 8, 2025 recording; receipt/identification of the ~46-minute file; and Plaintiff's non-consent.

**Exhibit 2**: Declaration of Nathan McDonald. Brief description: Establishes Nathan's participation in communications captured on the September 8, 2025 recording; non-consent; and privacy context (Beth not present).

**Exhibit 3**: Beth McDonald admissions re initiating recording (excerpt from Doc. 7, Answer to First Amended Complaint, p. 4). Brief description: Admission that Beth began recording on her cell phone (Doc. 2, p. 4, ¶ 15).

**Exhibit 4**: Defendant Brooke Dumont admissions re receipt and transfer/disclosure of audio file (excerpt from Doc. 8, Answer to Original Complaint, pp. 3-4). Brief description: Admission that Beth provided an audio file to Dumont (Doc. 8, p. 3, ¶ 15) and that Dumont provided a copy to Nathan McDonald through his attorney (Doc. 8, p. 4, ¶ 16).

**Exhibit 5**: Defendant Brooke Dumont statements in opposition briefing re continued recording capturing Scott–Nathan communication, possession/transfer email, and "heard by each party" statement (excerpt from Doc. 26, pp. 1–2). Brief description: Record statements showing Defendants' position that the recording continued into Scott–Nathan communications (Doc. 26, p. 1, ¶ 1) and identifying Dumont's electronically stored information as the transmission email (Doc. 26, p 2).

## CERTIFICATE OF SERVICE

I certify that on March 27, 2026, I electronically filed the foregoing PLAINTIFF'S TITLE III MOTION TO SUPPRESS/EXCLUDE THE SEPTEMBER 8, 2025 RECORDING AND TO PROHIBIT ANY USE OF ITS CONTENTS IN THIS PROCEEDING using the Court's CM/ECF electronic filing system which will serve opposing counsel.

Date: _____03/30/26_____

_____
Scott McDonald
Plaintiff, pro se
(256) 503-0675

6

**A-071**

FILED
2026 Mar-30 AM 10:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**



**SCOTT MCDONALD,**

*Plaintiff,*

v.

**BETH MCDONALD, et al,**

*Defendants.*

**Case No.: 5:25-cv-02226-HDM**

**DECLARATION**

## DECLARATION

I, Scott McDonald, declare under penalty of perjury:

1.  I am the Plaintiff in this action.

2.  I have never consented to Beth McDonald recording or intercepting my communications under any circumstance.

3.  On or about December 5, 2026, Nathan McDonald forwarded to me a copy of an email sent by attorney Brooke Dumont to attorney Frederick Keith Meigs with an audio recording attached.

4.  The audio file I received is approximately 46 minutes long and is titled: AUD-20250910-WA0001.mp3.

5.  After receiving that file I listened to it for the limited purpose of determining whether it captured communications in which I participated.

6.  The file captured at least one phone communication between me and Nathan McDonald, and at least one in-person communication between me and Nathan McDonald inside Nathan McDonald's home; both occurring on the evening of September 8, 2025.

7.  I did not consent to the interception or recording of any such communications.

8.  I object to any public playback, transcript, quotation, paraphrase, or substantiative description of any such recording's contents in open court or on the public docket.

Respectfully submitted,

Scott McDonald

Date: ___03/30/26___

Scott McDonald
Plaintiff, pro se
(256) 503-0675
scottm2@hiwaay.net

1

**A-072**

FILED
2026 Mar-30  AM 10:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

**SCOTT MCDONALD,**

*Plaintiff,*

v.

**BETH MCDONALD, et al,**

*Defendants.*

EXHIBIT

2

**Case No.: 5:25-cv-02226-HDM**

**DECLARATION**

## DECLARATION

I, Nathan McDonald, declare under penalty of perjury:

1. I am not a party to this case.

2. I have never consented to Beth McDonald recording or intercepting my communications without my knowledge.

3. On or about December 5, 2026, Keith Meigs forwarded to me a copy of an email sent to him by attorney Brooke Dumont with an audio recording attached. The audio file is approximately 46 minutes long and is titled: AUD-20250910-WA0001.mp3.

4. After receiving that file I listened to it for the limited purpose of determining whether it captured communications in which I participated on the evening of September 8, 2025.

5. The recording captured at least one phone communication between me and my father, Scott McDonald; one phone communication between me and my mother, Denise; and, at least one in-person communication between me and my father inside my home.

6. Beth McDonald was not present for the communications described above.

7. On the evening of September 8, 2025, after Beth McDonald left my home, I had an expectation of privacy while inside my home.

8. I did not know my communications described above were being recorded.

9. I object to any public playback, transcript, quotation, paraphrase, or substantiative description of any such recording's contents in open court or on the public docket.

Respectfully submitted,

Date: 3/30/26

Nathan McDonald
Non-party, pro se
123 Turtle Ridge Dr.
New Market, AL  35761

**A-073**

FILED

2026 Mar-30 AM 10:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

Doc. 7



which resulted in Nathan McDonald being criminally charged with Domestic

Violence Third, and Obstructing Police – Interference with a Domestic Violence

Emergency.  Defendant Beth McDonald denies all other allegations contained in

Paragraph Eleven of the First Amended Complaint and demands strict proof

thereof.

12.     Defendant Beth McDonald admits that Plaintiff arrived at

Defendant's residence after Defendant McDonald called 911.  Defendant Beth

McDonald denies all other allegations contained in Paragraph Twelve of the First

Amended Complaint and demands strict proof thereof.

13.     Defendant Beth McDonald denies the allegations contained in

Paragraph Thirteen of the First Amended Complaint and demands strict proof

thereof.

## Defendant Beth McDonald's Interception of Private Communications

14.     Defendant Beth McDonald admits she fled her residence as a result of

the domestic altercation with her husband.  Defendant Beth McDonald denies all

other allegations contained in Paragraph Fourteen of the First Amended Complaint

and demands strict proof thereof.

15.     Defendant Beth McDonald admits that she began recording the

domestic dispute between herself and her husband on her cell phone.  Nathan

McDonald forcefully took Defendant Beth McDonald's phone away from her

FILED
2026 Mar-30  AM 10:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

Doc. 8



Defendant resides in the United States District Court of the Northern District of Alabama, but denies that venue is proper.

10.     The allegations of this paragraph seek a legal conclusion and therefore do not require a response. However, this Defendant denies that venue is proper in the United States District Court for the Northern District of Alabama, Eastern Division. As the allegations of this lawsuit are claimed to have occurred in Madison County, Alabama, venue would be proper in the United States District Court for the Northern District of Alabama, Northern Division and not the Eastern Division.

11.     This Defendant admits that Nathan McDonald placed a phone call following a heated domestic dispute on or about the date in question. This Defendant is without sufficient information to admit or deny the remaining allegations of this paragraph and therefore demand strict proof thereof.

12.     This Defendant is without sufficient information to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

13.     Upon information and belief, this Defendant admits that Beth McDonald was not inside of Nathan's home at the time of the telephone call in question. The remaining allegations of this paragraph are denied.

14.     Denied.

15.     This Defendant admits that Beth McDonald provided an audio file to this Defendant, her attorney. The remaining allegations of this paragraph are denied.

*1 of 2*

**A-075**

16. This Defendant admits providing a copy of the audio recording to Nathan McDonald, through his attorney. The remaining allegations of this paragraph are denied.

17. Denied.

18. To the extent that any allegation of this paragraph is directed at this Defendant, those allegations are denied. This Defendant is without sufficient to admit or deny the remaining allegations and therefore demand strict proof thereof.

## FIRST CAUSE OF ACTION
### Electronic Communications Privacy Act Violations

19. This Defendant adopts and incorporates by reference the responses to all preceding paragraphs as if fully set out herein.

20. The allegations of this paragraph are not directed at this Defendant and therefore do not require a response. To the extent that this paragraph is intended to make any allegations against this Defendant, those allegations are denied.

21. The allegations of this paragraph are not directed at this Defendant and therefore do not require a response. To the extent that this paragraph is intended to make any allegations against this Defendant, those allegations are denied.

22. Denied.

23. Denied.

24. Denied.

4



FILED
2026 Mar-30 AM 10:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

Doc. 26

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

SCOTT McDONALD,               )
                              )
    Plaintiff,               )
                              )
                              )
V.                            )    Case: 5:25-CV-02226-CLM
                              )
BETH McDONALD; BROOKE         )
DUMONT, ESQ.,                 )
                              )
    Defendants.              )

**EXHIBIT**

**5**

### OBJECTION TO MOTION FOR PROTECTIVE ORDER
### AND ENTRY OF ESI/PRIVILEGE-LOG PROTOCOL

**Comes now** Defendant Brooke Dumont and hereby by vows this objection to the Plaintiff's Motion for Protective Order and Entry of ESI/Privilege-Log Protocol [Doc 20]. As grounds for this objection, Defendant states as follows:

### FACTUAL BACKGROUND

1.    Despite the Plaintiff's contentions otherwise, this is an extremely simply case which involves a single audio recording and very minimal electronically stored information. In short, the Plaintiff's son, Nathan McDonald (who is not a party to this action) and his wife, co-Defendant, Beth McDonald are in the process of being divorced. During the course of that process, according to Beth McDonald, she began recording an altercation between herself and her husband, during which time her husband, Nathan McDonald took her phone while it was recording. Thereafter, the recording, which began during the altercation, continued. As seen in the Plaintiff's complaint, that recording continued during a communication between Plaintiff, Scott McDonald and his son Nathan McDonald.

1 of 2
A-077

To the undersigned's knowledge, discoverable ESI in possession of this Defendant consists of a single solitary email whereby the communication at issue was provided by Defendant Dumont to Nathan McDonald, by and through his agent and attorney. Any and all communications between Beth McDonald and Brooke Dumont are protected by attorney-client privilege and are not discoverable in this case or in any other case. The Defendants are not aware of any other communications in which the recording in question has been transmitted.

## ARGUMENT

Due to the simplicity and limited nature of the ESI at issue in this case, the protocols and protective order requested by Plaintiff, Scott McDonald, are overly burdensome and unnecessary. Mr. McDonald claims to have possession of or has heard two different versions of the single audio recording at issue in this case, one which is presumably simply a shorter version of the other. This single audio recording has obviously already been heard by each of the parties in this case. Further, the content of the audio tape itself reveals the true manner in which it was obtained, which was not at all surreptitious as claimed by the Plaintiff. Requiring the holding of the audio by a neutral third-party, presumably at some cost, places unnecessary barriers on discovery and would simply serve no purpose.

It should be noted that, during the parties meeting, Plaintiff, Scott McDonald threatened to file additional lawsuits or add defense counsel of record in this case to this litigation, if the audio recording in question was disseminated to anyone, including to this Court. As such, a limited protective order either allowing the parties to provide a copy of the audio tape in question or a transcript thereof to this Court without fear of repercussion, or alternatively to allow the filing of the contents of said audio under seal, will be necessary. However, the additional restrictions and protocols requested by the Plaintiff, for such a simple straightforward case, simply places

2

*2 of 2*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

**SCOTT MCDONALD,**

*Plaintiff,*

v.

**BETH MCDONALD, et al,**

*Defendants.*

**Case No.: 5:25-cv-02226-HDM**

**PROPOSED ORDER ON PLAINTIFF'S TITLE III MOTION TO SUPPRESS/ EXCLUDE AND TO PROHIBIT USE OF RECORDING CONTENTS**

## PROPOSED ORDER ON PLAINTIFF'S TITLE III MOTION TO SUPPRESS/EXCLUDE AND TO PROHIBIT USE OF RECORDING CONTENTS

Upon consideration of Plaintiff's Motion to Suppress/Exclude under 18 U.S.C. § 2515 and 18 U.S.C. § 2518(10)(a), and the materials submitted in support and opposition, it is ORDERED as follows:

**1. Ruling (Suppression/Exclusion)**

Plaintiff's Motion is GRANTED / DENIED / TAKEN UNDER ADVISEMENT.

**2. Interim Non-Use / No-Content-Use Restrictions (If Suppression Is Not Granted in Full at This Time)**

If the Court does not grant suppression/exclusion in full at this time, then pending further order of the Court and pending final disposition of suppression/exclusion under Title III, the following restrictions apply:

2.1. **Covered materials.** This Order applies to the September 8, 2025 recording in any form, including any and all versions, copies, edits, excerpts, clips, compilations, or re-encodings of that recording, and any transcript, summary, excerpt, paraphrase, or other content-bearing derivative of any such version (collectively, the "Covered Recording Materials").

A-079

2.2. **No lodging or filing (including under seal).** No party may submit, lodge, file, or otherwise place into the Court's record, whether publicly or under seal, any Covered Recording Materials.

2.3. **No open-court playback.** No party may play any Covered Recording Materials in open court.

2.4. **No public content description in filings.** No party may quote, paraphrase, or substantively describe the contents of any Covered Recording Materials on the public record, including in any filing on the public docket.

2.5. **No testimonial proffers of contents.** No party may offer, elicit, or present testimony (whether live or by declaration/affidavit) that quotes, paraphrases, or substantively describes the contents of any Covered Recording Materials, except as the Court expressly permits in a non-public procedure solely for the purpose of resolving suppression/exclusion or interim handling issues.

2.6. **No content-based argument by counsel (with narrow carve-out).** No party may argue—whether in open court or in any public filing—that the contents of any Covered Recording Materials establish, refute, corroborate, or otherwise prove any fact, element, defense, credibility determination, or merits position. This prohibition includes counsel proffers, summaries, characterizations, "what the recording shows" arguments, and any argument that depends on content description.

**Carve-out: non-content arguments permitted.** Notwithstanding Paragraph 2.6, counsel may argue non-content issues, including:

  - the existence of the recording and/or the existence of multiple versions/copies;

  - the identity of the file(s) by filename, duration, hash, metadata, or other non-content identifiers;

  - chain of custody, source, possession, and transmission history;

  - authentication/foundation issues as to any version, without describing or characterizing what was said;

  - the fact of alleged recording/interception and the existence or absence of consent, without describing or characterizing what was said; and

**A-080**

- legal arguments about the applicability of 18 U.S.C. § 2515 and the suppression procedure in 18 U.S.C. § 2518(10)(a), without describing or characterizing recording contents.

2.7. **In camera review only if strictly necessary; no transcript; no filing.** If the Court determines that it must review any Covered Recording Materials to resolve any procedural issue or to make findings necessary to adjudicate suppression/exclusion, any such review shall occur only via a non-public procedure and only to the minimum extent the Court deems necessary. No transcript shall be created or filed, and no content excerpts shall be filed.

## 3. Procedure to Resolve Suppression (If Not Resolved Today)

If Plaintiff's Motion is taken under advisement or denied without prejudice for further factual development, the Court will set a procedure to resolve the motion. Pending that resolution, the restrictions in Paragraph 2 remain in effect.

## 4. Findings (Supporting Interim Restrictions)

The Court finds that the interim restrictions in Paragraph 2 are necessary to preserve the statutory non-use command in 18 U.S.C. § 2515 pending final disposition under 18 U.S.C. § 2518(10)(a). The Court further finds that less restrictive alternatives—including lodging or filing under seal, open-court playback, creation of transcripts, testimony describing contents, and content-based argument—are inadequate in light of (i) the risk of downstream access/unsealing once content is placed into the Court record, and (ii) the need to avoid content-based merits adjudication before lawfulness is adjudicated as required by Title III. These findings are consistent with Title III's prohibition on courtroom use of unlawfully intercepted communications recognized in Gelbard v. United States, 408 U.S. 41 (1972), and Title III's suppression mechanism and its application to primary and derivative evidence as recognized in United States v. Giordano, 416 U.S. 505 (1974).

**DONE** and **ORDERED** this _____, 2026

_____
**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE

A-082

# Doc 41

Sealed Exhibit 1 - Thumb Drive Recording (by atty. Stott)

FILED
2026 Apr-01  AM 10:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

| N O T O F F E R E D | N U M B E R | I D E N T I F I E D | RULING ON OBJECTION (if any) | | | | RULING ON REOFFER | | R E C D. C O N D. OR L T D. | R E C E I V E D | *McDonald v. McDonald, et al.*; **5:25-cv-2226-HDM** |
|---|---|---|---|---|---|---|---|---|---|---|---|

PLAINTIFF– Scott McDonald, Pro Se

DEFENDANTS – McDonald, Eric Brisendine Dumont, Joe Stott

COURT – Harold D. Mooty, III

**EXHIBIT LIST OF COURT**

| | | | SUS | O/R | RES | SUS | O/R | | | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | ✓ | SEALED and filed conventionally | | | | | | ✓ | Thumb drive containing audio recording Presented by atty. Stott |
| | 2 | | | | | | | | | |
| | 3 | | | | | | | | | |
| | 4 | | | | | | | | | |
| | 5 | | | | | | | | | |
| | 6 | | | | | | | | | |
| | 7 | | | | | | | | | |
| | 8 | | | | | | | | | |
| | 9 | | | | | | | | | |
| | 10 | | | | | | | | | |

**A-083**

A-084

# Doc 43

## Order (Disposition of Plaintiff's Motions)

FILED
2026 Apr-01  PM 03:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

SCOTT MCDONALD,

      **Plaintiff**,

v.

BETH MCDONALD, *et al.*,

      **Defendants**.

Case No. 5:25-cv-2226-HDM

## ORDER

This matter is before the court on seven of Plaintiff Scott McDonald's motions: (1) opposed "Motion for Entry of Protective Order and Entry of ESI/Privilege-Log Protocol," (doc. 20); (2) "Motion for Procedures Governing Playback and Handling of Audio Recording at 3/31/2026 Hearing (Request for In Camera Review in Chambers)," (doc. 34); (3) opposed "Expedited Motion for (1) Ruling Within Seven Days on Plaintiff's Motion Government Playback/Handling of Audio And Interim Order Precluding Public Playback Or Public Transcript/Quotation Of Audio Contents," (doc. 35); (4) opposed "Motion for Leave to File Motion to Modify Scheduling Order Regarding Discovery Limitations," (doc. 36); (5) "Motion for Order to Show Cause Why Defendants' Counsel Should Not Be Held In Civil Contempt for Violation of the Court's Initial Order," (doc. 38); (6) "Motion for Order Directing the Court to Consider Non-Party Nathan McDonald's Title III Motion . . . and for Interim Non-Lodging Relief," (doc. 39); and (7) "Title

A-085

III Motion to Suppress/Exclude the September 8, 2025 Recording and to Prohibit Any Use of its Contents in this Proceeding," (doc. 40). For purposes of clarity, given the overlapping nature of these motions, the court will refer to them by their docket number.

As was noted on the record in open court, Mr. McDonald withdrew Docs. 34 and 35, and they are, accordingly, **DENIED AS MOOT**. For the reasons explained on the record in open court, Docs. 38, 39, and 40 are **DENIED**. Because an amended scheduling order has been entered in this case, Doc. 36 is **DENIED AS MOOT**. Doc. 20 will be dealt with by separate order.

**DONE** and **ORDERED** on March 31, 2026.

**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE

**A-086**

# Doc 44

Protective Order

FILED
2026 Apr-01  PM 03:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

**SCOTT MCDONALD,**

    **Plaintiff**,

**v.**

**BETH MCDONALD,** *et al.*,

    **Defendants**.

**Case No. 5:25-cv-2226-HDM**

## <u>PROTECTIVE ORDER</u>

Plaintiff Scott McDonald has moved for a protective order. (Doc. 20). As was noted on the record in open court at a hearing on this issue, Defendants do not object to a protective order as long as it does not curtail their ability to file the Recording (as defined in ¶ 9 of this order) with the court. Accordingly, Mr. McDonald's motion, (doc. 20), is **GRANTED IN PART** and **DENIED IN PART**. Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, it is hereby **ORDERED** as follows:

1.    This Protective Order shall govern all discovery materials (including audio recordings or derivatives thereof, testimony, interrogatories, responses, documents, writings, drawings, graphs, charts, photographs, and electronic materials) believed to contain confidential and/or proprietary information (hereinafter, "Confidential Material") produced by either party.

2.    Documents and things deemed by either party to be Confidential Material shall be marked as "Confidential" at the bottom of each page so as to clearly

**A-088**

indicate their status as Confidential Material documents. Testimony deemed by either party to be Confidential Material shall be so designated before any such testimony becomes part of the public record.

3. All information, testimony, and documents deemed Confidential Material shall be used solely in connection with pre-trial proceedings, preparation for trial, trial, or other proceedings in this litigation only, and not for any other purpose. Confidential Material shall not be divulged or disclosed to anyone or to any entity other than Qualified Persons (as defined in ¶ 4 of this Order) and Additional Persons who have satisfied the prerequisites to receive Confidential Material (said prerequisites being contained in ¶ 6 of this Order).

4. Confidential Material and documents and any copies thereof, and notes made therefrom, shall be disclosed only to Qualified Persons. Qualified Persons are limited to:

    a. the parties to this lawsuit;

    b. the parties' counsel of record and the paralegals and clerical staff employed by the parties' counsel of record for the preparation of and/or trial of this action;

    c. the parties' expert witnesses (if any);

    d. mediators; and

    e. this court and all of this court's personnel, including court reporters, in

**A-089**

the conduct of their official duties.

5.　　In the event that any party objects to the designation of any paper or thing as Confidential Material, such party may, in writing, request the designating person to remove the designation. Such written request shall specifically identify the document or information at issue and shall state the reason(s) why the designation should be removed. The designating person, by its counsel, shall respond in writing within fifteen (15) business days of receipt of the written request. If the designating person refuses to remove the designation, its written response shall state the reason(s) for this refusal. If the designating person refuses to remove the designation, any party may file a motion for an order requiring the designating person to remove the designation. The moving party shall not file the disputed Confidential Material in connection with such a motion unless otherwise directed by the court. The designated Confidential Material at issue shall continue to be treated as Confidential until the court orders otherwise or the parties agree otherwise.

6.　　If counsel desires to provide Confidential Material to anyone other than Qualified Persons (who are referred to in this document as Additional Person(s)), then opposing counsel shall be provided five (5) business days prior notice of: (i) the counsel's intent to provide such Confidential Material to the Additional Person(s), (ii) the name, address and telephone number of the Additional

A-090

Person(s), and (iii) a copy of a Written Assurance in the form of **Exhibit A**, attached hereto, that has been executed by the Additional Person(s), without changes. If opposing counsel serves an objection with the court within that five (5) day period, then such Confidential Material shall not be disclosed, divulged or provided to the Additional Person(s) unless and until authorized by the court. If opposing counsel does not object to the production of the Confidential Material to the Additional Person(s), or if the court rules that such Confidential Material is to be provided to the Additional Person(s), then the executed Written Assurance of the Additional Person(s) shall be immediately filed with the Clerk of the United States District Court for the Northern District of Alabama, by counsel providing the Confidential Material to the Additional Person(s) and served upon opposing counsel.

7.      All Confidential Material produced or exchanged in the course of this case (not including information that is publicly available) shall be used by the party, non-party or parties to whom the information is produced solely for the purpose of this case. Confidential Material shall not be used for any other purpose, including business, governmental, commercial, personal, administrative, or other judicial proceedings.

8.      Both parties must keep all Confidential Material confidential, and under no circumstances will they provide, publish, or communicate the Confidential Material in any manner or medium to anyone other than the Qualified Persons. If

either party fails to abide by the terms of this Order, they may be subject to sanctions, including sanctions by way of contempt of court, imposed by the court for such a failure. Parties will be subject to the jurisdiction of the United States District Court for the Northern District of Alabama in and for any contempt proceedings or other appropriate sanctions the court may deem proper for a violation of this Order.

9.     Any party seeking to file the audio recording at issue in the March 31, 2026, hearing (entered under seal in open court and on the record as Exhibit 1 (*see* doc. 41)), or any alternate versions thereof, (together, the "Recording") shall file it under seal in accordance with the court's procedures, the court having determined in open court and on the record that such sealing complies with *Romero v. Drummond Co., Inc.*, 480 F.3d 1234 (11th Cir. 2007). Any party seeking to file any derivative of the Recording—including but not limited to transcripts of and quotations from the Recording, but not including mere references to the recording— shall request leave of the court, in advance, to file the materials under seal in accordance with the court's procedures. Any motion to file such materials under seal must satisfy the legal standard articulated in *Romero*.

10.     Any party seeking to file materials designated as Confidential with the court shall request leave of the court, in advance, to file the materials under seal in accordance with the court's procedures. Any motion to file materials designated as Confidential under seal must satisfy the legal standard articulated in *Romero*.

Furthermore, to the extent feasible, prior to filing a motion seeking leave to file a document under seal, the Parties agree to work together in good faith to attempt to determine a reasonable and less onerous means for filing documents designated as Confidential.

11.    Within sixty (60) days of the final termination of this action, Confidential Material (including all copies) and each document and copy thereof that incorporates (in whole or in part) any information designated as Confidential Material shall be returned to the attorney of the producing party.

12.    The restrictions contained herein with respect to the communications and disclosure to others of Confidential Material shall continue in full force and effect during the pendency and following the conclusion of this case and shall be duly binding upon everyone who receives Confidential Material, his/her/its counsel and his/her/its employees.

13.    Nothing in this Order shall diminish the parties' right to contend that the documents or information produced herein without a designation of Confidential are nonetheless confidential, proprietary, and/or subject to appropriate protection under the law. The procedures established by this Order are intended to be cumulative and in addition to any party's right to seek any further or different protection from the court for any document or information or to contest a party's designation of a document or information as confidential.

**DONE** and **ORDERED** on April 1, 2026.

**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE

**A-094**

A-095

# Doc 45

## Plaintiff's Opposed Motion to Strike 41 (Sealed Exhibit 1)

FILED
2026 Apr-02  PM 02:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED ∑

2026 APR -2 P 2: 28

U.S. DISTRICT COURT
ALABAMA

**SCOTT MCDONALD,**

*Plaintiff,*

v.

**BETH MCDONALD, et al,**

*Defendants.*

Case No.: 5:25-cv-02226-HDM

**PLAINTIFF'S MOTION TO STRIKE SEALED CONVENTIONAL FILING: "EXHIBIT 1 – AUDIO TO MOTIONS HEARING (UNDER SEAL) (OPPOSED)**

<u>**PLAINTIFF'S MOTION TO STRIKE SEALED CONVENTIONAL FILING: "EXHIBIT 1 – AUDIO TO MOTIONS HEARING (UNDER SEAL) (OPPOSED**</u>

Plaintiff Scott McDonald ("Plaintiff"), pro se, moves to strike the sealed conventional filing entered on March 31, 2026, titled "Conventional filing received of Exhibit 1-audio to Motions Hearing (Under Seal)" (the "Sealed Audio"). The docket description states: "Thumb drive containing audio recording presented by Atty. Stott."

Plaintiff brings this motion primarily to (i) preserve a clear record for extraordinary appellate review, including a petition for writ of mandamus, and (ii) prevent the Court's sealed custody of a disputed, content-bearing exhibit from being treated as a permissible vehicle for Title III "use" in this proceeding.

**I. Relief Requested**

Plaintiff respectfully requests that the Court:

1

**A-096**

1. STRIKE the Sealed Audio conventional filing ("Exhibit 1-audio to Motions Hearing (Under Seal)") from the record.

2. Strike any associated designation of the Sealed Audio as a hearing exhibit.

3. Enter an order directing that the Sealed Audio is not to be accessed, copied, transcribed, summarized, excerpted, or relied upon by any party or the Court in this proceeding, unless and until an appellate court orders otherwise.

Plaintiff does not propose alternatives or compromises. This motion is intended to preserve error and to obtain a clear ruling on whether a content-bearing recording alleged to be unlawful under Title III may be placed into the Court's sealed record and treated as a usable exhibit.

## II. Procedural and Record Background (Non-Content)

1. A preponderance of evidence derived from admissions, pleadings, and declarations in this case shows that on September 8, 2025, Beth McDonald created an audio recording that is approximately 1 hour and 25 minutes long.

2. As alleged in the pleadings, Beth intentionally caused her phone to record audio inside Nathan's home while she was not present with the intent to use the resultant recording in divorce proceedings.

3. The Madison County Alabama District Court has exercised exclusive jurisdiction over Nathan and Beth's divorce and related proceedings. Those proceedings are ongoing.

4. Beth's September 8 recording contains intercepted private communications between Plaintiff and non-parties.

5. Between September 8 and September 18, 2025, Beth provided a copy of her September 8 recording, or an excerpt therefrom, to her divorce attorney, Brooke Dumont, for use in divorce proceedings.

6. On or about September 18, 2025, Brooke Dumont sent to Nathan McDonald's attorney, Keith Meigs, an email with an attachment titled

2

A-097

"AUD-20250910-WA0001.mp3," approximately 46 minutes long. That email threatened further use of the recording in divorce negotiations.

7. "AUD-20250910-WA0001.mp3" is the content-bearing version at issue in this civil Title III action as Plaintiff received and evaluated it. Plaintiff determined it contains Plaintiff's private communications to which he did not consent.

8. On March 31, 2026, at the motions hearing, defense counsel Joseph Stott tendered to the Court a USB drive purportedly containing his copy/version of Beth's September 8 recording. Plaintiff understands the tendered version is approximately 52 minutes long.

9. The Clerk's docket reflects that the Court received and conventionally filed, under seal, "Exhibit 1-audio to Motions Hearing (Under Seal)," described as "Thumb drive containing audio recording presented by Atty. Stott."

10. Plaintiff has no knowledge of what content is included in the 52-minute file, how it was created, where it came from, or how it was obtained. The length discrepancy alone indicates it is not the same file/version as "AUD-20250910-WA0001.mp3."

11. At the March 31 hearing, the Court denied Plaintiff's Title III suppression/non-use motion and other pending motions. Plaintiff is preparing a petition for writ of mandamus.

12. Concurrently, the Court entered an order titled "protective order" (Doc. 44) which Plaintiff contends functions as an authorization for Defendants to use the allegedly unlawful recording "without fear" of liability. Plaintiff intends to seek vacatur of that order by separate motion.

## III. Grounds

### A. Title III embodies a strong non-use rule; placement of a disputed, content-bearing recording into the Court's sealed record is itself a form of prohibited "use" and creates a vehicle for further use.

Title III prohibits receiving unlawfully intercepted communications (and

derivative evidence) in evidence in any proceeding. 18 U.S.C. § 2515.

3

**A-098**

The Supreme Court has recognized § 2515's broad prohibition and its function to prevent courts from becoming vehicles for unlawful interceptions. *Gelbard v. United States*, 408 U.S. 41 (1972).

Suppression is required for Title III violations that directly and substantially implement Congress's intent to limit interception use, and suppression extends to derivative evidence. *United States v. Giordano*, 416 U.S. 505 (1974). Here, the Court's sealed custody of a content-bearing exhibit—tendered unilaterally by defense counsel and not shown to be the same version Plaintiff received—creates a structural risk that the recording will be used, relied upon, quoted, summarized, or later unsealed, notwithstanding § 2515.

**B. Sealing is not a remedy. It is a judicial-record act that triggers later access/unsealing risks and requires a supported showing. Keeping the thumb drive under seal in the record is prejudicial and unnecessary.**

The Eleventh Circuit recognizes a strong presumption of public access to judicial records, and sealing requires a particularized, supported showing. *Romero v. Drummond Co.*, 480 F.3d 1234 (11th Cir. 2007).

Accordingly, maintaining the Sealed Audio as part of the Court's record is not a neutral status quo; it is a step that can enable later dissemination and "use" by unsealing or access proceedings.

4

**A-099**

Title III access issues also implicate the privacy and fairness concerns that courts have recognized weigh heavily against premature disclosure of untested Title III materials. *In re Globe Newspaper Co.*, 729 F.2d 47 (1st Cir. 1984).

**C. The sealed conventional filing is procedurally defective for purposes of evidentiary use: it is an unidentified, disputed "version," tendered without provenance, non-content attributes, chain of custody, or a cognizable defense rationale.**

The Sealed Audio is described only as a thumb drive "presented by Atty. Stott." The docket entry does not identify:

- provenance;
- file name(s);
- actual duration;
- hash/metadata;
- custodian and chain of custody; or
- whether it is the same version used in the divorce context.

The length discrepancy (52 minutes versus the 46-minute "AUD-20250910-WA0001.mp3" transmitted in the divorce context) further confirms that the Sealed Audio cannot be presumed to be "the" recording at issue.

Defendants have also not articulated a legally cognizable Title III theory explaining why the contents must be "used" as a defense exhibit in civil litigation notwithstanding § 2515. Instead, the posture appears to be a continuing attempt to use threatened content disclosure as leverage.

Civil Title III authority recognizes that "use" and "disclosure" may themselves be proscribed conduct, including in investigation/litigation-adjacent

**A-100**

contexts where the actor knew or had reason to know of illegality. *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158 (5th Cir. 2000).

**D. The Court should strike the sealed exhibit to prevent the record itself from becoming the mechanism of Title III "use," and to preserve the integrity of appellate review.**

Because the Sealed Audio was entered into the Court's sealed record as a purported exhibit (without version identification and without foundation), and because Plaintiff's Title III position has been denied and will be challenged by mandamus, striking is appropriate to avoid compounding error and to prevent any further "use" pending appellate review.

## IV. No Transcript Yet; Plaintiff Preserves Objections

Plaintiff does not yet have the March 31 hearing transcript. Plaintiff reserves the right to supplement this motion with transcript citations once the transcript is available.

## V. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court strike the sealed conventional filing titled "Conventional filing received of Exhibit 1-audio to Motions Hearing (Under Seal)" and associated exhibit designation.

Respectfully submitted,

Date: ___04/02/26___

___Scott McDonald___
Scott McDonald
Plaintiff, *pro se*

6

A-101

4

**P R O C E E D I N G S**

THE COURT:  Good afternoon.  We are here in McDonald versus McDonald, et al. that is 5:25-CV-02226.  We are here on a previously scheduled motion hearing that was set in Document 33 for today's date and time.  Originally, it was set to hear Document 20, one of Plaintiff's motions.  The Court subsequently entered text order 37 indicating to the parties that all motions would be heard today at this hearing.

Will the parties introduce themselves and counsel for the parties as well, starting with the Plaintiff, please, sir?

MR. MCDONALD:  I'm Scott McDonald.  I'm the Plaintiff.  I'm here pro se, on my own behalf.

THE COURT:  Good afternoon.

MR. STOTT:  Judge, Joe Stott for Defendant Brooke Dumont.

THE COURT:  Good afternoon.

MR. BRISENDINE:  And Eric Brisendine for Defendant Beth McDonald.

THE COURT:  Good afternoon.  Mr. McDonald, I'm going to ask you some questions to start, if you'll come to the podium.

MR. MCDONALD:  Yes, sir.

THE COURT:  And I want to ask some questions to make sure I understand the backdrop before we go any further.

5

MR. MCDONALD:  I will do my best, yes, sir.

THE COURT:  And appreciate that at any motion hearing, I would start with the Movant anyway.  So while I have background questions for you to begin with, this is pretty typical for any motion hearing to have the Movant at the podium first.

You are proceeding pro se; is that correct?

MR. MCDONALD:  That is correct.

THE COURT:  Do you plan to retain counsel in this case?

MR. MCDONALD:  For depositions and trial, yes.

THE COURT:  Counsel who will appear as an attorney of record on your behalf?

MR. MCDONALD:  That is my plan currently.

THE COURT:  Without divulging anything in terms of attorney/client privilege or potential privileged communications with any potential lawyer, do you anticipate a lawyer appearing in this case in the near future, or do you think that that's something that's going to be delayed?

MR. MCDONALD:  I do not have any consultation with any attorney presently today.  I'm a longtime Huntsville resident.  I know attorneys in Huntsville.  I have not talked with any attorney about this matter since it was filed.

THE COURT:  I want to ask a few more background questions, given that you're pro se, to make sure I understand

**A-103**

the situation.  Mr. McDonald, do you have a law degree?

MR. MCDONALD:  I do not have a law degree, and I don't mind giving a little background on why I'm acting pro se.  My wife was a former personal assistant to Bud Cramer when he was district attorney.  She was his personal assistant when he was in private practice.  My best friend for 45 years is an attorney.  He's no longer practicing, and I have not discussed this case with him.  But I used to do a lot of research for him in his practice, and he would -- it was ad hoc.  But I guess you would call it paralegal work.  So I have that familiarity.  I'm not an attorney by any stretch of the imagination, but I do understand -- I'll say this also: Before I filed this suit, I did extensive research on this -- the act that I filed under in this Court.  I downloaded the act itself from 1968, the act from 1986 -- the amendments of 1986.  I pulled down from the Federal Register the Senate report because several cases refer to the Senate report that describes the purpose of the amendments.

So I'm used to doing research.  I like reading case law. So that's the best answer I can give.  I'm familiar with it. I'm not an attorney.  And to the extent that I mention rules here, I'm not trying to, by any means, point out somebody's minor missing a rule.  My reference to rules is substantive at the heart of my Complaint.

So I probably will make some rule mistakes, but I try to

**A-104**

follow them.  That's where my -- in a nutshell.

THE COURT:  Thank you for that.  I want to take baby steps, and that background was helpful.  My question to you was only do you have a law degree.  So I think I've heard the answer.  My next question is:  Have you ever taken any classes or courses to achieve a law degree?

MR. MCDONALD:  No.

THE COURT:  Okay.  What is the highest level of education you received?  I don't need the particulars, but what's the highest degree?

MR. MCDONALD:  Degree?

THE COURT:  Yes.

MR. MCDONALD:  High school degree.

THE COURT:  No college coursework on contracts or any legal related college coursework?

MR. MCDONALD:  I have a -- I'm certified under the National Association -- do you want me to expound on that?

THE COURT:  I'm really just asking today for legal background just to make sure I understand who I'm dealing with in terms of your pro se.  There's a very big difference, sir, between --

MR. MCDONALD:  I do --

THE COURT:  Hold on.  When I'm speaking, you're not speaking.

MR. MCDONALD:  Yes, sir.

THE COURT:  Is that clear?

MR. MCDONALD:  Uh-huh.

THE COURT:  Yes?

MR. MCDONALD:  Yes.

THE COURT:  My court reporter is taking stuff down. And lawyers know when you speak, we sometimes say uh-huh and huh-uh.  She can't take that down.  So that's why I'm making sure we're getting verbal answers.

Before I talk to you about being pro se in this case, I'm simply asking background to make sure I adequately communicate what my restrictions are that are placed on me when I have pro se litigants.  So I'm not -- while I find it interesting, I'm not trying to have the whole life story.  I'm just trying to get very specific.

Have you ever represented yourself pro se in state court?

MR. MCDONALD:  Yes.

THE COURT:  How many times?  I don't need to know --

MR. MCDONALD:  Once.

THE COURT:  Have you ever represented yourself pro se in federal court?

MR. MCDONALD:  No.

THE COURT:  Very brief background.  And this is for your benefit and the benefit of my record.  I am required by applicable law to give pro se litigants leniency.  And what

that means in plain terms is if, for instance, a motion is filed and maybe it's styled or titled a certain way, the Court is to liberally construe that pleading, that filing, and interpret it in such a way that may make it fit within a certain rule so that it would be compliant with the rules. There are other examples of leniency that I'm required to give pro se litigants.  What I'm not allowed to do is veer away from the Rules of Federal Civil Procedure or otherwise applicable law, and I'm obviously not allowed to give you legal advice.

And so while today I'm going to try and move slowly and make sure that we are taking this one step at a time, I wanted to be clear with you, hence the background questions, that it's perfectly appropriate for you to be pro se in this action.  I'm encouraged that you're considering retaining counsel once we get into the meat of this case because I do think that that would be helpful.  But in the meantime, I will continue to show you leniency while still following the applicable rules and applicable law.  Does that make sense?

MR. MCDONALD:  Yes, sir.

THE COURT:  I expect, just like I do for all lawyers, that you will treat all of my staff with respect, including my docketing clerk, and you will think very carefully when you call my docketing clerk asking her to make changes on the docket text for other people's filings that

don't concern your own filings.  I've had multiple calls from my staff about calls that you've placed to the docketing clerk.  And while I wasn't privy to those calls, I caution you to think very carefully that all of my staff are an extension of me and all the authority that comes with my position.  So lawyers know many times to be very careful in what they're communicating with my docketing clerk.  I caution you to do the same.  Does that make sense?

MR. MCDONALD:  Yes, sir.

THE COURT:  Okay.  Mr. McDonald, you have seven separate pending motions that are before the Court.  And for the sake of my record, those are Documents 20, 34, 35, 36, 38, 39 and 40.  For your benefit and so you know -- and the lawyers who have appeared in front of me or from word of mouth already know this -- I don't walk into a hearing without being prepared, Mr. McDonald.  I've read your motion several times. I've read the applicable law.  And my law clerk sitting next to me is also prepared.  And I am, sir, perplexed by much of what you've filed after reading it.  But we're going to take this one step at a time, because some of what you filed I don't believe would have been filed had an attorney been consulted and assisted you with this case based on some of the positions that are being taken with respect to certain rules and laws.

With that said, I'll have you take a seat, and I want to

address both sides before we go any further.

MR. MCDONALD:  Yes, sir.

THE COURT:  You may speak from the table when I ask questions from here on out until I call somebody else up to the podium.  Okay?

MR. MCDONALD:  Yes, Your Honor.

THE COURT:  Defense counsel, I want to start with you just because I started asking Mr. McDonald questions. Given that some of these motions relate to the custody over disposition of, handling of and protections that would otherwise be due for an audio recording that the Plaintiff has made an issue in this case, the Court instructed both sides, counsel -- or the Plaintiff himself and counsel for the defense to bring a playable copy of the audio recording at issue on a thumb drive.  And it doesn't matter the order that defense counsel wishes to speak, but has defense counsel complied with the Court's request?

MR. STOTT:  Yes, Your Honor.

MR. BRISENDINE:  Yes, sir.

THE COURT:  Do y'all have two separate thumb drives or just one?

MR. STOTT:  I brought one.

MR. BRISENDINE:  I have my own.

THE COURT:  Gentlemen, for purposes of this discussion right now, I have no interest in getting into the

12

content of the audio recording, any of the substance of who's speaking.  We're going to get to all that in that lane in a second.  But is the length of the audio recording that each of you has the same?  Is it your understanding y'all have the same audio recording?

MR. STOTT:  I don't believe we compared notes.

THE COURT:  How long is your audio recording, sir?

MR. STOTT:  I think it's about 45 minutes.  I could get my office to double-check.  But I did not --

THE COURT:  I'm just asking for an approximation.  Same?

MR. BRISENDINE:  Yes and no.  I have two audio recordings -- one, the long version and the short version.  The short version is the same length.

THE COURT:  And how long is the long version?

MR. BRISENDINE:  One hour, 23 minutes, 53 seconds.  And it's an additional 29 minutes, thereabout, on the front end.

THE COURT:  The 45-minute version you have on a thumb drive and one of the two 45-minute versions -- and remind me which side represents which Defendant.  I'm sorry.  That way I'm not, for the benefit of my record, just pointing to one of y'all and not making that clear.

MR. BRISENDINE:  I represent the wife, Beth McDonald.

13

THE COURT:  Got it.  Thank you, counselor.  And you represent the attorney?

MR. STOTT:  The attorney, Brooke Dumont, correct.

THE COURT:  For counsel for the Defendant attorney, the 45-minute audio recording that you have, and counsel for Ms. McDonald, the 45-minute recording that you have, for counsel for Ms. McDonald, is the hour-and-23-minute recording -- does it incorporate the 45-minute recording?

MR. BRISENDINE:  Yes, sir.

THE COURT:  So it's a shortened version of the longer hour-and-23-minute version?

MR. BRISENDINE:  Yes, sir.

THE COURT:  Mr. McDonald, same thing -- same question but for you.  Did you bring a thumb drive with the audio recording at issue as the Court instructed?

MR. MCDONALD:  Your Honor, I did.  But I need to address an issue that I did not have the opportunity to address before.  And based on some -- your comments about the number of motions, will I have an -- because the last motion that I filed is specifically a statute giving me a right to request that this discussion not take place.

THE COURT:  Mr. McDonald --

MR. MCDONALD:  Okay.  I'm just objecting, then.

THE COURT:  Okay.  I'm going to show you lots of leniency today.  I have nothing else this afternoon --

**A-111**

MR. MCDONALD:  I have --

THE COURT:  Sir, when I speak, you do not speak --

MR. MCDONALD:  I'm sorry.

THE COURT:  -- or I will call a marshal in here and we'll escalate this dramatically.  And I don't want to do that.  Do you understand?

MR. MCDONALD:  Yes, sir.

THE COURT:  I told you a second ago I read all your motions multiple times.  And if you were listening to the question I asked defense counsel, I told them I was not getting into content.  I specifically wanted to know whether or not they complied with the Court's requirement that the audio recording be brought on a thumb drive.  And all I'm trying to do, sir, is ascertain whether or not for purposes of the two thumb drives I have identical versions in terms of length and length alone.  I've not gotten into content.  Okay?

MR. MCDONALD:  Yes, sir.

THE COURT:  That's the only question I'm asking you right now, is to understand where we are with the Court's requirement.  Did you bring a thumb drive --

MR. MCDONALD:  Yes, sir.

THE COURT:  How long --

MR. MCDONALD:  46 minutes.

THE COURT:  Okay.  So the Court is very familiar with the mechanisms that are available to it through which the

Court may accept evidence into the record.  And, Mr. McDonald, your lawsuit centers on this audio recording.  And because of that, before we get to your motions, the Court has some preliminary questions that it wants to make sure it understands.

Based on what you know, Mr. McDonald, do you believe -- without getting into the substance of the recordings, do you believe that the hour-and-23-minute recording that was represented by Ms. McDonald's counsel incorporates the 46-minute recording that you brought with you?

MR. MCDONALD:  I have no information about the hour-and-26-minute recording.

THE COURT:  The 46-minute recording that you brought with you, do you understand that recording to encompass the 45-minute recording that defense counsel for the attorney brought with him?

MR. MCDONALD:  I have no knowledge about that.

MR. STOTT:  Judge, if I may, mine may be 46 minutes. It might be the exact same --

THE COURT:  That's why I was asking, sir, is when you said 45, and hearing the close temporal proximity, I thought there was a possibility they could be identical, is the only reason I was asking.

MR. STOTT:  I have reason to believe it is.

THE COURT:  Okay.  Mr. McDonald, having read all of

your motions and the applicable law -- and you can take as much time as you need and use your discretion about, in this setting, the level of detail you wish to go into.  I need you, sir, to summarize for the Court the basis of your concern over the content of the recording, not the manner in which it was recorded.  And appreciate I asked that question very carefully after telling you multiple times I've read the motions.  I understand your point about it being protected conversations that are private between father and son.  I've read all of the motions.  But summarize for me your concern over the content of the recording, not the manner in which it was recorded, in your discretion with --

MR. MCDONALD:  I do not -- may I expound on the answer?

THE COURT:  Yes.

MR. MCDONALD:  I do not have any concern about the content.  I have a right to exercise -- a right to pursue litigation under a criminal statute, 18 U.S.C. 2510, 18 U.S.C. 2511, 18 U.S.C. 2515, a private right to sue to recover damage done by an illegal recording.  The purpose of the act is to protect privacy, and my privacy was invaded.  So I have no -- again, without discussing it, I describe the content to the level that I wish to discuss in my Complaint.  I think it's Paragraph 37.  So I brought -- I believe that the Court -- it would be -- I'm the only person here that has -- that can

consent to someone listening to this tape, that consent to it. I'm not saying you can't order me to give it to you, but I can consent because it was recording my conversation.

So I don't have a concern. And if -- every discussion I've had with defense counsel, I've included review in camera. I don't think that the Court would be entertained by listening to 46 minutes of a marital dispute and then me talking. But I want to say this: I retract any reference in any pleading that I'm okay to anybody filing under seal under the latest motion that I filed.

I would be -- I brought an additional clip from the recording that would be sufficient for the Court to understand that my private communication with my son and -- a private communication with my wife and my son was intercepted in violation of the law. And that would be appropriate, in my opinion -- and I brought an excerpt for the Court to hear that part.

The entire 46 minutes that I filed the Complaint about, if the Court -- I think the Court would need someone -- that could be me -- to explain what was going on. I don't think it could be understood. So I'm not sure the value in listening to the full 46 minutes. So to answer your question, I don't have concerns about the content except that I have a right to protect my privacy under federal and state law. And that's what I'm exercising.

THE COURT:  Mr. McDonald, did you ever threaten one or both of the defense lawyers over their production of the recording to the Court?

MR. MCDONALD:  I cited to counsel at the end of the last conference we had the statute that gives civil liability and criminal liability to disclosure and use of an illegal wiretap.  They interpreted that.  They threatened to disclose and use that information, and I cited the law to them, and then they repeated that back to you as a threat that I threatened them.  So, no, sir, to answer your question, no, I didn't threaten.  I cited law, which they transferred into a threat, which is the way they put it.  Even in their context, it was in response to me citing to them the law.  So it wasn't a threat.  It was a recitation of the -- I didn't feel like at the time they had thoroughly researched the matter and were acting maybe not as informed as I was.

So, no, I didn't threaten anybody -- it's not possible for me to use facts of law as threat, to my knowledge.  And so that was the context of it.  There's Alabama law for eavesdropping.  There's tort law for invasion of privacy, and then there's the Federal Wiretap Act that is very clear.  18 U.S.C. 2511(c) is disclosure.  And they call it dissemination. And (d) is use.  So if they filed it with this Court, it would constitute dissemination and use, which is a criminal conduct, according to -- under the Wiretap Act, the sections I just

**A-116**

cited. It's a criminal statute with a private right of civil action.

THE COURT: I'll reiterate what I said to you earlier, Mr. McDonald. I think you would greatly benefit from having counsel in this matter based on what I'm hearing from you and your interpretations and representations to the Court about what the law says and doesn't say.

I'm going to read two passages from the filings the Court received, and I just want you to either acknowledge yes or no. I think I've heard your answer. But I want to make sure my record's clear. On Document 26, Page 2, representation for one of defense counsel's quote: it should be noted that during the parties' meeting, Plaintiff Scott McDonald threatened to file additional lawsuits or add defense counsel of record in this case to this litigation if the audio recording in question was disseminated to anyone, including to this Court.

Mr. McDonald, is that an accurate representation of what was communicated to that defense counsel?

MR. MCDONALD: No, sir. That is defense counsel's characterization of the discussion that happened in the last 30 seconds of the conference call that I had called -- no, sir, that is not an accurate statement.

THE COURT: Is your answer the same for Document 27, Page 1? Quote: pro se Plaintiff Scott McDonald has

threatened to add defense counsel as parties to this litigation if either one of us provide a copy of the audio recording at issue to this Court.

MR. MCDONALD:  Not at all, sir.  No, sir.

THE COURT:  Okay.  Mr. McDonald, the Court does not intend to play the recording in open court today.  The Court does not intend to make the recording a public record today.  However, the disconnect for you, sir, I think, as we start considering these motions, is you initiated this lawsuit about this recording.  And you're citing statutes that, among other things, talk about the use of an unlawful recording.  In response to much of what defense counsel has filed, you have taken the position that a lot of their arguments are merits-based arguments.  You use that word specifically.

There's been no determination, though, Mr. McDonald, yet in this case, that the recording is unlawful.  And that's part of your burden of proof in order to establish that you have a cause of action.  And there's no way for this Court to evaluate Document 20 -- and that is your request for a protective order, among other things, and defense counsel's disagreement with that protection, what any Court does in this situation when both sides can't agree over what level of protection is necessary for something.  That triggers, in most instances, an in-camera inspection by the Court of the evidence that's disputed.  So the Court, without making a

merits determination, can make determination about what level of protection is appropriate for that particular piece of evidence.  Happens all the time in the context of attorney/client privileged communications, for instance, as one example.

So the Court does intend to enter the recording in the record as a sealed exhibit that would not be accessible by the public.  It would not be played to anyone in the gallery or counsel of record, but it would be entered into the record as a sealed exhibit solely for the purpose of the Court going back into chambers himself and listening to this recording while we're on recess in order to make a determination on Document 20 of what level of protection is appropriate for this recording so that the parties can proceed through discovery.  Because otherwise, there's no way for the Court to evaluate your request for protections over the dissemination or use -- not even using the word "dissemination" -- the production of this recording in the normal course of discovery, a recording that is already in the possession of counsel for each one of the Defendants.

And so it's the Court's plan to take -- we're about to decide which one -- take one of these thumb drives into chambers right now, treat that recording as filed under seal for purposes of this hearing only, play that recording in chambers for the Court to consider, and have this proceeding

held in recess until such time as the Court has listened to that recording.  And then the Court will come back in and address your motions, including the motion governing what we do with the protections of the recording.

Are there any objections from you -- and then I'll hear from defense counsel -- of the Court taking the thumb drive, to be determined which one, to chambers for the Court to listen to it in chambers?

MR. MCDONALD:  I strongly object.  And I appreciate you asking.  First off, there's been no representation about the chain of custody, however their recordings were created. I have complete chain of custody on the version I have.  So that's one point.

But another point you raise, I believe I only have four motions pending.  And the last motion, 40, answers your question about proof that the recording is illegal and a statutory right for me to ask that the Court not consider any evidence, under the statute, pending a ruling on that order.

So does this mean that you are denying motion -- filed under Docket 40?  I mean, if that's the case, I understand. But the document that you're talking about, the protective order, is rendered almost moot if the Court considers in reverse order a filing because a lot has changed.  A whole lot has changed since I filed Document 20.  The Court has struck local Rule 5.3.  The counsel has submitted a response in

opposition, which they entered new admissions, several new admissions, that substantiate my allegation and claim as fact that the recording is illegal.  And Document 40 includes the exhibits that prove that.

So I'm taking it that the Court has -- is declining Document 40 which preempts any of the other motions.  Is that a fair assessment?  Because I'm here blind.

THE COURT:  That's why I strongly recommended that you get counsel, Mr. McDonald.  And it sounds like I need to -- is there anything else you want to say, Mr. McDonald, that you --

MR. MCDONALD:  Yes.  I'm asking if the Court has considered Document 40 and made a ruling on it.

THE COURT:  And, Mr. McDonald, I'm going to show even more leniency.  You said you think there are only four motions, and I'm going to tell you the seven motions that you have pending so that my record is clear.  You filed first Document 20 February 26th, 2026, Plaintiff's opposed motion for protective order and entry of ESI privilege log protocol. You filed Document 34 on March 18th, 2026, Plaintiff's motion for procedures governing playback and handling of audio recording at 3/31/2026 hearing.  You filed Document 35 on March 20th, 2026, Plaintiff's opposed expedited motion for a ruling within seven days of Plaintiff's motion government playback handling of audio; Doc 34, an interim order

24

precluding public playback or public transcript quotation of audio contents.  You filed, sir, Document 36 on March 23rd, 2026, Plaintiff's motion for leave to file motion to modify scheduling order.  21, regarding discovery limitations.  You filed Document 38, which was filed on March 26th, 2026, motion for order to show cause why Defendant's counsel should not be held in civil contempt for violation of the Court's initial order.  You filed Document 39 on March 27th, 2026, Plaintiff's motion for order directing the Court to consider nonparty Nathan McDonald's Title III, motion for interim nonlodging relief.  And finally, sir, you filed Document 40, March 30th, 2026, Plaintiff's Title III motion to suppress exclude the September 8th, 2025 recording and to prohibit any use of its contents in this proceeding.

Mr. McDonald, does that refresh your recollection on the number of pending motions that you've filed for this Court and the Court's taken the time to review and consider and that it's not four, sir, it's seven?

MR. MCDONALD:  Your Honor, two have been denied by operation of law.  One was --

THE COURT:  Sir, how is it on my docket that any of your motions have been denied by operation of law?

MR. MCDONALD:  Two of them requested action by Friday of last week.

THE COURT:  I understand that.  Did you withdraw

those motions?

MR. MCDONALD:  It's been a short period -- I'm withdrawing them now.

THE COURT:  Okay.  Which motions are you withdrawing?

MR. MCDONALD:  The two that were requesting action by Friday, which is 34 and 35.  Let me see.  Hang on -- no, no, no, no.  Yes, 34 and 35, uh-huh.

THE COURT:  Are you withdrawing any other motions?

MR. MCDONALD:  Just for clarification, Motion 39 was filed at the direction of the clerk to enter a motion by a nonparty.  And it is my motion, but it's actually nonparty Nathan McDonald's motion, and that was the vehicle used to enter it.  So we can call that a motion to request that the Court consider Nathan McDonald's motion, nonparty.

THE COURT:  Mr. McDonald, do you remember my question?

MR. MCDONALD:  Am I withdrawing it or is that a motion?

THE COURT:  No, sir.

MR. MCDONALD:  I don't remember your question.

THE COURT:  You identified two of the seven motions that you wish to withdraw.  And I just asked you are there any other motions that you wish to withdraw.  That was the only question the Court asked.

MR. MCDONALD:  Let me see.  For now, today, I'm going to request to withdraw 20 based on the discussion we're having so far.  I may refile it, but -- let me clarify that because this gets into a complex area.  I would ask counsel's concurrence and agreement -- and we can meet and confer -- to withdraw that.  It was meritous (sic) at the time under good cause, but there have been a multitude of changes since then. And motion Document 40 makes really all of the preceding motions moot.  So I'm not withdrawing it without consultation with counsel and agreement and understanding that it was filed in good cause, but the changes have created reason to -- that it's no longer necessary if the Docket 40 motion is acted on before any other motions.

So I can't answer your question without discussing it with counsel, I guess is my answer.

THE COURT:  Okay.  Mr. McDonald, it doesn't require the consent of a non-Movant for Document 20.  My court reporter can't get all your nonverbal reactions to this Court's statements.  So I'm going to be a little more precise.

MR. MCDONALD:  Okay.  Yes.

THE COURT:  You filed Document 20, Mr. McDonald.

MR. MCDONALD:  Yes.

THE COURT:  It was not joined by defense counsel. It does not require defense counsel's approval for a Movant to withdraw Document 20.  I am not asking or encouraging you one

way or the other whether or not you, as the Movant, wish to withdraw Document 20.  But it does not require the input of defense counsel in order to do so.  All the Court is trying to do is do some housekeeping because there was clearly some misunderstanding on your part of how many motions you had filed and were pending when you told the Court there were only four and not seven.

So you've told me you want to withdraw 34 and you've told me you want to withdraw 35.  Are there any other motions that you, as the Movant, sir, wish to withdraw?

MR. MCDONALD:  All of -- everything that I'm going to say from this point forward is contingent on the Court's ruling on Document 40.  Because all of these motions that I filed are the result of a cancer created by the filing of Document 18 that's titled Report of Rule 26 Planning Meeting.  But it is not a Rule 26 planning meeting report, not in accordance with the Court's order -- initial order that says the parties must jointly file report with the clerk.  So I was attempting to put Band-Aids and I was attempting to enforce the Court's order by motion because Defendant's counsel did not comply with the Court's order, and it has prejudiced my case.  So I'm going to ask the Court to rule on the pleadings and beginning with -- I'm asking -- requesting the Court rule on Motion 40.

And I really have -- I'll answer any questions, but I

28

don't have anything else to add because all of these motions are the result of a filing that misrepresents itself before the Court and doesn't comply with the Court's order.

So I was attempting to remedy that with the least amount of Court involvement addressing that.  But it seriously prejudices my prosecution of this case.  So I have nothing further to add other than what's on the pleadings.

THE COURT:  You just told the Court Document 18, report of the 26(f) planning meeting, is a cancer?

MR. MCDONALD:  Yes, sir.  That's a categorization of it because it taints my entire ability to prosecute my case because it -- I would ask the Court, is that a Rule 26(f) planning meeting report of the parties in accordance with the Court's initial order?  Because I'm operating under the understanding it's not.  If the Court is operating under the understanding that it is, then that changes my answer to Document 20, which was filed in response to what I call the cancer, because everything else -- this is just the beginning. Right now defense counsel is dictating to me what the rules are.  And my only recourse is to file a motion seeking the Court's enforcement of its order.

So that's my answer.  I would ask the Court to rule on my motions based on the pleadings.  I would ask the Court to begin with Document 40, because everything has changed. Everything has changed since my -- my Motion 20 was in

**A-126**

response to the misnamed Document 18 that represents itself as the report of the Rule 26(f) planning meeting report.  And the Court's order says the parties must jointly file a report with the clerk describing that report.  I didn't sign that report.  I didn't agree with a single thing in it.  I asked the defense counsels to discuss with me the other items that are explicitly required in the Court's order, and I could get no -- they would never -- never once discuss it with me.

So to answer your question, based on what I understand right now, my motions were valid when filed.  But there's been an evolution that changed the context, and so Document 40 is the controlling one from my perspective.  And I would ask the Court to rule on my motions based on the pleadings.

THE COURT:  Do you remember my question, sir?

MR. MCDONALD:  No, sir.  What was it?

THE COURT:  You described Document 18 as a cancer.

MR. MCDONALD:  In this context of me being able to prosecute my case, I'm using an analogy of -- I was putting Band-Aids on a cancer, and it's not going to work.  That is my analogy to describe Document 18.  It's an analogy.  It's a -- it's not a legal term.  It's just a familiar term.  It taints my entire ability to prosecute my case, and it is heavily prejudicial to me.  And it doesn't follow the order.  I don't know how anybody else would characterize it.  But it violated the Court's order.  So it's a term that describes the

result -- is terminal to my -- the prosecution of my case.

THE COURT:  Document 18 is a terminal cancer to the prosecution of your case?  Is that your position?

MR. MCDONALD:  That's a characterization of it. That's an analogy I used.

THE COURT:  Okay.  In the spirit of housekeeping, Court will deny Document 38, motion to show cause why defense's counsel should not be held in civil contempt. Mr. McDonald, the parties fail to submit compliant Rule 26(f) reports.  The Court enters its standard scheduling order in response.  All parties submitted their own 26(f) reports before the Court entered its scheduling order.  The Court entered its standard scheduling order as it saw fit, which the Court has the right to do.  Neither party got what it asked for, sir, and that is the punishment for failure to comply with the Court's initial order as to the 26(f) report.  That disposes of Document 38.

Based on Mr. McDonald's representations on the record with respect to his desire to withdraw Documents 34 and 35, the Court will accept his request and moot as a matter of record Documents 34 and 35.  Therefore, for clarity of record, Documents 34, 35 and 38 have now been disposed of for purposes of today's hearing.

Defense counsel, in no particular order so that we try and get this back on track -- apologies for the brief segue.

The Court does not take words like "cancer" lightly being tossed around in any setting.  The question I had asked, to segue into a merits decision, merits with respect to protective order of, is there merit to the need of a protective order?  I had asked Mr. McDonald whether or not he disagreed or objected to the Court's inclination to take one of the thumb drives under seal to chambers to conduct an in-camera inspection so that the Court would be in a position to evaluate the request for heightened level of protections over that recording for purposes of discovery in this action.  Does either of defense counsel have a position one way or the other with respect to the Court listening to that recording in chambers?

MR. STOTT:  I have no objection, Your Honor.

MR. BRISENDINE:  No objection.

THE COURT:  Mr. McDonald, I'm going to give you the last word on any objection you have to the Court taking the recording and listening to it in chambers.  And any objection you wish to make, you may make now.  I have shown you a lot of leniency so far, sir.  It's running out.  And the Court will handle the motions in any order it sees fit.  And as I have told you multiple times today, sir, I am just trying to get the procedural posture of this hearing in the position that your motions can be considered, because the Court has spent considerable time reviewing all seven of your motions.

**A-129**

My question, sir, is:  What else do you wish for the Court to consider in stating your objection for the Court listening to the recording in chambers before coming out and ruling on the remainder of your motions?

MR. MCDONALD:  I object to the Court receiving any recording or content from defense counsel based on there's been no foundation laid for providence, no representation of how they obtained the recording, how it was created, what edits were made to either version.  I object on that ground.

I object on the ground that the document that I filed that I consider the overriding motion would address that in whole.  So, yes, I object.  There's no foundation, no representation of what edits were made, how they obtained it.  So I don't know what they're submitting.  That's all I can answer.  I object.

THE COURT:  Would this concern of yours be cured if I listened to your recording and not theirs?

MR. MCDONALD:  Possibly.  And I believe that the Judge wants -- the Court wants to get to the truth.  And I would possibly be willing to sit in chambers --

THE COURT:  That's not how an in-camera inspection works in this setting.

MR. MCDONALD:  Okay.

THE COURT:  Where I'm trying to -- you do not get to speak over me, Mr. McDonald.  I'm not going to keep reminding

33

you of that.  I can't state that any more clearly.

The Court is trying to help move this process forward for you with the seven motions you've filed.  The Court will not entertain any lawyer or party coming to chambers with it to listen to this recording.  And so, no, sir.  I was trying to give you courtesy in alleviating some of your concern if I listened to your copy.  But, no, there are no strings attached to your copy of you coming back there with me.  That is not going to happen.

So my question stands.  Do you still object to the Court listening to the recording that you've brought if I listen to your recording as opposed to defense counsel's?

MR. MCDONALD:  May I answer and expound a little bit on that?  Yes, I object.  I agree to do that with a ruling as set out in Document 40.  I would agree based on a ruling under Document 40.  I object under the Fourth Amendment and under my right set out under 18 U.S.C. 2518-10(a), that I have a right to ask that it not be considered in any form or fashion.

To reiterate, my Document 40 includes a provision for the Court to listen to it in chambers.  But all of my other consent or agreement or attempts to agree under seal, I'm withdrawing.  I maintained that consent under the terms set out under my Motion 40.  So, yes, I object under the Fourth Amendment and 28 U.S.C. 2518-10(a) to any consideration of the recording that I have today.

**A-131**

34

THE COURT:  Mr. McDonald, I was trying to make this a little easier for you as a pro se litigant.  I realize that's not possible.  So the Court is going to take this in a different order.  We're going to entertain oral argument on Document 39 and 40 combined.  And I'll hear from defense counsel in a second.  Mr. McDonald, what I keep going back to, I think you would benefit from having a lawyer since you've made clear to the Court you're not a lawyer, you've not gone to law school or otherwise studied the law.  We don't know whether this call -- or what's recorded on audio was an intercepted wire or oral conversation.  Sir, that's what this case is about, and that has to have a determination that's not going to be made today.  The recording itself may be the best piece of evidence we have to determine whether it was unlawfully obtained or not.  And to disallow its use as evidence in this proceeding would put the cart before the horse.

Respectfully, without me giving you legal advice, sir, you're reading a statute where you have not been able to establish as a matter of evidentiary record that establishes to this Court's satisfaction that this recording is unlawful that would trigger the statute prohibiting its use in this proceeding, not to mention your objection over the Court listening to this recording in chambers.  Which, believe me, there's lots of other things this Court could be doing with

**A-132**

its time than giving you the courtesy of listening to this recording in chambers.

The same analysis in terms of getting the cart before the horse by Mr. McDonald invoking the statute is applicable to Document 40 as well.

So, Defense Counsel, I'll hear your argument with respect to Documents 39 and 40. We are now converting this into a motion hearing on those two motions. If you'll approach the podium, in no particular order, and we will resolve Documents 30 and -- 39 and 40, in that order. You may proceed.

MR. STOTT: Judge, Joe Stott for Defendant Brooke Dumont. I really don't have a ton to say on this. I think what Your Honor just said is exactly what's going on. This is an attempt to put the cart before the horse. We have Mr. McDonald saying, I do not want anybody to hear this recording. The problem that he's got is that the recording itself discloses how the recording was obtained. And without the Court, and probably the jury, being able to hear the recording, we're never going to get to the point of how it became obtained. Without disclosing anything in the recording, to try to keep from being added to a federal lawsuit, which, by the way, was threatened, but leaving that aside, I expect that co-Defendant Beth McDonald will testify that she was recording an argument between herself and her husband when her husband took the phone from her. The

36

recording had begun.  He took the phone away from her and the recording --

MR. MCDONALD:  I object, Your Honor.  I object to him characterizing that.

THE COURT:  You'll have an opportunity to respond.

MR. MCDONALD:  Okay.

THE COURT:  This is argument from counsel.  If you had an attorney, he would be able to help you understand the procedural posture of where we're at right now.

MR. MCDONALD:  Is this being recorded now on record?

THE COURT:  My court reporter is typing down everything that's said.

MR. MCDONALD:  Okay.

THE COURT:  You will not interrupt this advocate again.  He has the opportunity to speak behind the podium.

You may proceed.

MR. STOTT:  Thank you, Your Honor.  Again, I want to be clear.  I'm not attempting to disclose anything that's on the recording --

THE COURT:  The Court has not interpreted you as disclosing anything that's on the recording.  And I instructed everyone in this room that that's not what we're going to do in open court today, so rest assured, the Court does not construe it as such.

MR. STOTT:  With that being said, with that being

**A-134**

the expected testimony, I think at a minimum, the Court has to hear the recording before a decision on any of these things can be made.  We intend, with the Court's permission, to rely upon the substance of the recording as a defense in this case. And the way I understand -- and I will tell you, I've read this multiple times as well, and I do have some difficulty understanding exactly what Mr. McDonald is asking for.  Maybe when he argues, he can explain it a little bit better.  It sounds to me -- seems to me that he's saying, I don't want anybody to use this audiotape for any purpose.  I want to be able to sue and say, I was illegally recorded, but nobody can hear what was recorded and the substance.  If that's what he's trying to say, I think that is -- it's just patently ridiculous when the content of the recording will disclose how the recording was obtained.  Because we have to get to the section of "was it illegally obtained" before we can argue "have I been damaged by an illegal recording"?  And if the recording itself discloses even any information to that, then we have to be able to use it.

     As far as there being some sort of protective order, I don't think that's what we're on.  But, again, I apologize to the Court that I don't fully understand what we're asking for here.  But, obviously, it's going to have to be part of the Court's record if we use it.  A protective order that prevents us from disseminating it outside of the Court I'm absolutely

38

fine with; have no issue with that whatsoever.  But anything that restricts my ability to give to Your Honor, I'm going to object to.  Thank you.

THE COURT:  Thank you, counselor.

MR. BRISENDINE:  Your Honor, nothing further of substance to add unless you just have some questions for me.

THE COURT:  I do not.

Mr. McDonald, it is the practice of this Court anytime an individual motion is argued, the Movant gets the first word and the last word.  I have heard from the non-Movants.  You may approach the podium and make whatever argument you wish to make with respect to Document 39 and Document 40.

MR. MCDONALD:  Yes, sir.  I didn't hear all that he just said, but I think I understand the gist of it.

So the concern that I have here is defense counsel has not articulated a single defense that would give them a complete defense to the accusation made in my Complaint. They've not -- in their filing that they characterize as the report of Rule 26 planning meeting, which they're supposed to articulate their defense, they state, Defendants deny that there was any surreptitious recording, recording and -- let me start over.  Defendants deny that there was any surreptitious recording and deny that they were recording, which was properly obtained, was misused or used in any way by these parties.

Now, I can't -- he said he can't understand my motion.  I don't understand what their defense argument is that would be verified by listening to the recording.  They have -- there are basically two defenses under the Federal Wiretap Act for violation of 18 U.S.C. 2511(a),(c) and (d).  Those defenses are court order, the party was acting under a court order, or consent of the parties.  I have filed with my motion under Document 40 affidavits -- I think I have them here -- by myself and the other nonparty, Nathan McDonald, saying we did not consent.  We did not know that we were being recorded.

So if the counsels here today could articulate a single defense that's set out anywhere by the act or by any case law -- they've not stated a single case law what defense they're trying to bring to the Court.  I can't discern it.  I just read it, and I'm going to read it again with the Court's divulgence:  defendants deny any surreptitious recording.

Well, a recording can be surreptitious and be legal if the parties making the recording consent.  So denying that it was surreptitious doesn't confer to a defense recognized by the Courts or the statute, and deny that they were recording.  But in their response to my motion for the protective order, they said they were recording.  And they said that Beth providing that recording to her attorney, Brooke Dumont.  Brooke Dumont provided that recording that Beth created to Nathan McDonald's divorce attorney, who provided it to Nathan

who provided it to me.  So I have a chain of custody.  I'm the only person in the world who can verify that that is my voice saying what I said that was recorded by Beth McDonald, which was transferred to her divorce attorney, Brooke Dumont, who transferred it to Nathan's divorce attorney, and it came to me.  And I listened to it, and I can listen to it because it's my voice.  And it's unlawful for anyone else to listen to my conversation without my consent.

So if the defense counsel could articulate a single defense -- and I'll reiterate, the two defenses are, under a court order, they haven't alleged they were operating under court order, or they have consent.  Now, I filed affidavits -- or actually, they're called declarations -- by myself and Nathan under penalty of perjury that I didn't consent.

If defense counsel knows that Beth had consent, someone could file a declaration explaining when the consent was given.  And it doesn't have to be proven by listening to the recording.  I didn't say during the recording that I consent.  So they need to provide the Court with some other evidence that translates into a defense recognized under this Federal Wiretap Act, Title III, and they haven't done that.  So I don't know what defense they're trying to claim that they can prove by the Court listening to -- and I would ask for that to be articulated today.  They're here.  We're all present.

And absent that, they don't have a basis for asking that

the Court listen to the fruit of the forbidden tree.  And that's what they're asking.  And the courts recognized that you can't use the fruits of the evil tree to prove that the fruit is good.  So I'm asking if someone could tell me today what the cognizable defense is that they're trying to prove. I don't know what it is.

THE COURT:  Anything else, Mr. McDonald?

MR. MCDONALD:  No, sir.

THE COURT:  You may be seated.  The Court's denying Document 39 from the bench.  The Court is denying Document 40 from the bench.

Now, back to where we were previously, defense counsel who has the 45-minute recording on your thumb drive, will you please approach and bring the Court that thumb drive?  The court deputy will take it.  The Court, for purposes of this hearing, is marking Exhibit 1 as this thumb drive, Exhibit 1 to the hearing, and is placing it under seal.

(Whereupon, Exhibit 1 was admitted into evidence
            under seal.)

THE COURT:  The Court will stand in recess.  The Court will listen to Exhibit 1, come back in and address the remainder of the motions and with the expectation that the parties will have resolution on all remaining motions at the

end of the hearing today and begin to proceed with the discovery.

Thank you.  We are in recess.


(Recess.)


THE COURT:  We are back on the record in McDonald versus McDonald, 5:25-CV-2226.  We took a brief recess for the Court to listen in chambers to an audio recording that was accepted by the Court as Exhibit 1 to this proceeding and placed under seal for the Court's in-camera inspection.  The version -- or thumb drive that the Court accepted was from Mr. Stott, defense counsel who represents Ms. Brooke Dumont.  The audio recording was approximately 52 minutes long, but the record under seal will reflect the exact length of the recording.

The Court listened to the majority of it.  Those portions where there do not appear to be any conversation that was audible, the Court skipped through.  To the best of the Court's understanding, all audio that can be perceived by the recording, the Court has listened to and considered.

In light of the Court's in-camera inspection of Exhibit 1, which shall remain under seal, the Court does not elect to modify any of its prior rulings in this hearing with respect to Plaintiff's various motions.  The Court believes that it

43

has made appropriate rulings in disposing of those motions. For the sake of clarity of record, we have two motions that remain pending.  That is Document 20, Plaintiff's opposed motion for protective order and entry of ESI privilege log protocol, and Document 36, Plaintiff's motion for leave to file motion to modify scheduling order.

Mr. Stott, if -- I'll have you come to the podium since I've already heard from Mr. McDonald on Document 20.  I will give him the last word on his motion, but I do want to ask you some questions about it.

MR. STOTT:  Yes, Your Honor.

THE COURT:  I understand, Mr. Stott -- and apologies earlier for calling you the attorney's lawyer.  I know you knew who I was referring to.  But for clarity of record, I want to make sure I refer to you by your last name.

Mr. Stott, I understand you oppose Plaintiff's motion for protective order and entry of ESI privilege log protocol.  For your benefit for my questions, the Court is very well- versed in civil discovery and does not believe it's appropriate for the Court to enter an ESI or privilege log protocol; believes that the parties are more than capable of conducting, to the extent it's appropriate, the preparation of their own privilege logs in the format that they see fit in compliance with the Rules of Civil Procedure.  Furthermore, to the extent any ESI-related protocols become necessary, that will only be

**A-141**

after the parties work diligently through any appropriate discovery requests that are served pursuant to the rules and any issues that need to be brought to the Court's attention pursuant to the Court's initial order regarding discovery disputes.

Which brings me to my bigger question about Document 20. Mr. Stott, do you believe it's appropriate for any protective order to be entered in this case? The Court will stand on its prior guidance to everyone in the courtroom that it has no interest for purposes of today's hearing to discuss the content of the recording or anything of what was said. But is there any objection from you to keeping Exhibit 1 under seal and otherwise having some level of protection or protective order in this case over the disposition of that particular version of the audio recording or any other audio recording?

MR. STOTT: No, Your Honor. I don't object to a protective order that does not limit our ability to use it in the defense of this case.

THE COURT: Understood. Mr. Brisendine, do you have any disagreement with that?

MR. BRISENDINE: No, sir.

THE COURT: Mr. Stott, do you have anything else you want to say on Document 20 before I hear from Mr. McDonald on Document 20?

MR. STOTT: The only thing that I think is the most

important thing on Document 20 is this concept that a third party be paid to hold the recording.

THE COURT:  It's not going to happen.

MR. STOTT:  Outside of that, I have nothing else.

THE COURT:  Thank you.

Mr. McDonald, if you'll come to the podium.  And you'll have the last word on Document 20.  For your benefit, what the Court is inclined to do is enter its own protective order in this case since the parties have been unable to agree on a protective order.  That protective order that the Court enters in this case will include a level of marking the audio recordings and transcriptions of the recordings and any associated documents quoting from or otherwise including a portion of the recordings, that those shall be -- to the extent they are filed, shall all be filed under seal.  But in most cases, Mr. McDonald, the Court does not have to get involved in the preparation of protective orders because parties work jointly on the language in a protective order.  It doesn't appear like that's going to be possible in this case.  So the Court will take that responsibility in its discretion upon itself.

Knowing that, Mr. McDonald, the Court intends to draft and enter its own protective order, is there anything you wish to say with respect to your motion in Document 20 that you have not said or you otherwise wish to respond to what defense

counsel has argued?

MR. MCDONALD:  I would ask for one clarification. Sorry.  I'm losing my voice.  I guess it's the pollen.  But I didn't hear clearly if the Court noted which motions are remaining.  I understand that 40 and 39 were denied.  I didn't hear about 38.  So I will answer your question about 20.  But you prefaced it with some comment about remaining motions and I missed that.

THE COURT:  Yeah.  Mr. McDonald, I will let the record speak for itself.  We denied 38.  That is on the record that the court reporter took down.  I was diligent in my review, as I told you from the beginning, of your seven motions.  And based on my careful review, along with consulting with my law clerk, the only two motions that remain pending in today's hearing are Document 20 and Document 36. So we are talking only about Document 20 right now.

MR. MCDONALD:  I understand.  So please repeat your question again.  Do I have any comments or have any objection to the Court submitting its own --

THE COURT:  Madam Court Reporter, will you -- or here, I'll log into realtime and do it for you.  Mr. McDonald, I told you in my question to you -- I'm going to reread what I told you so there's no ambiguity, sir.  Mr. McDonald, if you'll come to the podium, and you'll have the last word on Document 20, for your benefit, what the Court is inclined to

do is enter its own protective order in this case since the parties have been unable to agree on a protective order.  That protective order that the Court enters in this case will include a level of marking the audio recordings and transcriptions of the recordings.  And any associated documents quoting from or otherwise including a portion of the recordings, that those shall be -- to the extent they are filed, shall all be filed under seal.  But in most cases, Mr. McDonald, the Court does not have to get involved in the preparation of protective orders because parties work jointly on the language in a protective order.  It does not appear like that's going to be possible in this case.  So the Court will take that responsibility in its discretion upon itself. Knowing that, Mr. McDonald, the Court intends to draft and enter its own protective order.

Is there anything you wish to say with respect to your motion in Document 20 that you have not said or you otherwise wish to respond to what defense counsel has argued?

MR. MCDONALD:  Understood, Your Honor.  As I said earlier, I withdraw any consent I may have given in earlier motions.  But I understand the Court's decision and will -- I understand.  I object.  I still maintain that -- initially, I offered to defense counsel a stipulated agreement for a protective order.  We never got there.  So that initial offer from me was we could come up with an agreement.  That never

happened.  So I now withdraw my consent, is all I'm saying.

THE COURT:  Okay.  I'm not sure I follow that, Mr. McDonald, but thank you.  I continue to make my recommendation that you find counsel.

For the record, the Court will -- you may be seated, Mr. McDonald.

MR. MCDONALD:  Okay.

THE COURT:  For the record, the Court will handle Document 20 via separate filing.  That disposes of Document 20 via the entry of its own protective order.  That, by operation of law, will moot Document 20, and the parties will further participate in this litigation through discovery within the limits set by the Court pursuant to its protective order.

Mr. Stott, one more time for Document 36, please, sir.

MR. STOTT:  Yes, Your Honor.

THE COURT:  I will communicate to Mr. McDonald in a second.  As I know you're already aware, the parties do not have to ask for leave to file a motion to modify the scheduling order.  The parties are free to file that motion in compliance with the Rules of Civil Procedure.  Are there any changes -- well, let me ask it more broadly, sir.  What is the defense counsel's, with respect to your clients, position with respect to Mr. McDonald's proposed changes to the scheduling order, regardless of it being styled as a motion for leave?  I note that Mr. McDonald raised the lack of a clawback provision

49

in what the parties had negotiated, yet the scheduling order included that reference.  Because of that issue alone -- and there may be others -- the Court is inclined to enter a new scheduling order that removes that clawback language to be more consistent with the parties' agreement.  While, of course, the Court always has the authority to enter its own scheduling order, but it is leaning in the direction of it making that modification.

Are there any other modifications, Mr. Stott, that you believe are inappropriate that are requested by Mr. McDonald or you otherwise believe would be appropriate with respect to the scheduling order in this case?

MR. STOTT:  I don't have any problem with the current -- no objections to the current scheduling order.  I do have objections to -- I'm looking at Exhibit F -- what he has styled as Exhibit F with the Court's Document Number 36-6, which has his proposed modifications.  And I do have objections to several of those.

THE COURT:  You may put those on the record, counselor.

MR. STOTT:  Number 1 asks for the dates for amendments to pleadings to be modified so that all amendments as to all parties are on the same date, May 25th, 2026.  Obviously, I think that's inappropriate.  Be impossible for the Defendants to amend their answer on the same day that the

50

Plaintiff is allowed to amend his pleadings.  So the 30 days is obviously consistent with the spirit of the rule and largely consistent with the Rules of Civil Procedure, giving the Defendants an opportunity to respond to changes by the Plaintiff.

The discovery limitations, which is Part 2 of his Exhibit F, he wants to treat throughout the two Defendants as a single entity and have combined total interrogatories, combined total requests for production, combined total requests for admissions.  I don't think that's appropriate.  Claims against my client are different than the claims against Beth McDonald.  Beth McDonald is accused of making a recording.  My client is accused of using the recording.  We would have different reasons to ask different questions.  So lumping us together would be improper.

He also wants to limit the numbers that Your Honor previously agreed would be appropriate.  While I cannot guarantee I might need 40 interrogatories or 30 requests for production, I think it's appropriate that those numbers stay the same.  I will tell you, we have issued discovery that is lower than these numbers.  But until I get the answers, I won't know if we need more.  So I think what Your Honor set out is appropriate.

If we skip to Section 3, expert testimony, again, I don't even know if we're going to have experts here.  But the

51

Plaintiff wants Plaintiff and Defendant experts on the same day. Again, that's inappropriate. We think there should be an opportunity to respond to any experts submitted by the Plaintiff.

The discovery deadline and dispositive motion deadlines, which are 4 and 5 in his report, he wants to back each of those up a month, give or take, from what Your Honor set. I've been doing this a long time. I have never gone to a Court and said you gave us too much time. I'd hate to stand here and say I agree with that and then come back and ask for more. So I think it's appropriate just to leave it where it is.

I think that's it, Your Honor.

THE COURT: Thank you.

Mr. Brisendine, do you have anything you wish to add with respect to Document 36?

MR. BRISENDINE: No, Your Honor.

THE COURT: Mr. McDonald, if you'll come back to the podium. And, again, sir, we are only discussing Document 36, which, again, for your benefit, is your motion to modify scheduling order Doc 21 that is opposed.

MR. MCDONALD: Thank you, Your Honor. Every pleading that has been filed by the Defendants has been filed jointly, which, typically, Counsel Stott would file a response or a pleading, including the answer, and Mr. Brisendine would

52

adopt the filing of Mr. Stott.  They requested 40 interrogatories each.  I'm operating under the assumption and belief that they're working under a joint defense agreement, formal or informal, which means they can submit 80 interrogatories to me combined.  I think that's excessive.  I had asked for 25, so -- I think that's pretty much my response to that.  It applies to all of the discovery submissions -- interrogatories, requests for production, requests for admission -- be doubled.  They've indicated a unified defense, so I think that's excessive.

That's my only point.  The timing -- Mr. Stott has emphasized what a simple case this is repeatedly.  So I'm not sure why we need all the additional time and additional discovery requests for a simple case.  That's my only comments.

THE COURT:  Thank you, Mr. McDonald.  The Court, like Document 20, will similarly rule on Document 36 by pushing out an amended scheduling order that, as the Court previously mentioned, will, at a minimum, address the clawback provision issue.  And once the Court enters its amended scheduling order in this case, that will similarly moot Document 36.  And once Documents 20 and 36 are ruled on in the manner in which the Court has just described, there will be no further pending motions in this case.

Gentlemen, I want to stress on everybody in this room

**A-150**

that they should take a very careful look at Document 16 that is my initial order in this case. And to avoid any confusion whatsoever, the Court is going to point the parties to the exact provision. Having heard everything that's transpired, the Court is concerned that we are going to run into this issue.

Document 16, beginning on Page 8, Section F addresses motions about discovery disputes. And it's only two paragraphs long. And I expect all parties to comply with the entirety of the Court's initial order. But for purposes of everything the Court's heard today, it wants to draw particular emphasis on how this Court anticipates discovery disputes as they arise -- how these disputes will need to be handled. And the Court will deny any motion to compel or similar discovery motion that is filed that is not handled in the manner in which the Court has specified in its initial order.

The Court doesn't have anything else to add for purposes of today's proceeding in its motion hearing. There are no other motions to address. The Court encourages the parties to very carefully review and comply with the amended scheduling order that will be entered, the protective order that will be entered, as well as the initial order that the Court just referenced.

The Court, as I hope you have already been able to

perceive, will not walk into this courtroom ever and not be prepared. So please think very carefully as you file things in this case. Know that the Court is always prepared and expects the same thing of the lawyers and litigants who appear in front of him.

Anything further from Mr. McDonald before we adjourn?

MR. MCDONALD: Yes, Your Honor. I want clarification on -- the Court's initial order states that discovery may begin once the parties file a joint report under Rule 26(f). There has not been a joint report filed, so is the Court -- when can discovery begin? Because it hasn't begun yet. And a lot of my discovery is going to be very, very, very ESI and privilege log-dependent. I didn't get a chance to speak to the privilege log. I could. But to answer your question, in accordance with the initial order that you just said is in force and effect, the parties must jointly file a report to the clerk, and discovery can begin once that is filed.

So is the Court declaring that Defendant's Document 18 is the report of the parties' joint --

THE COURT: Mr. McDonald, without turning this into a class on the Rules of Civil Procedure, I feel like I need to answer your question with enough detail about the role of 26(f) reports. The short answer to your question is, the parties are free to engage in discovery now.

55

MR. MCDONALD:  Okay.

THE COURT:  The function of a 26(f) report is to precede the entry of a scheduling order so that the Court can be informed of the nature of the case, the specific requirements for purposes of the claims and defenses, and what may be necessary for the limits that need to be placed in the scheduling order on how the case should proceed.  And in most cases, the 26(f) report is joint after the parties have consulted with one another.  You are correct, and the Court is well aware -- because we talked about that, quote, cancer earlier in Document 18, which the Court strongly encourages you to think about your word choices more carefully next time.  Those two documents still serve the function of informing the Court of the information necessary to enter a scheduling order, and that scheduling order has been entered.  So while the Court does intend to enter an amended scheduling order, discovery may commence because the function and purpose of the 26(f) report phase has been completed because a scheduling order has been entered in this case.

Any other questions or anything further, Mr. McDonald?

MR. MCDONALD:  No, sir.  Thank you.

THE COURT:  Defense counsel, either one of you have any questions before we adjourn?

MR. STOTT:  Judge, I hate to do this, but just for sake of clarity for everyone, we served discovery last week on

Mr. McDonald.  He refused to accept it by email, said he would only accept it by mail.  We sent it certified.  I got the green slip back.  I don't want him to take what you said to say "it may commence now" and that didn't count.  So can you clarify that?

THE COURT:  Yes.  And thank you, Mr. Stott.  I said -- and I've got my realtime pulled up, but I don't feel like I need to read it back.  But to clarify further, Mr. Stott -- thank you for raising that -- discovery may commence upon the entry of the Court's scheduling order in this case, which has already occurred.  And the fact that discovery has already been served in this case, following a 26(f) report being filed, the Court construes any discovery that's previously been served as still timely regardless of the Court's entry of an amended scheduling order that has not yet been entered.  That's what I was trying to explain, Mr. McDonald, about the function and purpose of Rule 26(f) and the context of the initial order.

So, no, when I say discovery may commence now, I meant it's already commenced, not as if today is the day that discovery becomes permissible.  I meant now in the context of while the Court has said an amended scheduling order is coming, the parties are not restricted to commence discovery until the entry of an amended scheduling order.  That's what the Court was trying to communicate.  Is that sufficient, Mr.

Stott?

MR. STOTT:  Thank you, Your Honor.  Yes.

THE COURT:  Anything else from defense counsel?

MR. BRISENDINE:  No, Your Honor.

THE COURT:  Okay.  Thank you.  We are adjourned.

(Whereupon, the above proceedings were concluded at

4:16 p.m.)

# Doc 63

Amended Answer by Defendant Brooke Dumont

Case 5:25-cv-02226-HDM    Document 63    Filed 07/15/26    Page 1 of 26

USCA11 Case: 26-12718    Document: 11    Date Filed: 08/11/2026    Page: 159 of 223

FILED

2026 Jul-15 AM 10:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

SCOTT McDONALD,         )
                   )
    Plaintiff,         )
                   )
                   )
V.                 )        **Case: 5:25-CV-02226-HDM**
                   )
BETH McDONALD; BROOKE   )
DUMONT, ESQ.,        )
                   )
    Defendants.       )

## AMENDED ANSWER TO SECOND AMENDED COMPLAINT

Comes now Defendant Brooke Dumont and by way of Answer to the Plaintiff's Second Amended Complaint, the Defendant hereby amends her previously filed Answer as follows:

## NATURE OF THE ACTION

The allegations contained in the Plaintiff's unnumbered introductory paragraph entitled "Nature of the Action" are denied.

## PARTIES

1.    This Defendant admits that Scott McDonald is an individual residing in Madison County, Alabama, and that he is a citizen of Alabama residing in Madison County. The remaining allegations of this paragraph are denied.

**A-157**

2.     The allegations of this paragraph do not appear to be directed at this Defendant and therefore no response is required.

3.     This Defendant denies any "use" of the recording at issue in this litigation. The remaining allegations of this paragraph are admitted.

## JURISDICTION AND VENUE

4.     The allegations of this paragraph seek a legal conclusion and therefore do not require a response. To the extent that this paragraph is intended to make any allegations against this Defendant, those allegations are denied.

5.     The allegations of this paragraph seek a legal conclusion and therefore do not require a response. To the extent that this paragraph is intended to make any allegations against this Defendant, those allegations are denied.

6.     The allegations of this paragraph seek a legal conclusion and therefore do not require a response. To the extent that this paragraph is intended to make any allegations against this Defendant, those allegations are denied.

7.     The allegations of this paragraph seek a legal conclusion and therefore do not require a response. To the extent that this paragraph is intended to make any allegations against this Defendant, those allegations are denied.

8.     The allegations of this paragraph seek a legal conclusion and therefore do not require a response. To the extent that this paragraph seeks a legal conclusion, no response is required. Further, this Defendant admits that she maintains an office

**A-158**

in the Northern District of Alabama, but denies all remaining allegations of this paragraph.

9. This Defendant states that this paragraph seeks a legal conclusion and therefore does not require a response. However, this Defendant does not dispute the now-corrected venue.

10. This Defendant states that this paragraph seeks a legal conclusion and therefore does not require a response. However, this Defendant does not dispute the now-corrected venue.

## FACTUAL ALLEGATIONS

11. Upon information and belief, admitted.

12. This Defendant is without sufficient information to admit or deny the allegations of this paragraph and therefore demands strict proof thereof. Further, any information held by this Defendant with respect to the marriage in question would be protected by attorney-client privilege.

13. This Defendant is without sufficient information to admit or deny the allegations of this paragraph and therefore demands strict proof thereof. Further, any information held by this Defendant with respect to the marriage in question would be protected by attorney-client privilege.

14. This Defendant admits that Beth McDonald hired Brook Dumont as counsel. This Defendant's filings in the underlying divorce action speak for

themselves.

15.     This Defendant is without sufficient information to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

16.     This Defendant admits that the original divorce petition was dismissed. This Defendant is without sufficient information to admit or deny the remaining allegations of this paragraph and demands strict proof thereof.

17.     This Defendant is without sufficient information to admit or deny the allegations of this paragraph, the timing of service of the divorce action at the present time and demands strict proof thereof. The remaining allegations of this paragraph are denied.

18.     Upon information and belief, this Defendant admits that Nathan placed a phone call to his father while Beth McDonald was physically in a different location. This Defendant is without sufficient information to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

19.     Upon information and belief, this Defendant admits that the Plaintiff went to Nathan's home and that conversations ensued during a portion of which time no one else was present inside the home. This Defendant is without sufficient information to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

20.     This Defendant is without sufficient information to admit or deny the

allegations of this paragraph and therefore demands strict proof thereof.

21. Upon information and belief, admitted.

22. This Defendant is without sufficient information to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

23. This Defendant is without sufficient information to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

24. Upon information and belief, admitted.

25. This Defendant admits that Beth McDonald began recording herself and Nathan on her own cell phone before leaving the house. The remaining allegations of this paragraph are denied.

26. This Defendant admits that Beth McDonald ultimately regained possession of her phone. This Defendant is without sufficient information to admit or deny whether Beth McDonald at that point turned off any recording capability. The remaining allegations of this paragraph are denied.

27. Denied.

28. This Defendant admits that Beth McDonald provided her counsel a copy of a recording. The remaining allegations of this paragraph are denied.

29. This Defendant is without sufficient information to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

30. Denied.

**A-161**

31.    Upon information and belief, admitted.

32.    This Defendant admits that Beth McDonald provided a copy of the recording in question to Defendant Dumont. The remaining allegations of this paragraph are denied.

33.    This Defendant admits transmitting a copy of Beth McDonald's recording to Nathan's attorney. The remaining allegations of this paragraph are denied.

34.    This Defendant admits that Beth McDonald's cell phone obtained recordings of conversations in which she did participate and a portion of which she did not participate. The remaining allegations of this paragraph are denied.

35.    This Defendant is without sufficient information to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

36.    This Defendant is without sufficient information to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

37.    This Defendant is without sufficient information to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

38.    Denied.

39.    This Defendant admits that she did not delete the recording. The remaining allegations of this paragraph are denied.

40.    This Defendant is without sufficient information to admit or deny the

allegations of this paragraph and therefore demands strict proof thereof.

41. This Defendant is without sufficient information to admit or deny what the Plaintiff allegedly determined. The remaining allegations of this paragraph are denied.

42. Denied.

43. Denied.

44. Admitted.

45. Denied.

46. This Defendant is without sufficient information to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

47. This Defendant is without sufficient information to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

48. Denied.

49. This paragraph is apparently intended to describe the Plaintiff's discovery strategy and therefore does not require a response.

## FIRST CLAIM FOR RELIEF

50. This Defendant adopts and incorporates by reference the responses to all preceding paragraphs as if fully set out herein.

51. The allegations of this paragraph do not appear to be directed at this Defendant. However, to the extent that this paragraph is intended to make any

allegation or support any allegations against this Defendant, those allegations are denied.

52.     The allegations of this paragraph do not appear to be directed at this Defendant. However, to the extent that this paragraph is intended to make any allegation or support any allegations against this Defendant, those allegations are denied.

53.     The allegations of this paragraph do not appear to be directed at this Defendant. However, to the extent that this paragraph is intended to make any allegation or support any allegations against this Defendant, those allegations are denied.

54.     The allegations of this paragraph do not appear to be directed at this Defendant. However, to the extent that this paragraph is intended to make any allegation or support any allegations against this Defendant, those allegations are denied.

55.     The allegations of this paragraph do not appear to be directed at this Defendant. However, to the extent that this paragraph is intended to make any allegation or support any allegations against this Defendant, those allegations are denied.

56.     The allegations of this paragraph do not appear to be directed at this Defendant. However, to the extent that this paragraph is intended to make any

**A-164**

allegation or support any allegations against this Defendant, those allegations are denied.

57.     The allegations of this paragraph do not appear to be directed at this Defendant. However, to the extent that this paragraph is intended to make any allegation or support any allegations against this Defendant, those allegations are denied.

58.     The allegations of this paragraph do not appear to be directed at this Defendant. However, to the extent that this paragraph is intended to make any allegation or support any allegations against this Defendant, those allegations are denied.

59.     The allegations of this paragraph do not appear to be directed at this Defendant. However, to the extent that this paragraph is intended to make any allegation or support any allegations against this Defendant, those allegations are denied.

60.     The allegations of this paragraph do not appear to be directed at this Defendant. However, to the extent that this paragraph is intended to make any allegation or support any allegations against this Defendant, those allegations are denied.

61.     The allegations of this paragraph do not appear to be directed at this Defendant. However, to the extent that this paragraph is intended to make any

allegation or support any allegations against this Defendant, those allegations are denied.

62. The allegations of this paragraph do not appear to be directed at this Defendant. However, to the extent that this paragraph is intended to make any allegation or support any allegations against this Defendant, those allegations are denied.

## SECOND CLAIM FOR RELIEF

63. This Defendant adopts and incorporates by reference the responses to all preceding paragraphs as if fully set out herein.

64. The allegations of this paragraph state the nature of the claim and do not require a response. To the extent this paragraph is intended to make any allegations against this Defendant, those allegations are denied.

65. The allegations of this paragraph do not appear to be directed at this Defendant and therefore do not require a response. To the extent this paragraph is intended to make any allegations against this Defendant, those allegations are denied.

66. This Defendant admits that Beth McDonald provided a copy of the recording in question to this Defendant. The remaining allegations of this paragraph are denied.

67. Denied.

A-166

68. The allegations of this paragraph do not appear to be directed at this Defendant and therefore do not require a response. To the extent this paragraph is intended to make any allegations or support any allegations against this Defendant, those allegations are denied.

69. Denied.

70. Denied.

71. Denied.

72. Denied.

## THIRD CLAIM FOR RELIEF

73. This Defendant adopts and incorporates by reference the responses to all preceding paragraphs as if fully set out herein.

74. The allegations of this paragraph do not appear to be directed at this Defendant. However, to the extent that this paragraph is intended to make any allegation or support any allegations against this Defendant, those allegations are denied.

75. The allegations of this paragraph do not appear to be directed at this Defendant. However, to the extent that this paragraph is intended to make any allegation or support any allegations against this Defendant, those allegations are denied.

76. The allegations of this paragraph do not appear to be directed at this

Defendant. However, to the extent that this paragraph is intended to make any allegation or support any allegations against this Defendant, those allegations are denied.

77.    The allegations of this paragraph do not appear to be directed at this Defendant. However, to the extent that this paragraph is intended to make any allegation or support any allegations against this Defendant, those allegations are denied.

78.    The allegations of this paragraph do not appear to be directed at this Defendant. However, to the extent that this paragraph is intended to make any allegation or support any allegations against this Defendant, those allegations are denied.

## FOURTH CLAIM FOR RELIEF

79.    This Defendant adopts and incorporates by reference the responses to all preceding paragraphs as if fully set out herein.

80.    The allegations of this paragraph do not appear to be directed at this Defendant. However, to the extent that this paragraph is intended to make any allegation or support any allegations against this Defendant, those allegations are denied.

81.    The allegations of this paragraph do not appear to be directed at this Defendant. However, to the extent that this paragraph is intended to make any

allegation or support any allegations against this Defendant, those allegations are denied.

82.    The allegations of this paragraph do not appear to be directed at this Defendant. However, to the extent that this paragraph is intended to make any allegation or support any allegations against this Defendant, those allegations are denied.

83. The allegations of this paragraph do not appear to be directed at this Defendant. However, to the extent that this paragraph is intended to make any allegation or support any allegations against this Defendant, those allegations are denied.

84.    The allegations of this paragraph do not appear to be directed at this Defendant. However, to the extent that this paragraph is intended to make any allegation or support any allegations against this Defendant, those allegations are denied.

## PRAYER FOR RELIEF

This Defendant denies that the Plaintiff is entitled any relief requested.

## DEFENSES

### FIRST DEFENSE

The Complaint fails to state a cause of action upon which relief may be granted.

### SECOND DEFENSE

The allegations in the Complaint against this Defendant are untrue.

### THIRD DEFENSE

The damages asserted on behalf of the Plaintiff are the result of an intervening and/or superseding cause.

### FOURTH DEFENSE

The Plaintiff's claims are barred by collateral estoppel, equitable estoppel and/or judicial estoppel.

### FIFTH DEFENSE

The claims against this Defendant are barred by the applicable statute of limitations.

### SIXTH DEFENSE

This Defendant pleads insufficiency of process.

### SEVENTH DEFENSE

This Defendant pleads insufficiency of service of process.

## EIGHTH DEFENSE

Plaintiff's own actions or inactions caused or contributed to his alleged damages.

## NINTH DEFENSE

This Defendant breached no duty owed to the Plaintiff.

## TENTH DEFENSE

Plaintiff's claims are barred in whole or in part because of comparative and/or contributory negligence.

## ELEVENTH DEFENSE

Plaintiff has failed to mitigate his damages.

## TWELFTH DEFENSE

Plaintiff's claims are barred by the doctrines of latches, waiver and estoppel.

## THIRTEENTH DEFENSE

This Defendant denies the standing of the Plaintiff in this action to bring suit against this Defendant.

## FOURTEENTH DEFENSE

This Defendant denies the material allegations of the Complaint and demands strict proof thereof.

## FIFTEENTH DEFENSE

This Defendant denies that any conduct on her part was the proximate cause of Plaintiff's claimed injuries and damages.

## SIXTEENTH DEFENSE

This Defendant pleads and preserves the defenses of acquiescence, accord and satisfaction, and/or res judicata.

## SEVENTEENTH DEFENSE

This Defendant pleads and preserves the defenses of assumption of risk, failure of consideration, payment, release, and statute of frauds.

## EIGHTEENTH DEFENSE

This Defendant is not guilty of the matters and things alleged in the Complaint.

## NINETEENTH DEFENSE

This Defendant denies that the Plaintiff was injured or harmed in any way by any act or omission of this Defendant and/or any of her agents.

## TWENTIETH DEFENSE

This Defendant pleads that she enacted upon the laws previously declared by judicial decision and therefore is insulated and/or immune from a suit.

**A-172**

## TWENTY-FIRST DEFENSE

Plaintiff is not entitled to recover the damages, punitive or otherwise, sought in the Complaint.

## TWENTY- SECOND DEFENSE

The Plaintiff is barred by the doctrine of unclean hands in obtaining the affirmative relief sought.

## TWENTY-THIRD DEFENSE

This Defendant complied with all the requirements of federal and state law regarding any transactions with the Plaintiff.

## TWENTY-FOURTH DEFENSE

Any assigned loss or damages is the result of acts or omissions of third parties for which this Defendant is not responsible.

## TWENTY-FIFTH DEFENSE

Plaintiff's claims for punitive damages are barred because an award of punitive damages under Alabama law will constitute an impermissible burden on interstate commerce in violation of the Commerce Clause of Article I, § 9 of the United States Constitution.

## TWENTY-SIXTH DEFENSE

Plaintiff's claims for punitive damages, and the provisions of Alabama law governing the right to recover punitive damages or the determination of the amount

of punitive damages, violate the Alabama Constitution and/or the common law or public policies of Alabama on the following grounds:

a.      It is a violation of Article I, §§ 1 and 6 of the Alabama Constitution to impose punitive damages, which are penal in nature, upon a civil Defendant, upon the plaintiff's satisfaction of a burden of proof less than the "beyond a reasonable doubt" standard required in criminal cases.

b.      The procedures pursuant to which punitive damages are awarded fail to provide a reasonable limit on the amount of a punitive award against a Defendant in violation of this Defendant's due process rights guaranteed by the Alabama Constitution.

c.      The procedures pursuant to which punitive damages are awarded are unconstitutionally vague, indefinite and uncertain, and they deprive the Defendant of due process of law in violation of the Alabama Constitution.

d.      The procedures pursuant to which punitive damages are awarded fail to provide specific standards for the amount of an award of punitive damages and deprive this Defendant of due process of law in violation of the Alabama Constitution.

e.      An award of punitive damages in this case would constitute a deprivation of property without due process of law.

f.      The procedures pursuant to which punitive damages are awarded cause

**A-174**

this Defendant to be treated differently from other similarly situated persons/entities by subjecting this Defendant to liability beyond the actual loss, if any, caused by this Defendant's conduct, if any, and to liability determined without clearly defined principles, standards and limits on the amount of such awards.

g.     The procedures pursuant to which punitive damages are awarded may result in the imposition of different or disparate penalties for the same or similar conduct, which denies this Defendant her rights of equal protection and due process.

h.     The procedures pursuant to which punitive damages may be awarded allow excessive fines to be imposed in violation of Article I, §15 and Article I, §1 of the Alabama Constitution and in violation of the Defendant's due process rights.

i.     The procedures pursuant to which punitive damages are awarded subject the Defendant to punishment under a law not fully established before the alleged offense, in violation of Article I, §7 of the Alabama Constitution.

j.     It is a violation of the Alabama Constitution to impose punitive damages against the Defendant, which are penal in nature, yet compel Defendant to disclose potentially incriminating documents and evidence.

k.     The procedures pursuant to which punitive damages are awarded subject the Defendant to punishment for the conduct of others through vicarious liability, respondeat superior, or through non-apportionment of damages among tortfeasors based on the respective enormity of its alleged misconduct, in violation

**A-175**

of Defendant's due process rights and Article I, §§ 1, 6, 13 and 22 of the Alabama

Constitution.

l.      The procedures pursuant to which punitive damages are awarded

expose Defendant to the risk of indefinable, unlimited liability unrelated to the actual

loss caused by Defendant's conduct, creating a chilling effect on Defendant's

exercise of her right to a judicial resolution of this dispute.

m.      The procedures pursuant to which punitive damages are awarded are

not rationally related to legitimate government interests.

n.      Plaintiff's claim for punitive damages against this Defendant cannot be

sustained because an award for punitive damages under Alabama law subject to no

predetermined limit, such as a maximum multiple compensatory damages or a

maximum amount, on the amount of punitive damages that a jury may impose,

including an amount possibly in excess of the amount authorized by the Alabama

Criminal Code for the same or similar conduct, and providing no protection against

awards of punitive damages for the same course of conduct, will violate the

Defendant's due process and equal protection rights guaranteed by the Alabama

Constitution. Further, to allow such an award would be improper under the common

law and/or public policies of the State of Alabama.

o.      Plaintiff's claim for punitive damages against the Defendant cannot be

sustained because an award for punitive damages under Alabama law would violate

**A-176**

the Defendant's due process rights in as much as juries are allowed to award punitive damages as they see fit or as a matter of "moral discretion" without adequate or specific standards as to the amount necessary to punish and deter and without a necessary relationship to the amount of actual harm caused.

## TWENTY-SEVENTH DEFENSE

Plaintiff's claim for punitive damages is barred to the extent that Plaintiff seeks the admission into evidence of this Defendant's net worth in determining whether punitive damages are to be awarded and/or in what amount they are to be awarded because punitive damages are a form of punishment that is grounded in this Defendant's status rather than in specific misconduct, and thus has the effect of treating classes of citizens unequally in violation of the Equal Protection Clause of the Fifth and Fourteenth Amendment to the United States Constitution and Article I, §§ 1, 6, 13 and 22 of the Alabama Constitution.

## TWENTY-EIGHTH DEFENSE

This Defendant denies that she has been guilty of any conduct which entitles Plaintiff to recover punitive damages. Moreover, Plaintiff is not entitled to punitive damages because they failed to comply with Ala. Code §6-5-185.

## TWENTY-NINTH DEFENSE

The claim of Plaintiff for punitive damages against this Defendant cannot be upheld, because any award of punitive damages under Alabama law without

**A-177**

bifurcating the trial of all punitive damages would violate Defendant's due process rights guaranteed by the United States Constitution and the Alabama Constitution.

## THIRTIETH DEFENSE

Punitive damages are a form of criminal and quasi-criminal sanctions. Therefore, the claim of Plaintiff for punitive damages cannot be upheld, because an award of punitive damages without the same protections that are accorded criminal defendant, including, but not limited to, protection against searches and seizures, double jeopardy and self-incrimination and the rights to confront adverse witnesses, to proof by evidence beyond a reasonable doubt, and to a speedy trial would violate Defendant's rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, §§ 1, 5, 6, 7, 9, 11, 13 and 22 of the Alabama Constitution. These rights will be violated unless the Defendant is afforded the safeguards guaranteed by these provisions, including, but not limited to, the right to separate trials if requested by this Defendant for the determination of liability for compensatory and punitive damages, as well as for the determination of the amount of punitive damages, if any.

## THIRTY-FIRST DEFENSE

The claim of Plaintiff for punitive damages against this Defendant cannot be upheld, because an award of punitive damages under Alabama law for the purpose of compensating Plaintiff for elements of damage not otherwise recognized by

**A-178**

Alabama law would violate Defendant's due process rights guaranteed by the United

States Constitution and by the due process provisions of the Alabama Constitution.

## THIRTY-SECOND DEFENSE

The claim of Plaintiff for punitive damages against this Defendant cannot be

upheld to the extent it is in violation of any law passed by the United States Congress

or the Alabama Legislature limiting awards of punitive damages.

## THIRTY-THIRD DEFENSE

Plaintiff's claim for punitive damages cannot be upheld to the extent it violates

or contravenes the holding of the United States Supreme Court in ruling in the case

of BMW v. Gore, 116 S.Ct. 1589 (1996).

## THIRTY-FOURTH DEFENSE

Plaintiff's claims for punitive damages cannot be upheld based on all grounds

that the United States Supreme Court, in BMW v. Gore, 116 S.Ct. 1589 (1996) and

State Farm Mut. Auto Ins. Co. v. Campbell, 123 S.Ct. 1513 (2003), determined that

certain laws governing the right to recover damages punitive in nature or the

determination of the amount of damages punitive in nature violate a defendant's

rights provided by the United States Constitution.

## THIRTY-FIFTH DEFENSE

Plaintiff's claims for punitive damages cannot be upheld under BMW v. Gore,

116 S.Ct. 1589 (1996) and State Farm Mut. Auto. Ins. Co. v. Campbell, 123 S.Ct.

**A-179**

1513 (2003), to the extent it seeks to punish, influence or change Defendant's policies or practices nationwide rather than Defendant's policies or practices that occurred in this state.

### THIRTY-SIXTH DEFENSE

Plaintiff's claims for punitive damages cannot be upheld under BMW v. Gore, 116 S.Ct. 1589 (1996) and State Farm Mut. Auto Ins. Co. v. Campbell, 123 S.Ct. 1513 (2003), to the extent that it considers profits, if any, earned by Defendant other than profits earned in this state which relate to the alleged wrongful conduct at issue.

### THIRTY-SEVENTH DEFENSE

Plaintiff's claims for punitive damages cannot be upheld under BMW v. Gore, 116 S.Ct. 1589 (1996) and State Farm Mut. Auto Ins. Co. v. Campbell, 123 S.Ct. 1513 (2003), to the extent it is not based on the least drastic remedy or lowest amount of punitive damages that could be expected to insure that Defendant will more fully comply with this state's laws in the future.

### THIRTY-EIGHTH DEFENSE

This Defendant avers that punitive damages would serve no purpose for which punitive damages are awarded in Alabama.

### THIRTY-NINTH DEFENSE

This Defendant pleads consent.

**A-180**

### FORTIETH DEFENSE

This Defendant hereby adopts and incorporates by reference all defenses pled by any other Defendant in this action.

### FORTY-FIRST DEFENSE

This Defendant pleads good faith.

### FORTY-SECOND DEFENSE

This Defendant pleads *in para delicto*.

### FORTY-THIRD DEFENSE

This Defendant pleads lack of intent.

### FORTY-FOURTH DEFENSE

This Defendant hereby reserves the right to add any additional defenses that may be discovered at a later date.

Respectfully submitted,

*/s/ Joseph E. Stott*

**JOSEPH E. STOTT – STO041 (ASB-4163-T71J)**
Attorney for Defendant Brooke Dumont

**OF COUNSEL:**

**Stott & Harrington, P.C.**
2637 Valleydale Road, Suite 100
Birmingham, AL 35244
(205) 573-0500
(205) 637-5131 Fax#
joe@stottharrington.com

**A-181**

## CERTIFICATE OF SERVICE

I hereby certify that I have on <u>July 15, 2026</u>, served a copy of the foregoing on the following via CM/ECF electronic filing and by placing a copy of same in the U.S. First Class Mail:

**Via Email and U.S. First Class Mail**
*Plaintiff Pro Se*
Scott McDonald
789 Neal Drive
Gurley, AL 35748
256-503-0675
Scottm2@highwaay.net

**Via Email**
*Attorney for Defendant Beth McDonald*
James Eric Brisendine, Esq.
Scruggs, Dodd & Brisendine, PA
P. O. Box 681109
Ft. Payne, AL   35962-1612
256-845-5932
eric@sdblaw.us


/s/ Joseph E. Stott
**OF COUNSEL**

A-183

# Doc 64

## Second Amended Answer by Defendant Beth McDonald

FILED
2026 Jul-15  AM 10:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

**SCOTT MCDONALD,**

**Plaintiff,**

    **v.**

**BETH MCDONALD, and**
**BROOKE DUMONT,**

**Defendants.**

**5:25-cv-2226-HDM**

## SECOND AMENDED ANSWER OF DEFENDANT BETH MCDONALD TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Pursuant to the Court's Order (Doc. 61), Defendant Beth McDonald amends her answer the Plaintiff's Second Amended Complaint as follows:

## NATURE OF THE ACTION

Defendant Beth McDonald denies all the allegations contained in Plaintiff's unnumbered "Nature of the Action" and demands strict proof thereof.

## PARTIES

1.  Defendant Beth McDonald admits that Plaintiff Scott McDonald is a resident of Madison County, Alabama.  Defendant denies all other allegations contained in Paragraph One of the Second Amended Complaint and demands strict proof thereof.

**A-184**

2.      Defendant Beth McDonald admits that she is a Lawful Permanent Resident (LPN) of the United States.  Defendant Beth McDonald admits that she is a resident of Madison County, Alabama, and she is the estranged daughter-in-law of the Plaintiff's son.  Defendant Beth McDonald denies all other allegations contained in Paragraph Two of the Second Amended Complaint and demands strict proof thereof.

3.      Defendant Beth McDonald admits that Defendant Brooke Dumont is an Alabama attorney whose principal place of business is in Huntsville, Alabama.  Defendant Beth McDonald also admits that Defendant Dumont is Defendant Beth McDonald's attorney in her divorce proceedings against Nathan McDonald (the Plaintiff's son.)  Defendant Beth McDonald denies all other allegations contained in Paragraph Three of the Second Amended Complaint and demands strict proof thereof.

## JURISDICTION AND VENUE

4.      Defendant Beth McDonald admits that Plaintiff has invoked 18 U.S.C. §§ 2510, et seq. (the "Wiretap Act.").  Defendant Beth McDonald denies that said act is applicable to the facts in this case.

5.      Defendant Beth McDonald acknowledges that the Court may have supplemental jurisdiction over the Plaintiff's state court claims.  However,

Defendant Beth McDonald denies that the "wiretap act" is applicable to the facts in this case.

6.      Defendant Beth McDonald admits that 18 U.S.C. §§ 2520 contains a provision for the recovery of civil damages.  Defendant Beth McDonald denies that the "wiretap act" is applicable to the facts in this case.

7.      Defendant Beth McDonald admits she is subject to the personal jurisdiction of this Court.  Defendant Beth McDonald denies all other allegations contained in Paragraph Seven of the Second Amended Complaint and demands strict proof thereof.

8.      Paragraph Eight of the Second Amended Complaint is not directed to Defendant Beth McDonald and does not require a response from her.

9.      Defendant Beth McDonald admits that if the Court has jurisdiction over the Plaintiff's claims, venue is proper in the Northern District of Alabama.

10.      Defendant Beth McDonald admits that if the Court has jurisdiction over the Plaintiff's claims, venue is proper in the Northern District of Alabama.

## FACTUAL BACKGROUND

### Relationship of Parties & Relevant History

11.      Defendant Beth McDonald admits that she is the former spouse of Nathan McDonald.  Beth McDonald admits that Scott McDonald is Nathan's

father.  Beth McDonald admits that Brooke Dumont is Beth McDonald's legal counsel for her divorce proceedings against Nathan McDonald.

12.    Defendant Beth McDonald admits that Nathan McDonald initially filed for divorce in October of 2024.  Defendant Beth McDonald denies all other allegations contained in Paragraph Twelve of the Second Amended Complaint and demands strict proof thereof.

13.    Defendant Beth McDonald admits that in-home recordings were an issue between her and her husband.  Defendant Beth McDonald denies all other allegations contained in Paragraph Thirteen of the Second Amended Complaint and demands strict proof thereof.

14.    Defendant Beth McDonald states that the allegations contained in the divorce answer, counterclaim, and motion for emergency pendente lite referenced by Scott McDonald speak for themselves. Defendant Beth McDonald denies all other allegations contained in Paragraph Fourteen of the Second Amended Complaint and demands strict proof thereof.

15.    Defendant Beth McDonald admits Nathan McDonald gave her a proposal that was never executed.  Defendant Beth McDonald denies all other allegations contained in Paragraph Fifteen of the Second Amended Complaint and demands strict proof thereof.

16.     Defendant Beth McDonald admits that the 2024 divorce action was dismissed.  Defendant Beth McDonald admits that she and Nathan McDonald moved into a new house.  Defendant Beth McDonald denies all other allegations contained in Paragraph Sixteen of the Second Amended Complaint and demands strict proof thereof.

17.     Defendant Beth McDonald admits that on or about September 5, 2025, she filed for divorce from Nathan McDonald.  Defendant Beth McDonald denies all other allegations contained in Paragraph Seventeen of the Second Amended Complaint and demands strict proof thereof.

**The Reasonable Expectation of Privacy**

18.     Defendant Beth McDonald admits that on or about September 8, 2025, a domestic dispute occurred between Beth McDonald and Nathan McDonald which resulted in Nathan McDonald being criminally charges with Domestic Violence Third, and Obstructing Police – Interference with a Domestic Violence Emergency.  Defendant Beth McDonald denies all other allegations contained in Paragraph Eighteen of the Second Amended Complaint and demands strict proof thereof.

19.     Defendant Beth McDonald admits that Plaintiff arrived at Defendant's residence after Defendant McDonald called 911.  Defendant Beth McDonald

**A-188**

denies all other allegations contained in Paragraph Nineteen of the Second Amended Complaint and demands strict proof thereof.

20.    Defendant Beth McDonald denies the allegations contained in Paragraph Twenty of the Second Amended Complaint and demands strict proof thereof.

### Preparation for Surreptitious Recording

21.    Defendant Beth McDonald admits to the allegations contained in Paragraph Twenty-One of the Second Amended Complaint.

22.    Defendant Beth McDonald does not have sufficient information to admit nor deny the allegations contained in Paragraph Twenty-Two of the Second Amended Complaint.  Therefore, she denies the same and demands strict proof thereof.

23.    Defendant Beth McDonald admits that she downloaded a recording app to her phone.   Defendant Beth McDonald denies all other allegations contained in Paragraph Twenty-Three of the Second Amended Complaint and demands strict proof thereof.

### Interception of Private Communications

24.    Defendant Beth McDonald admits she fled her residence as a result of the domestic altercation with her husband and went to her neighbor Devin's house.

**A-189**

Defendant Beth McDonald denies all other allegations contained in Paragraph Twenty-Four of the Second Amended Complaint and demands strict proof thereof.

25.     Defendant Beth McDonald admits she began recording the domestic dispute between herself and her husband on her cell phone.  Defendant Beth McDonald denies all other allegations contained in Paragraph Twenty-Five of the Second Amended Complaint and demands strict proof thereof.

26.     Defendant Beth McDonald denies the allegations contained in Paragraph Twenty-Six of the Second Amended Complaint as written and demands strict proof thereof.

27.     Defendant Beth McDonald denies the allegations contained in Paragraph Twenty-Seven of the Second Amended Complaint as written and demands strict proof thereof.

28.     Defendant Beth McDonald denies the allegations contained in Paragraph Twenty-Eight of the Second Amended Complaint as written and demands strict proof thereof.

29.     Defendant Beth McDonald denies the allegations contained in Paragraph Twenty-Nine of the Second Amended Complaint as written and demands strict proof thereof.

30.     Defendant Beth McDonald denies the allegations contained in Paragraph Thirty of the Second Amended Complaint and demands strict proof thereof.

## Nathan's Arrest

31.     Defendant Beth McDonald admits to the allegations contained in Paragraph Thirty-One of the Second Amended Complaint.

## The Weaponization of Illegally Obtained Evidence

32.     Defendant Beth McDonald denies the allegations contained in Paragraph Thirty-Two of the Second Amended Complaint as written and demands strict proof thereof.

33.     Paragraph Thirty-Three of the Second Amended Complaint is not directed at this Defendant and does not require a response.  If it does require a response, then Defendant Beth McDonald denies the allegations contained in Paragraph Thirty-Three of the Second Amended Complaint as written and demands strict proof thereof.

34.     Defendant Beth McDonald denies the allegations contained in Paragraph Thirty-Four of the Second Amended Complaint as written and demands strict proof thereof.

## Discovery of Violation

35.    Defendant Beth McDonald does not have sufficient information to admit nor deny the allegations contained in Paragraph Thirty-Five of the Second Amended Complaint.  Therefore, she denies the same and demands strict proof thereof.

36.    Defendant Beth McDonald does not have sufficient information to admit nor deny the allegations contained in Paragraph Thirty-Six of the Second Amended Complaint.  Therefore, she denies the same and demands strict proof thereof.

37.    Defendant Beth McDonald does not have sufficient information to admit nor deny the allegations contained in Paragraph Thirty-Seven of the Second Amended Complaint.  Therefore, she denies the same and demands strict proof thereof.

38.    Defendant Beth McDonald does not have sufficient information to admit nor deny the allegations contained in Paragraph Thirty-Eight of the Second Amended Complaint.  Therefore, she denies the same and demands strict proof thereof.

### The Intercepted Private Communications

39.    Defendant Beth McDonald denies the allegations contained in Paragraph Thirty-Nine of the Second Amended Complaint as written and demands strict proof thereof.

40.    Defendant Beth McDonald does not have sufficient information to admit nor deny the allegations contained in Paragraph Forty of the Second Amended Complaint.  Therefore, she denies the same and demands strict proof thereof.

41.    Defendant Beth McDonald denies the allegations contained in Paragraph Forty-One of the Second Amended Complaint and demands strict proof thereof.

42.    Defendant Beth McDonald denies the allegations contained in Paragraph Forty-Two of the Second Amended Complaint as written and demands strict proof thereof.

43.    Defendant Beth McDonald denies the allegations contained in Paragraph Forty-Three of the Second Amended Complaint and demands strict proof thereof.

**Defendant Dumont Used the Recording in Providing Legal Services**

44.    Defendant Beth McDonald admits that Dumont is her divorce attorney.

45.     Paragraph Forty-Five of the Second Amended Complaint is not directed at this Defendant and does not require a response.  If it does require a response, then Defendant Beth McDonald denies the allegations contained in

Paragraph Forty-Five of the Second Amended Complaint as written and demands strict proof thereof.

## Different Version of the September 8 Recording

46.    Defendant Beth McDonald does not have sufficient information to admit nor deny the allegations contained in Paragraph Forty-Six of the Second Amended Complaint.  Therefore, she denies the same and demands strict proof thereof.

47.    Paragraph Forty-Seven of the Second Amended Complaint is not directed at this Defendant and does not require a response.  If it does require a response, then Defendant Beth McDonald denies the allegations contained in Paragraph Forty-Seven of the Second Amended Complaint as written and demands strict proof thereof.

48.    Paragraph Forty-Eight of the Second Amended Complaint is not directed at this Defendant and does not require a response.  If it does require a response, then Defendant Beth McDonald denies the allegations contained in Paragraph Forty-Eight of the Second Amended Complaint as written and demands strict proof thereof.

49.    Paragraph Forty-Nine of the Second Amended Complaint is not directed at this Defendant and does not require a response.  If it does require a response, then Defendant Beth McDonald denies the allegations contained in

Paragraph Forty-Nine of the Second Amended Complaint as written and demands strict proof thereof.

## FIRST CAUSE OF ACTION
## Unlawful Interception of Electronic Communication – Against Beth McDonald

50.     Paragraph Fifty of the Second Amended Complaint is not directed at this Defendant and does not require a response.  If it does require a response, then Defendant Beth McDonald denies the allegations contained in Paragraph Fifty of the Second Amended Complaint as written and demands strict proof thereof.

51.     Defendant Beth McDonald admits that Plaintiff has invoked 18 U.S.C. §§ 2510, et seq. (the "Wiretap Act.").  Defendant Beth McDonald denies that said act is applicable to the facts in this case.

52.     Defendant Beth McDonald denies the allegations contained in Paragraph Fifty-Two of the Second Amended Complaint and demands strict proof thereof.

53.     Defendant Beth McDonald denies the allegations contained in Paragraph Fifty-Three of the Second Amended Complaint and demands strict proof thereof.

54.    Defendant Beth McDonald denies the allegations contained in Paragraph Fifty-Four of the Second Amended Complaint and demands strict proof thereof.

55.    Defendant Beth McDonald denies the allegations contained in Paragraph Fifty-Five of the Second Amended Complaint and demands strict proof thereof.

56.    Defendant Beth McDonald denies the allegations contained in Paragraph Fifty-Six of the Second Amended Complaint and demands strict proof thereof.

57.    Defendant Beth McDonald denies the allegations contained in Paragraph Fifty-Seven of the Second Amended Complaint and demands strict proof thereof.

58.    Defendant Beth McDonald denies the allegations contained in Paragraph Fifty-Eight of the Second Amended Complaint and demands strict proof thereof.

59.    Defendant Beth McDonald denies the allegations contained in Paragraph Fifty-Nine of the Second Amended Complaint and demands strict proof thereof.

60.     Defendant Beth McDonald denies the allegations contained in Paragraph Sixty of the Second Amended Complaint and demands strict proof thereof.

61.     Defendant Beth McDonald denies the allegations contained in Paragraph Sixty-One of the Second Amended Complaint and demands strict proof thereof.

62.     Defendant Beth McDonald denies the allegations contained in Paragraph Sixty-Two of the Second Amended Complaint and demands strict proof thereof.

## SECOND CAUSE OF ACTION
## Disclosure & Use of Surreptitiously Recorded Conversations – Against All Defendants

63.     Paragraph Sixty-Three of the Second Amended Complaint is not directed at this Defendant and does not require a response.  If it does require a response, then Defendant Beth McDonald denies the allegations contained in Paragraph Sixty-three of the Second Amended Complaint as written and demands strict proof thereof.

64.     Defendant Beth McDonald admits that Plaintiff has invoked 18 U.S.C. §§ 2510, et seq. (the "Wiretap Act.").  Defendant Beth McDonald denies that said act is applicable to the facts in this case.

**A-197**

65. Defendant Beth McDonald denies the allegations contained in Paragraph Sixty-Five of the Second Amended Complaint and demands strict proof thereof.

66. Defendant Beth McDonald denies the allegations contained in Paragraph Sixty-Six of the Second Amended Complaint and demands strict proof thereof.

67. Defendant Beth McDonald denies the allegations contained in Paragraph Sixty-Seven of the Second Amended Complaint and demands strict proof thereof.

68. Defendant Beth McDonald denies the allegations contained in Paragraph Sixty-Eight of the Second Amended Complaint and demands strict proof thereof.

69. Defendant Beth McDonald denies the allegations contained in Paragraph Sixty-Nine of the Second Amended Complaint and demands strict proof thereof.

70. Defendant Beth McDonald denies the allegations contained in Paragraph Seventy of the Second Amended Complaint and demands strict proof thereof.

**A-198**

71.    Defendant Beth McDonald denies the allegations contained in Paragraph Seventy-One of the Second Amended Complaint and demands strict proof thereof.

72.    Defendant Beth McDonald denies the allegations contained in Paragraph Seventy-Two of the Second Amended Complaint and demands strict proof thereof.

### THIRD CAUSE OF ACTION
### Intrusion Upon the Seclusion of Plaintiff – Against Beth McDonald

73.    Paragraph Seventy-Three of the Second Amended Complaint is not directed at this Defendant and does not require a response.  If it does require a response, then Defendant Beth McDonald denies the allegations contained in Paragraph Seventy-Three of the Second Amended Complaint as written and demands strict proof thereof.

74.    Defendant Beth McDonald denies the allegations contained in Paragraph Seventy-Four of the Second Amended Complaint and demands strict proof thereof.

75.    Defendant Beth McDonald denies the allegations contained in Paragraph Seventy-Five of the Second Amended Complaint and demands strict proof thereof.

76.    Defendant Beth McDonald denies the allegations contained in Paragraph Seventy-Six of the Second Amended Complaint and demands strict proof thereof.

77.    Defendant Beth McDonald denies the allegations contained in Paragraph Seventy-Seven of the Second Amended Complaint and demands strict proof thereof.

78.    Defendant Beth McDonald denies the allegations contained in Paragraph Seventy-Eight of the Second Amended Complaint and demands strict proof thereof.

**FOURTH CAUSE OF ACTION**
**Wantonness – Against Beth McDonald**

79.    Paragraph Seventy-Nine of the Second Amended Complaint is not directed at this Defendant and does not require a response.  If it does require a response, then Defendant Beth McDonald denies the allegations contained in Paragraph Seventy-Nine of the Second Amended Complaint as written and demands strict proof thereof.

80.    Defendant Beth McDonald denies the allegations contained in Paragraph Eighty of the Second Amended Complaint and demands strict proof thereof.

81.    Defendant Beth McDonald denies the allegations contained in Paragraph Eighty-One of the Second Amended Complaint and demands strict proof thereof.

82.    Defendant Beth McDonald denies the allegations contained in Paragraph Eighty-Two of the Second Amended Complaint and demands strict proof thereof.

83.    Defendant Beth McDonald denies the allegations contained in Paragraph Eighty-Three of the Second Amended Complaint and demands strict proof thereof.

84.    Defendant Beth McDonald denies the allegations contained in Paragraph Eighty-Four of the Second Amended Complaint and demands strict proof thereof.

## PRAYER FOR RELIEF

Defendant Beth McDonald denies that Plaintiff is entitled to any of the damages set forth in Plaintiff's unnumbered "Prayer for Relief" and demands strict proof thereof.

## DEFENDANT BETH MCDONALD'S AFFIRMATIVE DEFENSES

1.    Defendant Beth McDonald denies each and every allegation of the Second Amended Complaint not explicitly admitted in this Answer and demands strict proof thereof.

2. Plaintiff's Second Amended Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

3. Defendant Beth McDonald did not intentionally intercept the communications involving the Plaintiff Scott McDonald and made the basis of this lawsuit.

4. Defendant Beth McDonald did not possess the conscious objective to intercept the communications involving Plaintiff Scott McDonald and made the basis of this lawsuit.

5. Defendant Beth McDonald did not deliberately intercept the communications involving Plaintiff Scott McDonald and made the basis of this lawsuit.

6. Defendant Beth McDonald did not owe any duties to Plaintiff.

7. Defendant Beth McDonald did not breach any duties to Plaintiff.

8. Plaintiff's damages, if any, were proximately caused or contributed to by unforeseeable, independent, intervening or superseding events beyond Defendant Beth McDonald's control and unrelated to any conduct by Beth McDonald.

9. Plaintiff's damages, if any, arose as a result of acts or omission of others, not Beth McDonald.

10.    Defendant Beth McDonald is not guilty of culpable conduct and is not liable to Plaintiff under any theory of law.

11.    Defendant Beth McDonald denies that she engaged in any intentional conduct whatsoever that caused Plaintiff any alleged injury or damage.

12.    Defendant Beth McDonald's actions, if any, were justified under applicable law.

13.    Defendant Beth McDonald denies that she engaged in any conduct that entitles Plaintiff to recover punitive damages.

14.    Defendant preserves all other affirmative defenses set forth in Fed. R. Civ. Pro. 8 (c).

15.    Defendant Beth McDonald adopts and incorporates by reference all defenses pled by any other Defendant in this action.

16.    Defendant reserves the right to amend her Answer.

Respectfully submitted,

/s/ J. Eric Brisendine
J. Eric Brisendine (ASB-7604-a58b)
Scruggs, Dodd & Brisendine,
Attorneys, P.A.
PO Box 681109
207 Alabama Avenue Southwest
Fort Payne, Alabama 35968
(256) 845-5932
eric@sdblaw.us

**A-203**

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on the 15th day of July, 2026, I have served a copy of the foregoing Amended Answer on all counsel of record via this Court's electronic filing system and/or US Mail and/or electronic mail to:

Scott McDonald (pro se)
789 Neal Dr.
Gurley, AL 35748
Scottm2@highwaay.net

Joseph E. Stott
Stott & Harrington, P.C.
2637 Valleydale Road, Ste 100
Birmingham, AL 35244
joe@stottharrington.com

                              /s/ J. Eric Brisendine
                              J. Eric Brisendine

A-205

# Doc 67

## Plaintiff's Motion to Unseal 51

FILED

2026 Jul-22  PM 12:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

2026 JUL 22  P 12: 07

U.S. DISTRICT COURT
ALABAMA

SCOTT MCDONALD,

Plaintiff,

v.

BETH MCDONALD, et al,

Defendants.

Case No.: 5:25-cv-02226-HDM

PLAINTIFF'S OPPOSED MOTION TO UNSEAL IN PART ORDER DENYING THE MOTION TO STRIKE (DOC. 51) AND FOR LEAVE TO FILE A REDACTED PUBLIC VERSION - OPPOSED

## PLAINTIFF'S OPPOSED MOTION TO UNSEAL IN PART ORDER DENYING THE MOTION TO STRIKE (DOC. 51) AND FOR LEAVE TO FILE A REDACTED PUBLIC VERSION

Plaintiff Scott McDonald, *pro se*, moves to unseal in part the Court's Order Denying Motion to Strike (Doc. 51) (sealed) and for leave to file a narrowly redacted public version of that order. Pursuant to the Court's Initial Order, Plaintiff designates this motion as opposed.

Plaintiff does not seek public filing of the disputed recording, or of any transcript, quotation, or paraphrase of its contents. He seeks only public filing of the Court's legal reasoning, with narrow redactions sufficient to omit the limited content-bearing passages and comparably sensitive private detail that should remain nonpublic. Because Doc. 51 is a judicial order—not merely discovery material—wholesale sealing is not justified where targeted redactions are plainly available.

A-206

## I. Relief Requested

Plaintiff respectfully requests that the Court:

1. Unseal in part the Order Denying Motion to Strike (Doc. 51);

2. Permit filing on the public docket of a redacted version of Doc. 51;

3. Limit redactions to those portions necessary to avoid public disclosure of recording content or comparably sensitive private detail; and

4. Grant such other relief as the Court deems just and proper.

## II. Doc. 51 Is a Judicial Order Subject to the Presumption of Public Access

### a. The public has a presumptive right of access to judicial records

The Supreme Court has recognized a general right "to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). The Eleventh Circuit has extended that principle to civil proceedings and has recognized a "general presumption that criminal and civil actions should be conducted publicly." *Newman v. Graddick*, 696 F.2d 796, 801–03 (11th Cir. 1983). The Court of Appeals has likewise held that the public has a presumptive common-law right of access to judicial records and that a court must balance the competing interests before denying access. *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311–12 (11th Cir. 2001); *FTC v. AbbVie Prods. LLC*, 713 F.3d 54, 62 (11th Cir. 2013).

**A-207**

### b. Doc. 51 is a judicial record, not merely private discovery

Doc. 51 is a judicial record and that distinction matters. In the Eleventh Circuit, materials filed in connection with the Court's adjudicatory function are judicial records subject to the right of access, unlike unfiled discovery materials. *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355–56 (11th Cir. 1987); *Chicago Tribune Co.*, 263 F.3d at 1311–12; *FTC v. AbbVie*, 713 F.3d at 62–64. Materials filed in connection with pretrial motions that require judicial resolution on the merits are subject to the common-law right of access. *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007).

Doc. 51 falls squarely within that category. It is a judicial order resolving Plaintiff's Opposed Motion to Strike Sealed Conventional Filing: "Exhibit 1 – Audio to Motions Hearing (Under Seal)" (Doc. 45). It contains the Court's factual discussion, statutory analysis, and legal reasoning for denying that motion. It is therefore a judicial record.

### c. The public interest is in the Court's reasoning, not in publication of the recording

The public's interest here is not in obtaining a copy of the recording itself. The public's interest is in understanding the basis on which the Court exercised judicial power. Doc. 51 sets out the Court's reasoning on whether the Court may judicially receive and consider the disputed recording before Plaintiff has proven

**A-208**

intentional interception, and whether 18 U.S.C. § 2515 bars such use at that stage.

The public cannot meaningfully evaluate the exercise of judicial power if the

Court's reasoning remains sealed in full while only the result is visible.

### III. Wholesale Sealing of Doc. 51 Is Overbroad

#### a. Sealing requires specific, on-the-record findings and narrow tailoring

Even where confidentiality concerns are legitimate, sealing must be

supported by specific findings and narrowly tailored. *Romero v. Drummond Co.*,

480 F.3d 1234, 1245–46 (11th Cir. 2007). This Circuit has also recognized that

when access is denied, the decision to restrict access must be articulated in findings

sufficient for review. *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983).

The Supreme Court likewise has made clear that restrictions on access must rest on

a specific justification and be no broader than necessary. *Press-Enterprise Co. v.*

*Superior Court*, 478 U.S. 1, 13–14 (1986); *Globe Newspaper Co. v. Superior*

*Court*, 457 U.S. 596, 606–07 (1982).

The same principle appears in Eleventh Circuit cases recognizing that public

access promotes confidence in the judicial process and preserves the integrity of

the courts. See *Chicago Tribune Co.*, 263 F.3d at 1311–12; *Wilson v. American*

*Motors Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985); Brown v. Advantage Eng'g,

Inc., 960 F.2d 1013, 1016 (11th Cir. 1992).

### b. Complete sealing of this judicial order is broader than necessary

Complete sealing of Doc. 51 cannot be justified on this record. If some limited portions of the order still warrant protection, that does not justify suppressing the entire order from the public docket. The proper remedy is narrow redaction of those portions, not wholesale sealing of the full judicial order.

That is especially true here because any genuinely sensitive material is confined to discrete passages. There is no sound basis to seal the Court's entire legal analysis merely because some small part of the order refers to sensitive content.

### c. The integrity of the courts favors disclosure of the Court's reasoning

Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case. *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992). Public access helps ensure the integrity, fairness, and accountability of the judicial system. *Id.*; *Chicago Tribune Co.*, 263 F.3d at 1311–12; *Newman v. Graddick*, 696 F.2d at 801–03.

That principle has particular force here. Doc. 51 does not address a clerical matter or private discovery dispute. It sets out the Court's reasoning on a contested question of statutory interpretation and judicial use of allegedly intercepted

communications. Continued wholesale sealing of that reasoning undermines the transparency that public confidence in the courts requires.

## IV. Narrow Redaction, Not Total Sealing, Is the Correct Approach

### a. Plaintiff seeks only a redacted public version

Plaintiff is not asking to place the recording itself, or excerpts from it, on the public docket. Plaintiff seeks the narrower remedy of a redacted public version of Doc. 51.

Specifically, Plaintiff requests redaction of:

- most of the second paragraph of the factual background section, to the extent it unnecessarily discloses sensitive private background detail; and

- the final-page footnote in which the Court quotes and interprets purported recording content.

### b. The balance of the order should be public

The remainder of the order should be public. That includes the Court's reasoning concerning:

- why it received and reviewed sealed Exhibit 1;

- its interpretation of 18 U.S.C. §§ 2511 and 2515; and

- its rationale for denying Plaintiff's motion.

Those portions are not the recording. They are the Court's reasoning. Keeping them entirely off the public docket goes far beyond any legitimate need to protect sensitive content.

### c. Narrower alternatives are concrete, not hypothetical

The availability of obvious, targeted redactions confirms that continued total sealing is improper. The law does not favor blanket closure where narrower alternatives are readily available. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13–14 (1986); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606–07 (1982); *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007).

Here, narrower alternatives are not speculative. Plaintiff identifies them specifically. That should foreclose any argument for continued wholesale sealing of the full order.

### V. If Any Portion Remains Sealed, the Court Should Make Specific On-the-Record Findings

If the Court denies this motion in whole or in part, it should identify with specificity:

- which portions of Doc. 51 must remain sealed;
- the precise interest justifying continued sealing of those portions; and
- why narrower redaction would be insufficient.

That is required for meaningful review. *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007); *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983). It

**A-212**

is especially important here because the document at issue is a judicial order, not merely ancillary material.

## *Conclusion*

For the foregoing reasons, Plaintiff respectfully requests that the Court unseal in part Order Denying Motion to Strike (Doc. 51) (Ex. 1) and permit filing on the public docket of a redacted version of that order. Plaintiff does not seek public filing of recording content. He seeks only the narrow relief necessary to place the Court's legal reasoning and procedural analysis on the public docket while preserving redactions for the limited content-bearing or comparably sensitive portions of the order. Wholesale sealing of a judicial order is not justified where narrow redactions will adequately protect the only genuinely sensitive material.

Respectfully submitted,

Date: ___July 22, 2026___

___Scott McDonald___
Scott McDonald
Plaintiff, *pro se*

A-214

# Doc 71

Order Denying Motion to Unseal 51

**A-214**

FILED

2026 Jul-31  PM 04:19

U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

**SCOTT MCDONALD,**

    **Plaintiff**,

**v.**                              **Case No. 5:25-cv-2226-HDM**

**BETH MCDONALD,** *et al.*,

    **Defendants**.

## ORDER

This case is before the court on four motions filed by Plaintiff: (1) a motion to unseal the court's previous sealed order denying his motion to strike, (doc. 67); (2) a motion to strike portions of Defendant Beth McDonald's Second Amended Answer, (doc. 68); (3) a motion to reconsider the court's prior denial of his motion to vacate the court's protective order, (doc. 69); and (4) a motion to strike portions of Defendant Brooke Dumont's Amended Answer, (doc. 70). The court has reviewed the motions and concludes that responses from Defendants are unnecessary.

First, Plaintiff's motion to unseal the court's prior order, with redactions, (doc. 67), does not warrant the relief requested. The court will not publish a redacted version of its prior order because the necessary redactions would remove context

**A-215**

important to understanding both the court's reasoning and its disposition. When faced with similar situations, other courts have simply published the entire order on the public record, with no redactions, regardless of the sensitivity of the information included.[1] Here, the court sealed its order principally because Plaintiff—who is now requesting that the order be *un*sealed—has repeatedly and emphatically objected to the public disclosure of the information discussed in it. The court has no independent objection to unsealing the order in its entirety. If Plaintiff now prefers full public disclosure, he may file a notice unequivocally stating that he has no objection to the complete unsealing of the order.[2]

---

[1] As this court stated in *Weidley v. Aaniiih Nakoda Fin. LLC*,

> Defendants have filed numerous briefs and evidence under seal, including the Rule 30(b)(6) deposition cited here, conducted for purposes of jurisdictional discovery. But because some sealed information is necessary to resolve the pending motions, the Court will include some unredacted information in this Order where appropriate. The Court recognizes that the parties have privacy interests in the confidential information, but the public's interest in the reasoning behind the Court's Order is greater.

787 F. Supp. 3d 1255, 1268 n.1 (N.D. Ala. 2025). *See also Budeanu v. Allstate Ins. Co.*, No. 1:22-cv-4413, 2025 WL 2626117, at *1 n.1 (N.D. Ga. Aug. 4, 2025) ("This Order contains quotes and detailed discussions of materials that the Court has allowed to be filed under seal. However, the Court will not redact the Order or alter its discussions based on approval of sealed filings. All information included in this Order was critical in reaching a decision on Defendant's Motion for Summary Judgment. Therefore, it is necessary to include the information herein and equally necessary for this Court's decision [to] be filed on the open docket.").

[2] Indeed, the court would prefer full public disclosure and has sealed the order in question as a courtesy to Plaintiff and out of recognition that (1) Plaintiff considers the information contained in the order to be sensitive, and (2) the purpose of this case is to determine whether that information was illegally obtained. Balanced against the public's interest in access to this non-dispositive order, this constitutes good cause to seal, *see Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007), unless Plaintiff has no objection to unsealing.

Second, Plaintiff's motion to reconsider identifies no "extraordinary circumstances" warranting relief.[3] The subsequent clarification orders, (docs. 58, 66), merely applied the Protective Order—which applies, as protective orders generally do, **only to information exchanged during discovery**, (doc. 44, ¶ 1), not to information that a party possesses independently from discovery—to the circumstances presented; they neither altered the Protective Order nor supplied a basis for reconsideration. Plaintiff may not obtain reconsideration merely by repackaging arguments the court has already considered and rejected.

Finally, Plaintiff's motions to strike, (docs. 68, 70), fare no better. Plaintiff has not shown that the challenged matters prejudice him or otherwise warrant the disfavored and "drastic" remedy of striking portions of a pleading. *See Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962).

---

[3] "[A] district court's authority to revise interlocutory orders . . . comes from Rule 54(b) . . . ." *Herman v. Hartford Life & Acc. Ins. Co.*, 508 F. App'x 923, 928 n.1 (11th Cir. 2013) (per curiam). Under Rule 54(b) of the *Federal Rules of Civil Procedure*, "any order . . . [that] does not end the action as to any of the claims or parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "Although Rule 54(b) does not delineate the parameters of a district court's discretion to reconsider interlocutory orders, [the Eleventh Circuit] ha[s] at least indicated that Rule 54(b) takes after Rule 60(b)." *Herman*, 508 F. App'x at 928 n.1 (citing *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 569 (11th Cir. 1990) (reviewing a district court's grant of a motion to reconsider a denial of summary judgment as if it were a Rule 60(b) motion)). "A Rule 60(b) motion is intended 'only for extraordinary circumstances.'" *Ctr. for Individual Rts. v. Chevaldina*, No. 21-13453, 2022 WL 4462246, at *4 (11th Cir. Sept. 26, 2022) (per curiam) (quoting *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1316 (11th Cir. 2000)).

To the extent any purported affirmative defense merely constitutes a denial, the court will treat it as such.

Accordingly, Plaintiff's motions, (docs. 67, 68, 69, 70), are **DENIED**.

Plaintiff is further cautioned that the court's time and resources are not unlimited, nor is its patience. His continued filing of repetitive and meritless motions diverts the court's attention from resolving the merits of this and other actions and imposes unnecessary burdens on both the court and Defendants. The court will not entertain further frivolous motions that merely express disagreement with prior rulings or repeat arguments already rejected. Any such motion may be summarily denied.[4] Although it is not the court's intent to dissuade Plaintiff from filing nonfrivolous motions necessary to advance his case, "[v]iolations of Rule 11 and of court orders, including the filing of frivolous motions, may result in imposition of sanctions, including monetary sanctions or an adverse judgment, with or without prejudice."[5] *Kelly v. Elite Roofing, LLC*, No. 2:24-cv-388, 2024 WL 4994508, at *3 (M.D. Ala. Dec. 5, 2024) (citing Fed. R. Civ. P. 11(c)), *report and recommendation adopted*, No. 2:24-cv-388, 2025 WL 366431 (M.D. Ala. Jan. 31, 2025).

---

[4] Specifically, this is the second time that Plaintiff has unsuccessfully challenged the court's Protective Order. (*See* Docs. 50, 69). Any further challenges to the Protective Order by Plaintiff will be summarily denied by text order and without further explanation.

[5] During the roughly four months that this case has been pending without a stay, Plaintiff has filed nineteen motions, (*see* docs. 14, 20, 34, 35, 36, 38, 39, 40, 45, 46, 47, 48, 49, 50, 55, 67, 68, 69, 70), of which only three have been granted in whole or in part, (*see* docs. 15, 56, 61).

Accordingly, Plaintiff is **WARNED** to carefully consider, before filing any future motion, whether it duplicates a motion the court has already denied.

**DONE** and **ORDERED** on July 31, 2026.

_____
**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE

Respectfully submitted,

Date:    08/11/202

Scott McDonald
  Plaintiff-Appellant, *pro se*
  789 Neal Dr.
  Gurley, AL 35748
  (256) 503-0675
  scottm2@hiwaay.net

## CERTIFICATE OF SERVICE

I certify that on August 11, 2026, a true and correct copy of the foregoing APPEAL BRIEF APPENDIX has been sent by electronic means using the Court's CM/ECF electronic filing system for parties registered with CM/ECF and via US Mail, postage prepaid, for all other parties.

Date: _____08/11/202_____      _____

Scott McDonald
  Plaintiff-Appellant, *pro se*
  789 Neal Dr.
  Gurley, AL 35748
  (256) 503-0675
  scottm2@hiwaay.net


James Eric Brisendine, Esq.
Counsel for Defendant-Appellee Beth McDonald
SCRUGGS DODD & BRISENDINE, ATTYS, PA
207 Alabama Avenue SW, Fort Payne, AL 36968-1109
256-845-5932
eric@sdblaw.us


Joseph E. Stott, Esq.
Counsel for Defendant-Appellee Brooke Dumont
STOTT & HARRINGTON, P.C.
2637 Valleydale Road, Suite 100
Birmingham, AL 35244
205-573-0500
joe@stottharrington.com